UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA             :

        Plaintiff,                              :
   v.                                                              20 Cr. 015 (PKC)
                                                        :
VIRGIL GRIFFITH,
                                                        :
        Defendant.
-------------------------------------------------------

## DEFENDANT VIRGIL GRIFFITH'S
## REPLY IN SUPPORT OF MOTION TO DISMISS
## FOR IMPROPER VENUE

BRIAN E. KLEIN
KERI CURTIS AXEL
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
(424) 652-7800

SEAN S. BUCKLEY
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200

*Attorneys for Virgil Griffith*

**PRELIMINARY STATEMENT**

The government's opposition only makes clear that the indictment's barebones allegation regarding venue is improper because it is unsupportable. Defendant Virgil Griffith's motion to dismiss for improper venue therefore should be granted.

The government makes two claims: (1) that the Court cannot look beyond the four corners of the indictment, where the government may simply assert that there is venue to survive a motion to dismiss; and (2) that the March 6, 2019 e-mail Mr. Griffith purportedly sent to dprk.un@verizon.net (along with his alleged interview statement about it) constitutes sufficient proof to lay venue in this District. Mr. Griffith has easily refuted both these claims. Regarding the first, ample legal authority supports the proposition that the Court can and should look beyond the indictment at this stage of the proceedings under circumstances like those found here. As to the second, the opposition demonstrates that the government's venue theory is based on facts that are undisputed – that one outbound e-mail which Mr. Griffith was told by a third party would be received in the District, but which no evidence supports was ever received, read, or acted upon here (or anywhere else) – and these facts cannot establish venue in this District.

Ultimately, the government requests that the issue of venue be left for the jury, claiming that "the sufficiency of this evidence is a question for the jury, not a basis for dismissal of the [i]ndictment." (Opp. at 2). The Court, however, has clear legal authority under Federal Rule of Criminal Procedure 12(b)(3) to dismiss the indictment due to improper venue before trial and should do so, where, as here, the government cannot prove venue by a preponderance of the evidence. Waiting for a jury determination would be an unnecessary waste of time and judicial resources.

1

Mr. Griffith is not seeking an "extraordinary sanction," as the government contends, but rather wishes only to have the case against him be heard where there is proper venue, as the U.S. Constitution and the Federal Rules of Criminal Procedure require. (*See id.* at 8.) Mr. Griffith respectfully asks this Court to grant his motion to dismiss.

## DISCUSSION

A.     **The Government's Recitation of the "Relevant Facts" Is Materially Incomplete and Includes Numerous Allegations that Are Irrelevant to Deciding Venue**

The government's lengthy "Relevant Facts" section on pages 2-6 undermines its arguments to deny dismissal, for two notable reasons:

First, the government does not dispute any substantive fact set forth by Mr. Griffith in his motion.[1] This includes not disputing the critical fact that the subpoena response received from Oath, Inc. ("Oath") shows there is no evidence that the March 6 e-mail Mr. Griffith purportedly sent to dprk.un@verizon.net, which no one ever replied to, was ever read or even received by anyone located in this District (or elsewhere).

Instead, the government spends pages discussing allegations and mischaracterizing the evidence against Mr. Griffith that have nothing to do with venue, such as when he allegedly developed plans to evade sanctions, and what purportedly happened at and after the North Korean conference. (*See id.* at 2-6.) This is apparently an effort to buttress its otherwise thin

---

[1] The government's only quibble with Mr. Griffith's factual recitation was a retort in a footnote that it did not mislead Griffith's counsel because it "made no misrepresentation about whether a charging instrument had been filed." (*See* Opp. at 6 fn. 4.) Of course, a misimpression can be created not just by what you say, but what you do not say; government counsel was intentionally continuing the fiction that it viewed Mr. Griffith as a cooperative witness, as he had been, when in fact the government had already filed a complaint against him. Given Mr. Griffith's cooperation over many months, and given that he self-reported at the U.S. Embassy in Singapore and literally flew to New York at his own expense to meet with the FBI *pro se*, concerns of flight risk have been totally overblown by the government in an attempt to justify this unfortunate duplicitousness.

2

arguments by tainting the Court's view of Mr. Griffith. Needless to say, when all the facts are presented at trial, they will paint a very different picture of Mr. Griffith, one that will vindicate him. The defense will not waste the Court's time now rebutting allegations that are irrelevant to venue.

Second, once the government gets to the facts pertinent to the motion at hand, it lays bare that its sole basis for venue in this District is – just as Mr. Griffith explained in his motion – the March 6 e-mail addressed to dprk.un@verizon.net, and its sole evidence is that the March 6 e-mail was allegedly sent to the dprk.un@verizon.net address (and Mr. Griffith's purported admission that he sent that e-mail), which Mr. Griffith had been told by a third party was associated with the DPRK Mission. (*See id.* at 4-5.) There is, however, no evidence that the e-mail was read let alone received or acted upon in this District. Accordingly and as discussed further below, the government simply does not have evidence to support venue here.

**B.      Despite the Government's Claims to the Contrary, the Law Supports Dismissal at this Stage of the Proceedings**

It is undisputed that the Sixth Amendment and Federal Rule of Criminal Procedure 18 require that a defendant be tried in the district where their crime was "committed." It is similarly undisputed that the prosecution bears the burden of proving that venue is proper in this District by a preponderance of the evidence, which, in a conspiracy case, requires the government to prove that an overt act in furtherance of the conspiracy *occurred in* this District. (*See id.* at 7.)

The government argues that, at the pleading stage, it can survive a motion to dismiss merely by including an allegation in the indictment that the charged crime took place in "the Southern District of New York." (*Id.* at 8.) But if this were true, there would be no reason for Federal Rule of Criminal Procedure 12(b)(3)(A)(i), which permits a defendant to bring a pretrial motion to dismiss due to improper venue. Indeed, Rule 12(b)(3) ***requires*** such a motion to be

3

brought before trial under circumstances such as these, stating the issue "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."[2]  Addressing these procedural matters before trial promotes judicial economy.  As the Advisory Committee recognized in its comments to the 2014 Amendments to the Federal Rules of Criminal Procedure, Rule 12(b)(3) motions "generally will be available before trial and they can – and should – be resolved then."

Further, ample legal authority supports the Court being able to consider documents outside of the indictment on a motion to dismiss due to improper venue, even though it usually cannot give any weight to contrary factual assertions made by the defendant.  *United States v. Martino*, No. S1 00CR 389(RCC), 2000 WL 1843233, at *1 (S.D.N.Y Dec. 14, 2000); *United States v. MacWeeney*, No. 00 CR. 0223(HSH), 2000 WL 1634400, at *2 (S.D.N.Y. Oct. 31, 2000).  The evidence to which Mr. Griffith points are not "contrary factual assertions," *Martino,* 2000 WL 1843233, at *1, but rather concrete facts establishing the absence of any proof to support the government's barebones (and unsupportable) allegation of venue.  Moreover, courts have recognized that where "the government has provided the Court with a 'full proffer' of the facts it intends to introduce at trial to establish venue, the Court may decide whether venue is proper before trial." *United States v. Mittal,* No. 98 CR 1302 (JGK), 1999 WL 461293, at *4 (S.D.N.Y. July 7, 1999).

The government attempts to avoid dismissal by arguing that it has not made a "full proffer" of the facts it intends to introduce at trial, but its opposition totally undercuts that claim. (*See* Opp. at 8.)  As explained in the motion, counsel for Mr. Griffith repeatedly has asked the

---

[2] There can be no doubt that if Mr. Griffith had waited until trial to object to venue, the government would cite this preamble to the Court in its opposition.

4

government to identify any basis other than the e-mail addressed to dprk.un@verizon.net that the government would rely to establish venue; the government provided none, and provides no other evidence to this Court.³ (*See* Mot. at 6.)

The Court therefore should treat the government's opposition as a full proffer of the relevant facts and "decide whether venue is proper before trial." *United States v. Mittal,* 1999 WL 461293, at *4; *accord United States v. Carey,* 152 F. Supp. 2d 415, 419 (S.D.N.Y. 2001). Mr. Griffith's motion is ripe at this stage, and the Court should not waste judicial resources requiring him to go to trial on a flawed charging instrument, as the government requests. *See United States v. Covington*, 395 U.S. 57, 59 (1969) (finding a defense is "capable of determination" if a trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense).

Finally, the government's claim that "its investigation is very much ongoing" cannot remedy this critical flaw in the indictment. (*See* Opp. at 8.) The Indictment Clauses of the U.S. Constitution require that Mr. Griffith be tried upon the evidence that was presented to the grand jury. *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).⁴ The government cannot seek an indictment, and then only after one is returned, drum up some basis for venue, as it seeks the Court's blessing to do now.

---

³ The government's citations to statements in FBI interview memorandum that Mr. Griffith allegedly made to agents do not alter the calculus here because at most Mr. Griffith simply described the March 6 e-mail to dprk.un@verizon.net. (*See* Opp. at 5) The government points to no evidence – because there is none – establishing that Mr. Griffith (or anyone else) knew, let alone acknowledged, that the e-mail was read or received in this District.

⁴ There, the Second Circuit found that an indictment must contain enough information to "[1] fulfill[] the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' [2] prevent[] a person from being subject to double jeopardy as required by the Fifth Amendment; and [3] serve[] the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." 194 F.3d at 44 (internal citations omitted).

5

Rights conferred on a defendant like Mr. Griffith by the Sixth Amendment to the Constitution "mean that a grand jury should return an indictment only in a district where venue lies." *United States v. Cessa*, 856 F.3d 370, 372 (5th Cir. 2017). "Otherwise, the resulting indictment can be dismissed for lack of trial venue." *Id.* (citing *United States v. Cabrales*, 524 U.S. 1, 10 (1998)). "Grand juries' investigating crimes located within their district of empanelment is also consistent with the grand jury's roots as a local institution." *Id.* (citing Mark Kadish, Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process, 24 FLA. ST. U.L. REV. 1, 6-11 (1996)).[5]

Although it should be unnecessary based on the government's opposition brief (which already states the facts it contends support venue here), in the event that the Court accepts the government's self-serving fallback assertion that it has not yet made a full proffer, Mr. Griffith respectfully submits that the Court direct the government promptly to provide a sworn bill of particulars, and that the Court revisits Mr. Griffith's motion once the government has done so. *See, e.g.*, *United States v. Szur*, No. S5 97 Cr. 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998) (directing government to provide bill of particulars within seven days where "it is unclear from the Indictment what acts were committed in the Southern District of New York when the records were allegedly kept in New Jersey").[6]

---

[5] *See also* Justice Manual 9-11.101 ("While grand juries are sometimes described as performing accusatory and investigatory functions, the grand jury's principal function is to determine whether or not there is probable cause to believe that one or more persons committed a certain Federal offense *within the venue of the district court*.") (emphasis added)); *id.* at 9-11.121 ("A case should not be presented to a grand jury in a district unless venue for the offense lies in that district.").

[6] *See also United States v. Mapp,* No. 95 CR 1162, 1996 WL 506933, at *9 (E.D.N.Y. Sept.3, 1996) (requiring the government to "provide the defense with a bill of particulars detailing the basis of venue" where the Indictment was unclear with respect to why venue was appropriate in the Eastern District of New York); *United States v. Castellano*, 610 F. Supp. 1359, 1389-90 (S.D.N.Y. 1985) (ordering bill of particulars where indictment alleged that the crimes occurred

C.   **The Undisputed Facts Cannot Establish Venue in This District**

The government's venue theory – premised on a single e-mail – was always a slender reed on which to hail Mr. Griffith into court in the Southern District of New York. The government's opposition establishes that it lacks the evidence to anchor it here. While Mr. Griffith does not agree with all of the government's factual contentions, for purposes of this motion only, the Court should take as true those limited facts the government proffers that are pertinent to adjudicating this motion (not the speculation it argues), and those facts are as follows:

(1) Mr. Griffith was instructed to write to dprk.un@verizon.net because "CC-1" told him that this was the e-mail address for the DPRK Mission (Opp. at 9);

(2) Mr. Griffith, while outside of the District, sent the pertinent e-mail (attached as Exhibit 1 to his motion) on March 6, 2019 (*Id.* at 4, 9); and

(3) There is no evidence that the e-mail was received, read, or acted upon by anyone in this District. (*Id.* at 10).

The Court need not accept various facts and inferences that the government suggests throughout its opposition without any evidentiary support (some of which are easily contradicted).[7] The core issue is that the government cannot prove the March 6 e-mail was ever received, read, or acted upon in this District. Simply repeating that the e-mail was sent "to the DPRK Mission in Manhattan," as the government does repeatedly throughout its opposition, does not make it so. (*See, e.g., id.* at 4, 9-10.) Neither does it assist to paraphrase interview

---

"in the Southern District of New York," but neither the indictment nor discovery provided any basis for that allegation).

[7] The government's willingness to simply leap to conclusions without bothering to consider whether facts and evidence support them undermines its overall credibility. For example, the government states, without any citation, that the initial e-mail that was provided to Mr. Griffith was "incorrect; as reflected in publicly available materials, the DPRK Mission uses dprk.un@verizon.net." (Opp. at 4). The government really has no evidence whether any e-mail is the "correct" one – much less to show receipt in this District.

statements Mr. Griffith allegedly made to the FBI in which he merely described the March 6 e-mail.[8]  (*See* Opp. at 5-6.)

At most, the evidence shows that Mr. Griffith sent an e-mail to dprk.un@verizon.net, which he thought was an address affiliated with the DPRK Mission based on what a third party told him.  But the simple and unassailable fact remains that there is no evidence that it ever was received, read, or acted upon in Manhattan by anyone.  As noted in the motion, there are no records from Oath, the service provider for that e-mail address, available for March 2019, when the e-mail was sent, and there can be none due to Oath's document destruction policy.  (Mot. at 5.)  As such, the government can only offer speculation that the March 6 e-mail might have been viewed by an unknown person in this District based on the idea that the DPRK Mission is in this District.  This cannot carry the government's burden as a matter of law.

Even if the government had obtained the records prior to Oath's retention date, the government is correct that the IP address data "does not necessarily reflect the location where e-mail would be received, read, or acted upon." (*See* Opp. at 11.)  But this proves too much, because it makes crystal clear that an allegation that an e-mail was sent is insufficient to prove it was ever received, read, or acted upon in the District.  As the world has recently experienced due to the pandemic, e-mail can and often is accessed remotely.

Indeed, as the government itself points out, if the end user logs into a virtual private network ("VPN"), the IP address from which they are accessing an e-mail server would not be reflected on the Oath records; rather Oath's IP address log would only show the VPN's IP address.  (*Id.*)  Noting that the Oath records show that the address was accessed from Ashburn,

---

[8] The government's claim on page 9 of the opposition that Mr. Griffith confirmed "that he communicated with the DPRK Mission" mischaracterizes his statement, which at most refers to the March 6 e-mail.  (*Cf.* Opp. at 5-6).

Virginia; Portland, Oregon; Manhattan, New York; Dublin, Ireland; and Baku, Azerbaijan, the government speculates that it is "unlikely that such a pattern reflects a user's access points, particularly personnel affiliated with the DPRK Mission." (*Id.* at 12.)  The government attempts to suggest that DPRK Mission employees were likely using a VPN rather than traveling to Dublin or Baku, but this argument only underscores Mr. Griffith's point that the user of this e-mail address could be anywhere – whether in Washington D.C., Madrid, China, or the DPRK.

Equally unavailing is the government's contention that "DPRK Mission personnel are not permitted to travel more than 25 miles away from Columbus Circle, in Manhattan, New York." (*Id.* at 11.)  That fact is evidence of nothing when it comes to venue.  Indeed, no less than two judicial districts other than the Southern District of New York—namely, the District of New Jersey and the Eastern District of New York—fit those parameters.[9]

Recognizing implicitly it lacks any evidence that the March 6 e-mail was received in this District, the government urges the Court to leap to the conclusion that the e-mail must have been received here because Mr. Griffith later received a DPRK visa. (*Id.* at 9.)  This is not a supportable assertion.  The fact that he ultimately obtained a visa cannot establish or support an inference that the March 6 e-mail was actually received in this District (instead of elsewhere, if at all), particularly when the visa was not issued at the DPRK Mission but rather at the DPRK embassy in Beijing, as noted on the visa itself ("베이징" in Korean). (*See* Exhibit 4).[10]

Finally, the government tries to bootstrap its argument by collecting generic cases for the general proposition that communications made in furtherance of a conspiracy in a district can establish venue there. (*See* Opp. at 9.)  But in those cases, the communications did in fact *occur*

---

[9] The District of Connecticut is approximately 30 miles away by car from Columbus Circle.
[10] Exhibit 4 was produced in discovery (in unredacted form) by the government on February 15, 2020, bearing production number USAO_001181.

9

*in* this District. A classic example of that is where an undercover agent in Manhattan contacts a target in New Jersey, making clear during the call that he or she is in Manhattan, and creates a basis for venue. That did not happen here. At most, by analogy, we have someone who tried to place a call to a 917 cell phone number (a prefix associated with Manhattan), and because no one answered, left a voice mail. The owner of that cell phone could, of course, have been anywhere in the world at the time they did not pick up, and when they listened to or ignored and deleted the voice mail. Or the owner could have moved, for example, to Los Angeles entirely and kept the 917 cell phone number. The cases the government relies on therefore actually only underscore the weakness of its position.

## CONCLUSION

In summary, based on the facts the government has put before the grand jury and this Court, Mr. Griffith's motion to dismiss due to improper venue pursuant to Rule 12(b)(3)(A)(i) should be granted because there is no basis for venue in this District. The motion is not premature nor an extraordinary sanction, but a routine exercise of the Court's role as procedural gatekeeper, and in the interest of judicial economy and to preserve Mr. Griffith's Sixth Amendment right to venue in the proper forum.

Dated:  June 17, 2020

Respectfully Submitted,

/s/ Brian E. Klein
_____
Brian E. Klein
Keri Curtis Axel
Baker Marquart LLP

-and-

Sean S. Buckley
Kobre & Kim LLP

*Attorneys for Virgil Griffith*