

777 South Figueroa Street
Suite 2850
Los Angeles, California 90017
424.652.7800
bakermarquart.com

Writer's Direct dial No.
(424) 652-7814

Writer's E-Mail Address
bklein@bakermarquart.com

<u>BY ECF</u>

July 20, 2020

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>United States v. Virgil Griffith</u>
      20 Cr. 015 (PKC)

Dear Judge Castel:

      Defendant Virgil Griffith respectfully moves this Court pursuant to 18 U.S.C. § 3142 (c)(3) to modify his pretrial release conditions to remove the condition of home confinement with electronic monitoring and the restrictions on his access to the Internet (he is only permitted to e-mail with his counsel). Numerous other stringent conditions, including a $1 million bond secured by his parents' and only sister's homes, would remain in place. Mr. Griffith is in full compliance with his existing pretrial release conditions, and since his release, he has made both an in-person court appearance and one that was conducted telephonically due to the pandemic. We have conferred with Pretrial Services who have no opposition to this request. We also have conferred with the government, who opposes the requested modifications, and likely will advance the same arguments previously presented to Judge Broderick in support of such opposition. The government's opposition therefore is meritless, and Mr. Griffith's conditions should be modified to account for the change in circumstance and to comply with the Bail Reform Act.

      As the Court is aware, the Bail Reform Act requires a court to impose only the least restrictive conditions necessary to reasonably assure a defendant's appearance. Judge Broderick granted Mr. Griffith's release with strict conditions. Mr. Griffith is not now asking the Court to revisit all of those conditions. In addition to the $1 million bond, these important conditions would remain in place: (1) Mr. Griffith's continued residence with his parents in Tuscaloosa, Alabama; (2) the surrender of all travel documents; (3) and a prohibition on travel other than to this District and the Eastern District of New York (the latter because of airports). Mr. Griffith is requesting, based on circumstances that have changed since his release, only that the Court remove the condition of

Hon. P. Kevin Castel, U.S.D.J.
July 20, 2020
Page 2

home detention with electronic monitoring, and the condition restricting Mr. Griffith from accessing the Internet.

While Mr. Griffith does not concede that any of these conditions ever were necessary given that he does not present a flight risk, Mr. Griffith respectfully submits that the Court need not decide that issue here.  Since his release, Mr. Griffith repeatedly has demonstrated to the New York and Alabama Pretrial Services Officers that he is a compliant supervisee.  Indeed, his supervising Pretrial Services Officer, Karl Wallace, suggested that Mr. Griffith request removal of the electronic monitoring condition since Mr. Wallace believes the condition is not necessary because Mr. Griffith can be appropriately supervised without it.  Similarly, removal of the Internet restrictions, which Pretrial Services also does not oppose, will permit Mr. Griffith to comply with Pretrial Services' recommendation that Mr. Griffith remain gainfully employed during the pendency of this case, and will have the further benefit of allowing Mr. Griffith to assist to his fullest capacity in the preparation of his own defense.  Simply put, the home detention and Internet conditions are unnecessary at this point and should be promptly lifted.

- **Background and Procedural History**

As Your Honor knows, this case concerns a trip that Mr. Griffith took to North Korea in April 2019 to attend a blockchain conference.  The government alleges that, in so doing, Mr. Griffith conspired to "provide services" to North Korea in violation of the U.S. sanctions regime in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705.  Mr. Griffith submits that the evidence will show that he did no such thing.

In any event, relevant to the bail analysis, immediately after returning from North Korea in April 2019 and consistently afterwards, Mr. Griffith cooperated fully with various U.S. law enforcement officials regarding the trip, to assist them and to provide information.  Indeed, on his own accord and almost immediately upon returning from North Korea to Singapore, Mr. Griffith went to the U.S. Embassy in Singapore to voluntarily report about his trip.  He was interviewed at length there by a Special Agent of the State Department.  Then, while Mr. Griffith was visiting friends in Puerto Rico (where he also rented a small apartment), he was contacted by the FBI, who requested that he travel to New York for an interview.  He promptly traveled to New York—unrepresented and at his own expense—and was first interviewed by the FBI on May 22, 2019.  In November 2019, while again present in the U.S. on business in Northern California, he was contacted by the FBI, and again—on November 12, 2019—made himself available for an interview in San Francisco without counsel and provided the FBI with his cell phone.  As recently as November 26, 2019 (*i.e.*, two days before his arrest on Thanksgiving), Mr. Griffith—through former counsel—was in active discussions with the government to set up another meeting with the authorities.

Importantly, after his last voluntary FBI interview and before his arrest on Thanksgiving, the FBI asked Mr. Griffith to remain in the United States, and he did so, rather than returning to Singapore where he resided on a work visa because he is a U.S. citizen.  He had not made prior arrangements to stay for this period in the United States, but he decided to use the time to spend Thanksgiving with his family.  He communicated these travel plans to the FBI, and he sent his

flight itinerary to the prosecutors on this case through his then-counsel, all to ensure that they understood where he was and that he was not taking steps to evade law enforcement or leave the United States. When he was arrested Thanksgiving morning, he was boarding a flight from Los Angeles to Baltimore, where he was to spend the holiday with his parents and his sister's family. His repeated cooperation with law enforcement and compliance with the FBI's request to stay in this country for an undetermined amount of time (knowing he was under investigation and could be arrested at any time) is compelling evidence that he is not a flight risk, and undermines the government's prior claims to the contrary.

Mr. Griffith was arrested on November 28, 2019 at the Los Angeles International Airport en route to Baltimore, based on a warrant issued pursuant to a sealed complaint sworn out in this District on November 21, 2019. The complaint alleged a single count of conspiring to evade sanctions in violation of IEEPA, 50 U.S.C. § 1705.

After spending the Thanksgiving weekend in jail without an initial appearance, on December 2, 2019, Mr. Griffith first appeared in the Central District of California before the Honorable Maria A. Audero, United States Magistrate Judge. Pretrial Services recommended Mr. Griffith's release, and the Magistrate Judge concurred and ordered his release on conditions. On the afternoon of December 4, 2019, the government filed a letter requesting a stay of the Magistrate Judge's release order with the then-Part I District Judge, the Honorable Denise Cote, to permit the government an opportunity to appeal the Order upon Mr. Griffith's arrival in this District. Judge Cote granted that stay.

More than two weeks later, including a protracted stay in the Grady County Sheriff's facility in Oklahoma for more than a week due to inclement weather, Mr. Griffith arrived in this District on December 23, 2019. Because of Christmas, he was not presented to a Magistrate Judge until December 26, 2019. At his initial presentment in this District, the Honorable Barbara Moses, United States Magistrate Judge, ordered Mr. Griffith detained. Magistrate Judge Moses cited a variety of justifications for this ruling, many of which were based on speculation or incomplete facts the government presented that the defense was later able to correct. Mr. Griffith immediately appealed from Judge Moses's ruling under 18 U.S.C. § 3145, and the matter was heard after briefing by the parties on December 29, 2020 by the Honorable Vernon Broderick, who ordered Mr. Griffith released on various conditions.

Never in the three detention hearings nor in its related submissions did the government argue that Mr. Griffith presents a danger to the community because, as the government well knows, he does not. Before that fateful Thanksgiving Day, he also had never been arrested. The government's flight-risk argument was premised on the facts that, prior to being charged, he lived in Singapore, traveled extensively for work and pleasure, owned cryptocurrency assets that the government speculated would allow him to flee undetected, has advanced computer skills and access to the "Dark Web," and had discussed possibly seeking to expatriate or to acquire a second passport.

A centerpiece of the government's argument at both hearings in this District—and a key factor in Magistrate Judge Moses's initial detention ruling—was its argument that Mr. Griffith held

Hon. P. Kevin Castel, U.S.D.J.
July 20, 2020
Page 4

digital assets, even though Mr. Griffith had disclosed them during both Pretrial Services interviews. The government speculated that these assets could be significant and were untraceable and could permit him to flee. Although the defense pointed out that the government could speculate about any defendant's purported unknown assets,[1] and it would not be an appropriate basis for detention,[2] Judge Moses's order was significantly influenced by the fact of Mr. Griffith's ownership of digital assets. (As set forth below, these relatively limited assets have now been secured and are not available to Mr. Griffith, which should alter the bond analysis.)

Mr. Griffith argued that he had disclosed his digital assets to the Pretrial Services Office from the beginning, that they were secured on cold wallets (somewhat like a USB stick) in his Singapore apartment, and that they were not significant but consistent with the savings of someone who earns an annual salary of approximately $150,000.

In permitting Mr. Griffith to be released to his parents' home in Tuscaloosa Alabama, Judge Broderick instituted various stringent conditions to mitigate any risk of flight, all of which were to be satisfied prior to his release, including:

- A $1 million bond, fully secured both by the equity Mr. Griffith's parents' unencumbered home, and also by the equity value of his sister's residence in Columbia, Maryland. (*See* Attachment 1 (Judge Broderick January 2, 2020 Order). Defendants' parents are doctors in Tuscaloosa, his sister a veterinarian, and her husband an employee of the Department of Defense. Both families would lose their family homes were Mr. Griffith to flee;

- Strict Pretrial Supervision in Tuscaloosa, Alabama, with a home assessment;

- Home detention with electronic and GPS monitoring at Mr. Griffith's parents' residence;

- Mental health treatment, evaluation, and drug treatment;

- Passport surrender and travel restricted to this District, the Eastern District of New York, and the Northern District of Alabama;

- Various Internet restrictions, including conditions prohibiting Mr. Griffith from using a smartphone with Internet access, requiring him to use only one computer with software that permits monitoring by the Pretrial Services Office, and a restriction limiting Mr. Griffith's Internet use to communicating with counsel by email;

---

[1] The defense also pointed out that such assets are not, in fact, untraceable.

[2] *See, e.g.*, *United States v. Bodmer*, 2004 WL 169790 (S.D.N.Y. July 9, 2004), at *3 (rejecting the government's argument that the defendant likely had "vast financial resources in undisclosed offshore accounts" as speculation);; *United States v. Montoya-Vasquez*, No. 08 Cr. 3174, 2009 WL 103596, at *4 (D. Neb. Jan. 13, 2009) ("Speculation is not evidence, much less preponderating evidence.").

- A prohibition on communicating with designated witnesses or victims designated by the government;[3] and

- A requirement that the government and defense meet and confer to secure Mr. Griffith's cryptocurrency hard drives located in Singapore.

On January 7, 2020, the grand jury returned an indictment charging him with one count, a conspiracy to violate the IEEPA, 50 U.S.C. § 1705, (*i.e.*, the same charge in the complaint).

- **Legal Framework**

The Supreme Court has recognized that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "Because the law . . . generally favors bail release, the government carries a dual burden in seeking pre-trial detention." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). The government must first "establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight." *Id*. If this burden is satisfied, "the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Id*. Conditions imposed on a defendant are to be "the least restrictive . . . condition, or combination of conditions, that [the court] determines will reasonably assure" the defendant's appearance. *Id*. § 3142(c)(1)(B).

- **Virgil Griffith's Pretrial Release Conditions Should Be Re-Evaluated at this Point in the Proceedings**

Mr. Griffith submits that the conditions of home detention with electronic monitoring, and the restrictions on his Internet access are now demonstrably unnecessary to reasonably assure Mr. Griffith's appearance for court appearances and at trial. These conditions are onerous and significantly impede Mr. Griffith from being a productive person while on release as well as his ability to assist in the preparation of his defense at trial. Mr. Griffith presents several new circumstances that did not exist when this matter was argued before Judge Broderick.

First, since Judge Broderick's January 2, 2020 release order, Mr. Griffith has appeared for two court appearances, one of which required him to travel alone from Alabama to this District and appear in person. Mr. Griffith appeared both times as ordered (the other conference was telephonic), and, in connection with the March 2020 in-person appearance, provided his travel information in advance both to Pretrial Services and to the government, and, again in compliance with Judge Broderick's release order, readily cooperated with the government's request that an FBI agent escort him to and from the airport in New York. This alone strongly supports loosening both of the requested conditions.

---

[3] The government has never provided a list of persons it believes to be witnesses or victims with whom Mr. Griffith should not communicate, despite the defense's request.

Hon. P. Kevin Castel, U.S.D.J.
July 20, 2020
Page 6

Second, Mr. Griffith has complied fully with his Pretrial Services supervision in Alabama and is meeting the various conditions of his release. This further demonstrates that he follows court directives and is not a flight risk.

Third, as Judge Broderick required in paragraph 5 of his release order, defense counsel has met and conferred with counsel for the government, and has secured all electronic devices, including the above-referenced cold wallets, in Mr. Griffith's Singapore apartment. Specifically, Mr. Griffith hired a Singaporean law firm, whose team was led by a former Singaporean prosecutor, who in turn engaged a forensic computer company to assist them in identifying, indexing, and forensically sealing all devices in Mr. Griffith's apartment. Then, after meeting and conferring with the government as ordered, the Singaporean attorney and computer forensic consultant obtained access to the apartment, took custody of the devices, removed them, and secured them under the lawyers' control. Accordingly, at this time, Mr. Griffith's devices that would provide him access to his digital assets are not available to him.

Before making the instant motion for these limited modifications, counsel for Mr. Griffith made plain these points to the government in the hope of avoiding unnecessary litigation and presenting a joint proposal to the Court. In response, the government stated that it would oppose any such request. In an email, the government stated:

> We will not agree to remove your client from home detention. Particularly in the wake of the pandemic, we see no basis for such an application. Please advise if you believe there is a specific need driving your position. We are aware of none.
>
> We similarly do not see any basis for your client to have unmonitored access to the internet. If you would like to suggest some form of limited and monitored access, we would be willing to confer with Pretrial Services regarding the feasibility of any proposal.

In taking this position, the government raised no new concerns, or even those that previously were not presented to Judge Broderick.

First, with regards to the continued need for home detention, the government by law cannot shift the burden to the defense to show "a specific need" for Mr. Griffith to be removed from such an onerous condition of release. The question before the Court and the government is whether there is a reason for such condition to ensure his appearance at trial. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) ("[T]he standard is reasonably assure appearance, not 'guarantee' appearance, and . . . detention can be ordered on this ground only if 'no condition or combination of conditions will reasonably assure the appearance.'" (quoting 18 U.S.C. § 3142(e)). Based on the foregoing, there is none.

Mr. Griffith has demonstrated in the more than six months since his release that he is not a risk of flight, and certainly not one that requires the imposition of such a strict condition. The government's reliance on the "wake of the pandemic" to justify the continued imposition of home

Hon. P. Kevin Castel, U.S.D.J.
July 20, 2020
Page 7

detention against his demonstrated record of compliance turns the legal analysis on its head. Putting aside the fact that the government advocated for the imposition of this condition in the absence of the pandemic, its citation to the pandemic actually advocates in favor of alleviating this pretrial condition. The pandemic has severely limited the ability of U.S. citizens (like Mr. Griffith) to travel abroad.[4] Moreover, the government's contention that the existence of the pandemic somehow justifies home detention (or weighs against it being lifted) defies logic. Restaurants, coffee houses, gyms, and other businesses are currently open in Alabama, and whether and when such things are open may be constantly shifting over the next year or so. The government simply can proffer no basis to continue what is an otherwise unnecessary restriction on his liberty pending trial.[5]

Second, with respect to the Internet restrictions, one of the primary concerns that had underlain Judge Broderick's release Order no longer exists. Although we respectfully submit that the broad Internet restriction was never justified by the government's various arguments concerning flight risk, now that his cryptocurrency is secured and in control of counsel, these restrictions are unnecessary, particularly when considered against the backdrop of his proven record of compliance over more than six months.

Importantly from a bail and Sixth Amendment consideration, the lack of Internet access complicates and hampers his ability work fully and effectively with his counsel and contribute to the development of his defense strategy. He cannot, for example, realistically conduct meaningful research into factual matters and issues that bear upon his anticipated defenses at trial. Further, Mr. Griffith needs Internet access to maintain gainful employment while on release. Pretrial Services has consistently recommended that Mr. Griffith work, and he very much would like to do so. The pandemic has demonstrated that many employees can do their jobs entirely remotely and that is true of Mr. Griffith, who holds a PhD from California Institute of Technology (Caltech), and is a mathematical theorist and experienced computer programmer. While he has been placed on leave by his former employer during the pendency of these charges, he has been offered one consulting contract, which can be submitted to the Court under seal.

No less a consideration given the Bail Reform Act's directive that bail conditions be the "least restrictive" to ensure appearance, Mr. Griffith also wants to have Internet access to do other productive activities that the rest of us enjoy—such as seeing friends on FaceTime or Zoom, downloading music or YouTube videos or watching live-streamed events, booking gym visits, or taking online classes. Without Internet access, it is impossible for him to do those things.

***

---

[4] *See, e.g.*, https://www.cnn.com/travel/article/us-international-travel-covid-19/index.html

[5] If the Court continues to have any concern despite Mr. Griffith's proven track record of compliance, Mr. Griffith respectfully submits that an appropriate measure would be a curfew rather than outright home confinement.

Hon. P. Kevin Castel, U.S.D.J.
July 20, 2020
Page 8

      For all the above reasons, Mr. Griffith respectfully requests that the Court remove the home detention and Internet restrictions from his conditions of pretrial release.

Respectfully submitted,

*/s/ Brian E. Klein*

Brian E. Klein
Keri Curtis Axel
Baker Marquart LLP

-and-

Sean S. Buckley
Kobre & Kim LLP

*Attorneys for Virgil Griffith*