K7NLGRIC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          20 Cr. 15 (PKC)

5   VIRGIL GRIFFITH,
                                           Teleconference
6              Defendant.

7   ------------------------------x

8                                          New York, N.Y.
                                           July 23, 2020
9                                          2:30 p.m.

10  Before:

11                  HON. P. KEVIN CASTEL,

12                                         District   Judge

13                      APPEARANCES

14  GEOFFREY S. BERMAN
         United States Attorney for the
15       Southern District of New York
    MICHAEL KROUSE
16  KYLE WIRSHBA
    KIMBERLY RAVENER
17       Assistant United States Attorneys

18  BAKER MARQUART LLP
         Attorney for Defendant
19  BY:  BRIAN EDWARD KLEIN
         KERI CURTIS AXEL
20

21  KOBRE & KIM, LLP
         Attorney for Defendant
22  BY:  SEAN STEPHEN BUCKLEY

23

24

25

K7NLGRIC

1          THE COURT:  Good afternoon.

2          So this is 20 Cr. 15, United States against Virgil

3  Griffith.

4          Appearing for the government?

5          MR. KROUSE:  Yes, your Honor.

6          This is Michael Krouse, on behalf of the United

7  States.  With me are AUSAs Kimberly Ravener and Kyle Wirshba.

8          THE COURT:  All right.  Good afternoon to you all.

9          And for the defendant?

10         MR. KLEIN:  Good afternoon, your Honor.

11         Brian E. Klein and Keri Axel, from Baker Marquart.

12  With us is Sean Buckley, from Kobre & Kim.  We also have on the

13  line our client, Virgil Griffith, who is out of custody and

14  calling in from Alabama.

15         THE COURT:  All right.  Mr. Klein, am I correct that

16  your client, Mr. Griffith, waives his physical appearance at

17  this conference?

18         MR. KLEIN:  Yes, he does, your Honor.

19         THE COURT:  All right.  Now, Mr. Klein, I think

20  perhaps the first order of business is your motion to dismiss

21  and related request for a bill of particulars.  I've reviewed

22  the submissions of the parties, but I wanted to give you an

23  opportunity, if you'd like, to highlight anything in your

24  papers.

25         MR. KLEIN:  Yes, your Honor.  I appreciate that.  And

K7NLGRIC

1    I will keep that brief.

2            But I do want to bring your attention first to

3    something that we only learned at the eleventh hour, literally

4    last night at 11:00 p.m., which is, last night at 11:00 p.m.

5    eastern time, we received an email from the prosecutors with

6    additional discovery disclosures.  Among those disclosure was

7    the disclosure of a search warrant application for the

8    pertinent email account, the DPRK UN account, dated --

9            THE COURT:  The DPRK account?

10           MR. KLEIN:  Yes, your Honor.

11           THE COURT:  Referring to the Democratic People's

12   Republic of Korea.

13           MR. KLEIN:  Yes, your Honor.

14           THE COURT:  Okay.  Go ahead.

15           MR. KLEIN:  And that is the email account for the

16   email in question here, the March 6th email, allegedly from our

17   client to that account.

18           So we received this discovery disclosure last night at

19   11:00 p.m. eastern time.  This morning we emailed the

20   prosecutors right away asking if they had obtained any

21   materials in response to that search warrant application.  That

22   application, as we understand it, is they would have received

23   those materials in late June.  We had a phone call very quickly

24   after with the prosecutors, again, early this morning, my time,

25   out west, around 7:30 or so.  And we specifically asked them

K7NLGRIC

1    what they had received, and do we have anything.  We pointed

2    out that we believe this is Rule 15, that we would have been

3    entitled to it.  One of the prosecutors confirmed for us that

4    the IP evidence -- or the lack of IP evidence they received was

5    the same that we had received in connection with our subpoena.

6    As your Honor probably knows, we served a subpoena for IP

7    evidence earlier this year.  It's mentioned in our motion.

8              THE COURT:  Right.  Well, I think -- didn't you make

9    application to me on that, I think?

10             MR. KLEIN:  Yes, we did, your Honor.

11             THE COURT:  I thought so.

12             MR. KLEIN:  Yeah.

13             THE COURT:  Go ahead.

14             MR. KLEIN:  So the evidence they had received was

15   consistent with what we had put in our papers and had received,

16   which is there is no IP evidence of this email -- or, I'm

17   sorry, there's no IP evidence during the time period of this

18   email, which is the March 6th/7th date.

19             We're also asking for any emails or any -- like did

20   they have a copy of that email.  Their contention is that email

21   was received of that email account.  At that time they did not

22   answer our question.  We pointed out again that we thought this

23   was highly relevant and we were concerned that we were getting

24   this disclosure so late.

25             A little later this morning, we engaged in some email

K7NLGRIC

back and forth with them.  We were busy, but we did learn

something from the them.  We got an email around 10:10 a.m. my

time, Pacific time.  They wrote us and they said:

        "Based upon our review to date, the search warrant

appeared not to have yielded content predating September 2019,

and therefore this method of investigation did not request a

copy of the email sent by your client to this account on or

about March 7th, 2019."

        The email was on March 6th.  That was a typo.  They

also wrote they were not conceding that the email was received

and they wished to talk to us more.

        Your Honor, we are very concerned about this late

disclosure, but we also would note --

        THE COURT:  Well, I'm lost.  What's the late

disclosure?

        MR. KLEIN:  So, your Honor, they subpoenaed the email

account where the March 6th email was sent.  There is no record

that that email is in that account.  So there is no record that

the email was ever received in that email account.

        THE COURT:  So they received a response to the

subpoena.  And what did the response to the subpoena say?

        MR. KLEIN:  We don't know, your Honor.  All we know --

we haven't received the materials they've received.  All we

know is that in their looking through those materials, there

are no emails -- what we understand from their response --

K7NLGRIC

1    before September 2019.

2              THE COURT:  Okay.  So how is that any different than

3    what you knew based on your subpoena?

4              MR. KLEIN:  Your Honor, so our subpoena asks for the

5    IP address information.  The IP address information shows where

6    he would have accessed the email account.  We did not seek the

7    content.  They're actually -- from what we understand, their

8    search warrants are for the contents of that account.  And

9    therefore, if they got those contents, they would have

10   potentially a copy of that email.  They do not have a copy.  So

11   this further bolsters our argument that they have no evidence

12   that an email was ever received, read, or acted upon in this

13   district.  They have no email -- they don't have that alleged

14   email in that email account.  We also don't know what else they

15   have.  They have not provided us any of the search warrant

16   return materials.  All we know is that they did a search

17   warrant and that they do not have that email.

18             And I can assure your Honor that if they had found

19   that email in that account, that they would have notified us

20   right away, because I think they would view that as bolstering

21   their contention that they have venue in this district.

22             THE COURT:  All right.  All right.  I'm sure you'll at

23   some point explain to me how this changes where we were before

24   11:00 o'clock last night.  But that's all right.

25             Go ahead.

K7NLGRIC

1          MR. KLEIN:  Yes.  Well, I'll explain it to you right

2    now, your Honor.  It's further evidence that they do not have

3    any proof that the March 6th email was ever received, acted

4    upon, or read in this district, because, for example, if they

5    had --

6          THE COURT:  Well, let me ask you a question.

7          MR. KLEIN:  Sure.

8          THE COURT:  If you have an indictment from a grand

9    jury, the indictment from the grand jury alleges that there is

10   venue in the Southern District of New York.

11         Shall I have a traverse?  Shall I treat this like a

12   summary judgment motion?  Isn't the government entitled to put

13   on its evidence, and based on the evidence at trial, seek to

14   draw a reasonable inference from that evidence?  And it may be

15   that the evidence they seek to draw is not a reasonable

16   inference as a matter of law, in which event I would dismiss

17   the case.  If it is a reasonable inference or could be viewed

18   as a reasonable inference by a reasonable trier of the fact,

19   then it becomes the jury question.

20         There's no Rule 56 in criminal practice.

21         MR. KLEIN:  Your Honor, I understand your question.

22   And Rule 12(b)(3) contemplates a motion like the one we

23   brought.  On pages three and four of our reply, we specifically

24   addressed this question, which is -- if you look at Rule

25   12(b)(3) it in fact says that a motion like this must be raised

K7NLGRIC

1   if the basis for the motion is then reasonably available and

2   the motion can be determined without a trial on the merit.  So

3   the rule contemplates what we're asking you to do.  And I don't

4   think -- your Honor does not need to wait for a Rule 29 motion

5   before the trial.

6           THE COURT:  Well, let's talk about this.

7           So if you have an indictment that fails to allege

8   venue, then you may and should raise that prior to trial.  And

9   I can grant the motion.  Okay?  That's absolutely correct.

10          MR. KLEIN:  Yes, your Honor.

11          THE COURT:  So you're in agreement on that?

12          MR. KLEIN:  Yes, your Honor.

13          THE COURT:  However, if there is not a defect in the

14  indictment and the indictment properly alleges venue, how is

15  that the proper office of a pretrial motion under Rule 12?

16          MR. KLEIN:  Yes, your Honor.

17          We do address this issue also in our reply.  There are

18  a series of cases in this district where the issue is addressed

19  where there is a full proffer by the government or, for

20  example, a bill of particulars -- but we've pointed out that we

21  don't think a bill of particulars is necessary, because the

22  government has provided a full proffer of the evidence for

23  which they relied on for venue when they presented the

24  indictment to the grand jury earlier this year -- then the

25  Court can rule on that.  And that's on pages four and five of

K7NLGRIC

1    our reply, your Honor.  So that is contemplated.

2              THE COURT:  But here is the situation:  The question

3    is whether a reasonable inference can be drawn by the jury.

4    Let's go back in time for a moment.  Let's go back 50 years,

5    long before email.  There may be no proof whatsoever that an

6    individual received a certain letter, that that letter ever

7    arrived in the state of New York.  But upon testimony that a

8    letter was properly addressed to someone in New York with

9    proper postage deposited in U.S. mail, it would be a reasonable

10   inference for a jury to draw that the letter was received by

11   the person to whom it was addressed, even though there's not a

12   scintilla of evidence that they in fact received it.

13             Now, I realize in a world of electronic media there

14   are other theoretic possibilities.  So the question is, it

15   seems to me, if a jury could draw a reasonable inference as to

16   the place of receipt, it's properly a jury question.  Whether a

17   jury can draw a reasonable inference is going to depend on

18   evidence that I haven't heard, evidence that goes beyond the

19   four corners of the transmittal of the email, the nature of

20   what goes on at the Mission of the DPRK in New York, the

21   instruction from an alleged coconspirator to transmit the email

22   to the Mission of the DPRK.  There are surrounding facts and

23   circumstances that may make the inference, it would seem to me,

24   reasonable or may make it unreasonable.

25             Isn't that why a trial is necessary?

K7NLGRIC

1            MR. KLEIN:  Your Honor, let me address those in turn.

2            First of all, I understand the analogy with the

3   letter.  But as your Honor points out, email is --

4            THE COURT:  I am ordering that phones be muted unless

5   you're Mr. Klein, who is speaking at the moment.

6            Okay.  Go ahead, Mr. Klein.

7            MR. KLEIN:  Yes, your Honor.

8            So with mail, when you address it, there's only one

9   address you address it to, and it goes to that physical

10  address.  I know your Honor is aware of that.  With email, it's

11  out an ether.  The email address could be anywhere, whether

12  it's Gmail or even your Honor's chambers' address, or someone

13  could've hacked into it from anywhere.  So I think that analogy

14  is very imperfect and doesn't work in this case.

15           I think the best analogy is the one we offer, which is

16  to the telephone number.  And I think that we've explained that

17  in our reply.  It's very much like when you dial someone's cell

18  phone number, their cell phone could be anywhere in the world

19  when they answer it and could be in this district, in your

20  district, in the Southern District, it could be anywhere else.

21  So I think the analogy your Honor should focus on is the one we

22  offer with the cell phone, because that's the most relevant to

23  this situation.

24           But turning to the question about are there other

25  facts the government has that it's going to offer.  Your Honor,

K7NLGRIC

1   there aren't any other facts they have to offer.  They only

2   have this email.  They don't have any coconspirators'

3   instructions as far as we know.  We have the discovery,

4   your Honor.  They don't have any other facts.

5          THE COURT:  So when you say you have the discovery,

6   you know what the government's evidence is at trial?

7          MR. KLEIN:  I do not know all the evidence the

8   government's going to put on at trial, your Honor.

9          THE COURT:  All right.  Go ahead.

10          MR. KLEIN:  But in the discovery, we have seen nothing

11   to indicate that they have any other additional information.

12   Further, in their opposition, they do not offer anything up

13   like that.  So I think to the extent your Honor feels like

14   there may be additional facts out there to support venue, then

15   we would actually submit to them a bill of particulars,

16   because, again, the idea behind this motion, your Honor, is

17   that we should not -- our client should not have to go to trial

18   in a district for which there isn't proper venue.  And it is a

19   burden to go all the way to trial only to have the case

20   dismissed both in terms of the time spent and the cost.  And so

21   we wanted to raise this motion at the earliest appropriate

22   opportunity, which we believe we have done.

23          We do not believe they have any other evidence than

24   this email to support venue in this district.  They have

25   offered none in discovery and they've put none in their papers.

K7NLGRIC

1    And therefore, if their entire proof rests on this email and

2    undisputed facts surrounding it, and those facts are that it

3    was not ever read, received, or acted upon in this district,

4    because there are no facts to support that, it is appropriate

5    for your Honor to dismiss this indictment at this time.

6              THE COURT:  All right.  Let me hear from the

7    government.

8              The government is permitted to unmute its phone.

9              MR. KROUSE:  Apologies, your Honor.  I was speaking on

10   mute.  This is Michael Krouse, addressing this point.

11             Your Honor, this is -- as the Court I think

12   recognizes -- a fact question for the jury.  The government

13   will be able to prove by a preponderance of the evidence that

14   an overt act in furtherance of this conspiracy occurred in this

15   district.  Specifically, as we laid out in our motion papers,

16   there is real dispute that the defendant sent an email to the

17   DPRK Mission on March 7th, 2019.  There's also no dispute that

18   that email purpose was to have his travel approved and to

19   obtain a Visa to the DPRK.  There is also no real dispute that

20   on April 18th, 2019, approximately five to six weeks later, the

21   DPRK in fact approved Mr. Griffith's travel and issued him a

22   Visa to the DPRK.

23             THE COURT:  But that was not issued out of New York.

24             MR. KROUSE:  No, it was not issued out of New York.

25   But the email was sent to the Mission, which is located in

K7NLGRIC

1    Manhattan, your Honor.

2            The government's position is that these facts were

3    presented to the grand jury, the grand jury found probable

4    cause to believe that venue lied in this district.  The

5    government will present that proof to the jury at trial.  And

6    the jury will be able to infer from that evidence that, beyond

7    a preponderance of the evidence, an act in furtherance of the

8    conspiracy occurred in the Southern District of New York to the

9    DPRK Mission.

10           Even if defense counsel is correct that the proper

11   analogy here is not the analogy your Honor offered, which is

12   sending a letter to an address located in Manhattan, but is the

13   cell phone analogy that the defense offers, the government

14   would still be able to make arguments to the jury that if the

15   person who subscribes to that cell phone resides in Manhattan,

16   even without further evidence, the fact that a communication

17   was made to that cell phone to a person who resides in

18   Manhattan, a reasonable inference is that that person at some

19   point was located in Manhattan in receiving that phone call.

20           And perhaps that wouldn't reach preponderance of the

21   evidence, but it's certainly an argument available to the

22   government.  And it's much stronger here where the DPRK's sole

23   mission in the United States is located in Manhattan; the email

24   address is to that Mission, located in Manhattan; the defendant

25   -- there's no question -- sent an email to that Mission in

K7NLGRIC

1    order to secure his travel documents to north Korea; the

2    defendant received those travel documents and traveled to north

3    Korea.  Those arguments will be made to the jury, and it's the

4    government's belief that the jury will have no problem finding

5    that, beyond a preponderance of the evidence, the government

6    established venue in this district.

7            In any event, as your Honor noted, a grand jury has

8    found probable cause, and there's no reason for the Court to go

9    beyond the face of the indictment in resulting this question

10   here, which is a classic fact question for the jury at trial.

11           THE COURT:  All right.  Let me give Mr. Klein an

12   opportunity to respond.

13           MR. KLEIN:

14           MR. KROUSE:  Your Honor, sorry.  Before that, if I may

15   just address this point about the government's search warrant

16   of that account?

17           THE COURT:  Yes.

18           MR. KROUSE:  Just on the timing of that, your Honor, I

19   think it's important to note that the defense filed their

20   motion on June 1st of this year.  The government, after

21   receiving that motion, decided that it would be prudent in its

22   investigative steps to execute a search warrant on that

23   account.  We got the search warrant on June 5th, 2020.  So,

24   about four days later.  After we received the return from that

25   search warrant, we found that the data itself didn't contain

K7NLGRIC

1    any emails before September 2019.  So as I noted, the email at

2    issue here was sent by the defendant on March 7th, 2019.  So

3    it's not the --

4          THE COURT:  Well, Mr. Klein seems to think it's March

5    6th.  But that's immaterial, I suppose.

6          MR. KROUSE:  Yes, your Honor.  So either March 6th or

7    March 7th.

8          So it's not the case that the search warrant returns

9    just don't have the email.  That's not the case.  The case is

10   that the data that was returned to the government in response

11   to the search warrant doesn't have anything before September

12   2019.  So that's why the government doesn't have this

13   additional proof that the email was received by that DPRK email

14   address.

15         But nothing about that changes the analysis for the

16   Court or the facts that are before the Court.  And the

17   government submits that this was not a late disclosure by the

18   government.  As we said, the search warrant was served on June

19   5th, 2020.  We received returns.  We've looked at those

20   returns, and those returns don't yield anything responsive to

21   the warrant.  So we've provided the warrant to the defense to

22   allow them to make this argument.  We've informed them that the

23   data predates September 2019, and it's our position that it

24   doesn't change the analysis for the Court.

25         THE COURT:  All right.

K7NLGRIC

1              Okay.  Mr. Klein?

2              MR. KLEIN:  Yes, your Honor.

3              So in the government's response, it only highlights

4      their lack of proof.  Your Honor has, under the rules, a

5      gate-keeping role here and can dismiss at this time for lack of

6      venue.  And the cases contemplate looking beyond just the face

7      of the indictment in a case just like here.

8              If your Honor is not going to dismiss at this time, we

9      ask to be able -- we're going to request a bill of particulars

10     from them, because they again have offered no proof of venue.

11     If you listen to Mr. Krouse's statement, he says there's this

12     email, we attached it to our underlying motion.  It is March

13     6th, the date of the alleged email.  And all they have is that

14     email that they allege was sent to that address.  They have no

15     proof it was ever received, ever acted on, or ever read.  And

16     inferences are not evidence, your Honor.  So the only evidence

17     they have is that email.  And it's under this exact type of

18     scenario where the Court should exercise its gate-keeping role

19     and dismiss this indictment.  They can then, if they wish,

20     reindict it where they have proper venue -- or where they think

21     they have proper venue.

22             And if they went to the grand jury and told the grand

23     jury that this email was received in this district, there is no

24     evidence of that.  Again, they only have a sent email, not

25     received.  They have no proof of receipt, no proof it was acted

K7NLGRIC

1  on.  As your Honor pointed out, the Visa was actually issued in

2  Beijing and says that on it.  And they have no proof it was

3  ever read.  So they're asking your Honor to go to trial based

4  on inferences now when the evidence doesn't support venue.  And

5  that is exactly the kind of case that the case law contemplates

6  where dismissal is appropriate at this time.

7           THE COURT:  But what you don't say -- you're not

8  saying is that reasonable inferences are permissibly drawn from

9  evidence and that you don't believe this is a reasonable

10  inference.  That's what you're not saying.  You're acting as if

11  we live in some civil law country where you need a piece of

12  paper in order to establish a fact, and if you don't have a

13  documentary trail, then the fact can't be established.  And

14  that's not the system that we operate under.

15           So the question, even looking at it whilst favorably

16  to your position, is:  Can a reasonable inference be drawn?

17  And if a reasonable inference cannot be drawn, that's a

18  somewhat -- that's a different situation.  But if a reasonable

19  inference can be drawn, then it's up to the jury to decide

20  whether or not to draw that inference.

21           Or is it your view -- and please tell me; maybe it is,

22  and maybe there's case law support for it -- that inferences

23  play no role in an assessment of venue?

24           MR. KLEIN:  Your Honor, first I would start off by

25  saying we don't think a reasonable inference can be drawn.  The

K7NLGRIC

1    inferences actually all point the other direction, that it was

2    never received.  The IP address information we have doesn't

3    show that it was ever received in this district.  It only shows

4    that it was more likely than not received or read in another

5    district, if it was received at all.  The search warrant return

6    details we're now aware of indicate it was not received in this

7    district.  So there is no reasonable inference that it was ever

8    received, read, or acted upon in this district.  So I would

9    start with that.

10        Your Honor, I think, again, the focus should be on:

11   What are the undisputed facts?  We all agreed for purposes of

12   this motion about this March 6th email.  So that is the only

13   piece of evidence they have.  And there's no reasonable

14   inference they can draw from that.

15        Now, the fact that they were serving a search warrant

16   after we filed a motion to try to drum up additional evidence

17   highlights the weakness of their case.  It also highlights

18   concerns about the presentation they made to the grand jury.

19   And it further has --

20        THE COURT:  Now I think you're grabbing at straws.  I

21   don't know.  Usually good lawyers try and bolster their

22   arguments.  You're saying, boy, if they stood up and they said,

23   your Honor, we didn't bother to serve a search warrant, that

24   would make their case stronger on this motion, by saying, we

25   didn't serve any search warrant here?

K7NLGRIC

1          MR. KLEIN:  Your Honor --

2          THE COURT:  You would say, well, I got to give them

3    that, they must have a good case here because they didn't serve

4    a search warrant.  That argument I'm not impress with, quite

5    frankly.

6          MR. KLEIN:  That wasn't the argument I was trying to

7    make.  But I will --

8          THE COURT:  Did I miss something?  Go ahead,

9    Mr. Klein.  Because I just missed the point of that, then.

10          MR. KLEIN:  Well, let me just get to the last point,

11    which is, your Honor, you asked about the standard of whether

12    reasonable inferences can be drawn.  And our point is, no.

13    They're stuck with the evidence they have.  This is not the

14    place to start drawing inferences.  That would be for the jury.

15    And so where we are is:  Does the evidence they have -- can it

16    show venue?  And the evidence they have cannot should venue on

17    its face.  They have no evidence to support that they're stuck

18    with speculative inferences, which they cannot rely on they

19    cannot rely on.  If they get passed this point --

20          THE COURT:  You didn't really answer the question

21    though, which is:  Is it your position that a venue finding by

22    a jury cannot be based on reasonable inferences?

23          Is that your position?

24          MR. KLEIN:  Your Honor, what happens at trial becomes

25    preponderance of the evidence.  So at that point what the trier

K7NLGRIC

1    of fact can do, what the jury can do, is different than where

2    we are at this juncture and what your Honor -- in our opinion,

3    based on the case law -- is supposed to do, which is look at

4    the evidence and not put yourself in the shoes of the jury, but

5    actually just look at the evidence.

6            THE COURT:  Well, I respectfully disagree.  And I

7    don't think your argument is consistent with Second Circuit

8    case law.

9            If a reasonable inference can be drawn from a fact,

10   the government is entitled to put that to the jury.  It may be

11   a very different situation if there is not a reasonable

12   inference that can be drawn.  But the notion that there is a

13   demarcation between the pretrial period and the trial, and in

14   the pretrial period the Court is not permitted to consider

15   whether a jury could draw a reasonable inference from the facts

16   because it must look at the facts without inferences.

17           If you have a case for that, I'd sure like to read it.

18           MR. KLEIN:  Your Honor, I'll just -- I'm sorry if I

19   maybe muddled it.  But, your Honor, to be clear, there is no

20   reasonable inference that can be drawn from these facts.  We're

21   not saying that --

22           THE COURT:  I understand that.

23           MR. KLEIN:  Yeah.  We're not saying they cannot be

24   drawn.  We're saying from these facts, which are undisputed

25   here, there is no reasonable inference to support venue.

K7NLGRIC

1          THE COURT:  That argument, I understand, Mr. Klein.

2    But what I've asked you several times now is:

3          Do you adhere to the argument that, on the issue of

4    venue, reasonable inferences cannot be drawn to establish

5    venue?

6          And I've heard you, I think, twice say:  No they

7    can't -- at least in the pretrial stage, you can't consider

8    reasonable inferences.

9          I get your argument that a reasonable inference you

10   submit cannot be drawn here.  I get that.  But I've asked you a

11   very different question of whether venue can be found by a jury

12   drawing reasonable inferences from the facts presented.  That's

13   the question I've asked a couple of times.

14         MR. KLEIN:  Yes, the jury can draw inferences from

15   facts presented.  Yes, your Honor.  I thought I had said that.

16   And I'm not sure how the conversation got confused.

17         THE COURT:  On the issue of venue?

18         MR. KLEIN:  Yes, your Honor.  My understanding is --

19         THE COURT:  -- then take an account on a motion to

20   dismiss?

21         MR. KLEIN:  Yes, your Honor, the jury can draw those.

22   And your Honor can look at the evidence, and if there is a

23   reasonable inference, I believe your Honor could draw it.  But

24   our point is then that there are no reasonable inferences that

25   can be drawn from the evidence here.

K7NLGRIC

1          THE COURT:  Now I understand you.

2          Go ahead.  I didn't mean to distract your argument, so

3     keep going.

4          MR. KLEIN:  I lost my train of thought.  And maybe it

5     was a train that should have been lost, your Honor.

6          But I just want to circle back to the point, which is,

7     when you look at their briefing, your Honor, and you look at

8     the fact that they are basing it solely on the March 6th email,

9     there is no other evidence they have.  And if your Honor's

10    going to say that there might be, then we'd like to do a bill

11    of particulars, because I think what we will get back from them

12    is that fact, that it is this March 6th email.  And if you look

13    at that March 6th email, there is no reasonable inference that

14    can be drawn that it was ever read, received, or acted upon in

15    this district.  Everything points the opposite direction.  And,

16    your Honor should consider that, which is -- and by "everything

17    points the opposite direction," what I mean is, for example, to

18    the extent we have evidence about that account, we do know that

19    it was more than not accessed not from this district.  We

20    provided that evidence to your Honor.  So we do have the IP

21    address record post-dating -- I think it starting in April

22    2019, almost two-thirds of the time it was accessed outside of

23    this district.

24         We also have the evidence that the Visa itself was

25    issued in Beijing, not in this district.  We also have the

K7NLGRIC

1    evidence that there wasn't a response to this email.  There is

2    no evidence that that this email was responded to, that anyone

3    wrote back to our client or wrote to someone else to say that

4    they were writing about this email.  So there is no evidence

5    that this was read, received, or acted upon.

6            And to the extent there are these logical leaps the

7    prosecutors -- they're basically saying, our client wrote an

8    email, and a month later he got a Visa in Beijing, therefore,

9    the email must have been received in this district.  That

10   defies logic.  There was no response.

11           THE COURT:  Let me inquire of the government.

12           How do you plan to address the assertion -- or how do

13   you plan to address at trial the assertion that in two-thirds

14   of the cases there is proof that emails were received outside

15   the district?

16           MR. KROUSE:  Your Honor, what I'll say on this

17   reasonable inference point and on the bill of particulars

18   point, the bill of particulars is not necessary in the

19   government's view because the government and the defense

20   largely agree on the facts here.  So from the government's

21   perspective, an email being sent -- well, let me back up for

22   one minute.

23           A coconspirator telling the defendant, in order to

24   travel to the DPRK you need to email the Mission in Manhattan

25   at this email address; he then sends an email to the Mission,

K7NLGRIC

1    which is located in Manhattan, asking permission; he's then

2    approved to travel, and a Visa is issued in this other location

3    in China, a reasonable inference from that is that the DPRK

4    Mission located in Manhattan received the email sent by the

5    defendant, which he understood was being sent to the Mission in

6    Manhattan, and then he was approved to travel.  So that is a

7    classic reasonable inference.  It's not something wildly

8    speculative, as the defense is making it sound.

9         It's also not the case that there's all this other

10    evidence that points in the opposite direction.  The couple of

11    times Mr. Klein references the search warrant results -- and

12    it's the government's position that the search warrant results

13    are neither here nor there because --

14         THE COURT:  Well, I got that point.  I don't need to

15    hear more on that.  But I don't think you've addressed the

16    question that I asked you, which is:

17         The argument that's being advanced is that in

18    two-thirds of the instances, emails that were sent to this

19    email address were first accessed outside of the district; and

20    based on that, why wouldn't it be unreasonable to draw the

21    inference that it was received in Manhattan?  It may be -- for

22    example, you could be somebody standing in Vermont getting the

23    email and forwarding it to someone in Beijing or in North

24    Korea.

25         So explain to me why in the face of what I'm being

K7NLGRIC

told, that two-thirds of the emails were received outside the

district, that it would not be a reasonable inference to infer

that this one was received or first accessed in the Mission?

MR. KROUSE:  Yes, your Honor.

And this demonstrates why it's a question of fact,

because the fact that an IP address results to a certain

location does not mean that that person who accessed the email

was in that location.  The government could introduce evidence

from an expert witness or from a lay witness, frankly, that

there are technological means to mask where a person is

accessing an email.  A VPN can be used, various other

technological means.  But just because an IP address shows that

someone's accessing an email in, say, Nebraska, doesn't mean

that person is actually located in Nebraska.  It's very

possible -- and, in fact, likely -- that they were located in

New York using a VPN to mask their location.  So that's one

issue.

The second answer is the government would introduce

evidence that personnel affiliated with the DPRK Mission have

extremely limited ability to travel outside certain locations.

So they're allowed to be in Manhattan.  They can travel to -- I

want to get this right.  But I believe that their Visa limits

them to a certain radius around the DPRK Mission.  So if

there's an IP address that shows that the DPRK admission -- so

okay, I'm getting -- it's 25 miles from Columbus Circle, is

K7NLGRIC

1     what they're limited to by the terms of their Visa.  So to the

2     extent it's showing that the DPRK Mission is accessing emails

3     in Portland, Oregon, that's highly unlikely based on their

4     travel restrictions, and it bolsters the argument, in the

5     government's view, that they're simply using technology means

6     to mask where the emails are being accessed.  So that would be

7     our response to that argument.  And that's what the evidence,

8     we believe, would show at trial.

9            But as far as whether a reasonable inference can be

10    drawn, the DPRK Mission is located in Manhattan.  The defendant

11    knew that.  He sent an email to that Mission in Manhattan.  And

12    a reasonable inference can be drawn that it was received in

13    Manhattan.

14           THE COURT:  Okay.  Let me give Mr. Klein an

15    opportunity to respond to that.  And then I'm going to reserve

16    decision on the motion and we'll move on to the bail

17    application.

18           Go ahead, Mr. Klein.

19           MR. KLEIN:  Yes, your Honor.

20           I'll start out with this, because, as your Honor knows

21    and we all know, an email can be accessed anywhere.  And so the

22    government arguing about a VPN and how it might support the

23    idea that it was accessed in Portland, Oregon or Dublin doesn't

24    prove anything.  It just proves that maybe someone with a VPN

25    was accessing it from somewhere.  For all we know, this account

K7NLGRIC

1    could have been accessed from North Korea this entire time.

2    But what we do know is that two-thirds of the time it was not

3    accessed in this district.

4              We also know --

5              THE COURT:  Well, where was it accessed two-thirds of

6    the time?

7              MR. KLEIN:  So the places include Virginia; Ireland;

8    Abidjan; Portland, Oregon.  Those are the IP addresses.  So if

9    you look at the information we have as an exhibit, two-thirds

10   of the time the IP addresses reflect it was not accessed in

11   this district.

12             And actually, your Honor, even if it shows it was

13   active in this district, just so you know, a VPN -- to the

14   government's point -- you can select and use a VPN like you can

15   select where you're coming from, and someone could be accessing

16   it from North Korea but choosing to show this district.  So all

17   we have is the account was accessed from all over the world,

18   and two-thirds of the time the IP address shows not from this

19   district.  But it's not reasonable to say, well, one-third

20   shows that it was and two-thirds doesn't.  The only reasonable

21   inference from that information is that it was accessed outside

22   of this district.

23             And the fact that the personnel are constrained to

24   this district is irrelevant, because we don't know who had

25   access to this email account.  And what we do know is when it

K7NLGRIC

1    was accessed, it was accessed outside of this district

2    two-thirds or a vast majority of the time.

3            And so they do not have a reasonable inference that

4    this email was ever received, read, or acted upon in this

5    district.  They may have a reasonable inference that it was

6    sent to this district in the sense that that was the intention

7    or maybe this was the intention, but it needs to have been

8    read, received, or acted upon.

9            So the fact that if you look at the email our client

10   might have thought it was going to "that email account" -- I'm

11   going to be clear.  They're conflating these two things.  I

12   should be clear myself.

13           The inference that it was sent to that email account

14   and that the email account was associated with the Mission,

15   just because there's an email account that might be associated

16   with the Mission does not mean that it is accessed at that

17   Mission or even by that Mission.

18           THE COURT:  No.  I understand that.  In fact, your

19   position is -- and if you've got a confirmatory email that says

20   thank you for your email, and it's sent purportedly from the

21   Mission, that doesn't confirm it either.  There's no way ever

22   to confirm where the person was when they accessed it because

23   of VPN technology.  I get that.  I get your point.

24           MR. KLEIN:  Your Honor, you know, there is no way to

25   know where they accessed it.  But that goes back to our

K7NLGRIC

1  telephone analogy we used, which is you know when the

2  government tries to prove location to establish venue in this

3  district, they have a cooperator say, hey, I'm walking on 98th

4  Street in Manhattan, right?  And they have that cooperator come

5  in and say, yes, I was on a cell phone and I was talking to

6  defendant X, and I was on 98th Street and that's why I said

7  that.

8         THE COURT:  Right.

9         MR. KLEIN:  So that's how they regularly prove venue.

10  There is nothing like that here.  In fact, it's the exact

11  opposite.  And so, therefore, again, our position is there is

12  no reasonable inference, they have no evidence it was ever

13  received, read, or acted upon.  And we would ask your Honor to

14  dismiss at this time based on our motion.

15         THE COURT:  Thank you.

16         Mr. Klein, why don't you turn, if you'd like to, to

17  your bail application.

18         MR. KLEIN:  Yes, your Honor.

19         I saw the government filed a response, but I will tell

20  your Honor it was filed today, and I did not have a chance to

21  read it.

22         THE COURT:  All right.  Would you like to do this at

23  another time?

24         What's your pleasure?

25         MR. KLEIN:  Yeah.  We'd like to do it as soon as

K7NLGRIC

1    possible, your Honor, so I don't know if -- we would like to

2    submit a written reply.  So if we could come back tomorrow for

3    a quick hearing.  And I apologize, your Honor, but it was

4    filed, you know, just shortly before this hearing.

5            THE COURT:  How about 1:30 tomorrow?  Does that work

6    for everybody?

7            MR. KLEIN:  Yes, your Honor, that works for me.  But

8    it might be that one of my colleagues will argue it.  And give

9    me a moment to confirm that everyone's available.

10           May I have one minute, your Honor?

11           THE COURT:  Yes.

12           (Pause)

13           MR. KROUSE:  And, your Honor, the government is

14   available at 1:30 tomorrow.

15           THE COURT:  All right.  Thank you.

16           MR. KLEIN:  Your Honor, that works for us.  Thank you

17   for offering that time.

18           THE COURT:  All right.  And, Lisa, I don't know if you

19   could let your office know that we're doing this.

20           Okay.  So that's what we'll do.

21           Now, it seems to me that new information came up at

22   this hearing.  Unless somebody wants to correct me, but I do

23   not recall -- and I might have overlooked reading about this

24   25-mile rule.

25           Mr. Krouse, is that in your papers?

K7NLGRIC

1          MR. KROUSE:  Your Honor, it's in our written response

2     and our reply, and it was in their papers.

3          THE COURT:  Okay.  All right.  As long as -- I just

4     wanted to make sure everybody had a fair opportunity, because I

5     was going to let you put something in if they hadn't raised it

6     in their papers.  But you've responded, so that that seems to

7     be taken care of.

8              So we'll reconvene tomorrow at 1:30 on the bail issue.

9          MR. KROUSE:  Your Honor?

10         THE COURT:  Yes.

11         MR. KROUSE:  If it pleases the Court, whether we want

12    to talk about any type of further scheduling today or after

13    tomorrow?

14         THE COURT:  Well, in terms of scheduling, what did you

15    have in mind?

16         MR. KROUSE:  Your Honor, the parties at least have

17    talked about a motions schedule, and I believe at the last

18    conference your Honor mentioned wanting to set a further

19    motions schedule.  So the defense has filed their venue motion,

20    but I believe they also intend to move to suppress certain

21    items and possibly have another motion to dismiss, is my

22    understanding from our conversation.

23         THE COURT:  Let me hear from Mr. Klein.

24         Mr. Klein?

25         MR. KLEIN:  Yes, your Honor.  We did have a couple

K7NLGRIC

1    conversations this week with the prosecutors about a potential

2    motions schedule.  But we also did receive, after that, some

3    additional discovery.  And we're still trying to understand how

4    much more discovery we will be getting and how soon.  So, you

5    know, we do have some contemplated motions and we had thought

6    about a date for them, but we are concerned about, you know,

7    when we will have all the discovery.  Like I said, just last

8    night, we got a new search warrant application.  And obviously

9    that could be subject to a motion to suppress or another type

10   of motion, so --

11           THE COURT:  Listen.  In setting a motions schedule, I,

12   of course, cannot hold you to something that hasn't yet been

13   produced.  It can only be based on what's been produced today.

14   So, you know, do you have -- what motions are you

15   contemplating?

16           MR. KLEIN:  So we were thinking about an October

17   motions schedule for our motions.  And we have a number of

18   motions contemplated.

19           THE COURT:  What are they?

20           MR. KLEIN:  A motion to dismiss.

21           THE COURT:  On what basis?

22           MR. KLEIN:  Failure to state a claim.

23           THE COURT:  Failure to state a claim?

24           MR. KLEIN:  Well, equivalent of the indictment

25   defective on its face, your Honor.  Sorry.

K7NLGRIC

1          THE COURT:  Okay.  Go ahead.

2          MR. KLEIN:  A motion to suppress at least some of the

3     search warrant, is an issue.

4          THE COURT:  All right.  And what's the basis for the

5     motion to suppress?

6          MR. KLEIN:  I'll let Mr. Buckley take the lead on

7     that.

8          THE COURT:  Yep.

9          MR. BUCKLEY:  Yes, your Honor.

10          And this was one of the items that we've requested

11     some additional information from the government about, and

12     they've agreed to provide us with the information in the

13     relatively near term.  But it's a two-fold motion that certain

14     of the search warrant affidavits resulted in overbroad

15     discovery from the government, in that the facts set forth in

16     the affidavits don't support the breadth of the release that

17     they received.

18          THE COURT:  All right.

19          MR. BUCKLEY:  And in addition to that, we are

20     contemplating a -- depending on the responses we receive from

21     the government, a motion akin to what was litigated in *United*

22     *States v. Wade*, before Judge Nathan, where, in addition to the

23     warrants being overbroad, questions in so far as compliance

24     with the warrants and the materials actually seized pursuant to

25     those warrants and the timing of those seizures in compliance

K7NLGRIC

1    with the warrants.

2              THE COURT:  All right.  I'm not sure I understand that

3    one, but I'm sure you'll make it clear in your papers.  All

4    right.

5              MR. BUCKLEY:  I'll certainly try to make it clearer

6    than I did here, your Honor.

7              THE COURT:  All right.  And anything else?

8              MR. KLEIN:  It's possible, your Honor, that we will

9    reach a resolution with the government where we won't need to

10   file motion to compel on certain issues.  So that's a

11   possibility.  We also plan to submit the demand for

12   particulars.  It's possible we'll be filing a motion for a bill

13   of particulars.

14             THE COURT:  All right.  And you'd like to make these

15   motions when?

16             MR. KLEIN:  We were contemplating October, your Honor.

17             THE COURT:  All right.

18             MR. KLEIN:  Your Honor, there's one other type of

19   motion.  Sorry.

20             THE COURT:  Yes.

21             MR. KLEIN:  Rule 15.  We've been receiving discovery,

22   including this week, about foreign witnesses.  And so we are

23   contemplating the need for a Rule 15 motion.

24             THE COURT:  Help me out with that.  What relief would

25   you be seeking in this Rule 15 motion?

K7NLGRIC

1     MR. KLEIN:  To take the testimony of foreign

2    witnesses.

3         THE COURT:  All right.  Would it be convenient for you

4    to file your motions on October 9th?

5         MR. KLEIN:  Your Honor, only for scheduling reasons

6    because of the east-coast/west-coast time frame.  It makes it a

7    little easier and doesn't ruin our Friday nights, if that makes

8    a difference to your Honor.

9         THE COURT:  No.  Listen, if I give you till -- I'm

10   going to give you till October 8th.  But if I give you till

11   October 9th, you can file them on October 6th.

12        MR. KLEIN:  I know, your Honor.  And that's always our

13   hope, to file earlier.  But I'll tell you, in practice, you

14   know, you're usually filing them on the date they're due and

15   later in the evening, unfortunately.

16        THE COURT:  Okay.  So let's make it October 8th.

17        And would it be convenient for the government to

18   respond by November 5th?

19        MR. KROUSE:  Yes, your Honor, that's fine.

20        THE COURT:  And a reply, I think -- let's see.

21   Thanksgiving is the 26th.

22        Would it be convenient to get your reply in by the

23   19th of November?

24        MR. KLEIN:  Yes, your Honor.  That works for us.

25        THE COURT:  Okay.  All right.  So that's the motions

K7NLGRIC

1    schedule.  And I think the filing of the motions by operation

2    of law excludes time.  And I think time may be excluded in any

3    event because of the pandemic situation.  But I will indicate a

4    motion to exclude time through November 19th.

5         MR. KROUSE:  Your Honor, the government moves to

6    exclude time between now and November 19th to allow the defense

7    to file motions and the government to respond.

8         THE COURT:  Any objection?

9         MR. KLEIN:  No your Honor.

10        THE COURT:  All right.  I find that the end of justice

11   will be served by granting an exclusion and an extension on

12   briefing through November 19th.  The reasons for my finding --

13   well, I'll say that I believe the need for the time outweighs

14   the best interests of the public and the defendant in a speedy

15   trial.  And the reasons for my finding are that there are

16   challenging motions that the defense is contemplating.  They

17   need time for briefing them for a response to the motions, and

18   a reply, and also taking into account the present circumstances

19   of the national emergency because of the pandemic.

20        So accordingly, the time between today and November

21   19th is excluded under the Speedy Trial Act.

22        Is there anything further from the government?

23        MR. KROUSE:  Yes, your Honor.

24        Just two matters that are fairly short.  So first, we

25   just want to inform the Court -- and we've informed the defense

K7NLGRIC

1    about this -- that there will be some classified information

2    litigation in this case.  It's not extensive.  But the

3    government is in the process of assessing its CIPA motion

4    practice in this case.  And part of the challenge has been

5    coordinating with the various agencies in order to conduct an

6    in-person review.

7              So we just want to let the Court know that a motion

8    will be filed, and have the opportunity to perhaps speak to the

9    Court again about a schedule for that briefing once we've had a

10   little more time to coordinate with the various agencies.  So

11   we were thinking that we could put in a letter and ask for

12   exception two under CIPA in about three weeks, if that's

13   acceptable to the Court.

14             THE COURT:  That sounds fine.  Let me ask a question.

15             Mr. Buckley, do you have clearance?

16             MR. BUCKLEY:  I don't currently hold clearance,

17   your Honor, but I am still what they call "within scope," which

18   means it's a very short application process because my

19   background check remains current.

20             THE COURT:  Good.  Okay.  That's fine.  In the event

21   it's needed.  Got it.  Thank you.

22             MR. BUCKLEY:  Okay.  Thank you, Judge.

23             THE COURT:  Go ahead, Mr. Krouse.

24             MR. KROUSE:  Thank you, your Honor.

25             And then just the second issue is, the government and

K7NLGRIC

1    the defense have spoken about an additional protective order to

2    cover 3500 type productions.  The government has already

3    produced early 3500 for three witnesses to put the defense in a

4    position to know what those witnesses have said and to

5    contemplate their Rule 15 deposition motions that they've

6    spoken to the Court about just briefly a second ago.

7            So the government and the defense have arrived at an

8    agreed-upon protective order.  And we'll submit that to the

9    Court for the Court's signature.  And we are available to

10   answer any questions about that tomorrow.

11           THE COURT:  That's absolutely fine.  Thank you very

12   much.

13           And is there anything further from the defendant?

14           MR. KLEIN:  Your Honor, there's not anything further

15   from the defense.

16           THE COURT:  All right.  Let me say that I think the

17   motion to dismiss has been well argued by the attorneys for the

18   defendant and for the government.  The presentations were

19   clear.  I make no apologies for asking pressing questions.

20   That's how I get to the bottom of things in probe.  But I do

21   believe that the advocates on each side well acquitted

22   themselves in a very professional and competent presentation.

23   And for that I thank you.

24           With that, we are adjourned.

25           MR. KROUSE:  Thank you, your Honor.

K7NLGRIC

1          MR. KLEIN:  Thank you, your Honor.

2          MR. BUCKLEY:  Thank you, your Honor.

3                              * * * * * *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25