K706GRIC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              20 CR 15(PKC)

VIRGIL GRIFFITH,

          Defendant.

------------------------------x

                              New York, N.Y.
                              July 24, 2020
                              1:30 p.m.

Before:

                HON. P. KEVIN CASTEL,

                            District Judge

                    APPEARANCES

AUDREY STRAUSS
     Acting United States Attorney for the
     Southern District of New York
MICHAEL KROUSE
KYLE WIRSHBA
KIMBERLY J. RAVENER
     Assistant United States Attorneys

BAKER MARQUART, LLP
     Attorneys for Defendant
BRIAN E. KLEIN
KERI C. AXEL

KOBRE & KIM, LLP
     Attorneys for Defendant
SEAN S. BUCKLEY

K706GRIC

```
 1              (Case called; telephone conference)

 2              THE COURT:  This is United States of America v. Virgil

 3    Griffith, 20 CR 15.

 4              Appearing for the government?

 5              MR. KROUSE:  Yes, your Honor.  Good afternoon.  This

 6    is Michael Krouse for the United States.  With me on the line

 7    are Kyle Wirshba and Kimberly Ravener.

 8              THE COURT:  Good afternoon to you all.

 9              For the defendant.

10              MR. KLEIN:  Good afternoon.  This is Brian Klein.

11    Along with me is Keri Axel and Sean Buckley and my client

12    Virgil Griffith is also on the line and is appearing by

13    telephone from Alabama.

14              THE COURT:  Mr. Klein, am I correct that your client

15    waives his physical appearance and agrees to proceed

16    telephonically?

17              MR. KLEIN:  Yes, your Honor.

18              THE COURT:  Mr. Klein, this is your application.  I

19    have obviously read your letter, your submission, the

20    government's and position and I am ready to proceed.

21              MR. KLEIN:  Thank you, your Honor.  This morning we're

22    going to keep things interesting for you and Ms. Axel is going

23    to argue for Mr. Griffith.

24              THE COURT:  Wonderful.

25              MS. AXEL:  Good afternoon, your Honor.  It is good
```

K706GRIC

1   morning here in Los Angeles, your Honor.

2            THE COURT:  Good morning then to you.

3            MS. AXEL:  Thank you, your Honor.

4            Your Honor, yes, I am sure you now have had an

5   opportunity to look at the application we submitted and Judge

6   Broderick's order and as the Court now knows, Mr. Griffith has

7   a stringent package of pretrial release conditions that were

8   set by Judge Broderick in January.  We have moved for an

9   amendment of two of the conditions.  One is a removal of

10  electronic monitoring and as mentioned in the application of

11  course Mr. Griffith would like to have the electronic

12  monitoring equipment removed and be moved to a curfew system

13  instead.  We're bringing that request at the instigation of

14  Carl Wallace.  The supervising Pretrial Release officer in

15  Alabama requested that we make that part of our request.  From

16  Mr. Griffith's perspective, he would love to have that

17  restriction lifted.

18            The internet restriction is the one that he would

19  really like the Court to focus on.  And he really can't do

20  anything I think, your Honor, productive.  I think most judges,

21  courts, Pretrial Services officers would love for defendants to

22  be in a situation such as getting a job and he can't do that

23  with the internet restriction that he currently has that allows

24  him to communicate only with counsel.  He simply cannot do

25  things like take a class online or participate in Zoom meetings

K706GRIC

1  or communicate by email with friends.  Many of the things,

2  which I think we all even now more in the pandemic situation

3  realize how dependent we are on it.

4           We waited to bring this application, your Honor.  We

5  are mindful and sensitive of not wanting to burden the Court

6  with litigation when it wasn't ripe.  So we waited to bring

7  this I think until the conditions were ripe.  For example, I

8  think it is quite critical that cryptocurrency drives, his cold

9  wallets, as those are referenced, have now been secured.  I

10 think a key piece of the government's argument concerning

11 flight was that those were essentially sort of unsecured

12 resources that could not be traced.  Again, while we dispute

13 the premise about tracing them, nevertheless those cold wallets

14 are the key to accessing cryptocurrency.  We understand the

15 government's concern and we always agreed not to go into the

16 apartment or take any acts to try to take custody of those, but

17 it took some period of time to actually work out a situation

18 where those could be secured by counsel and they now have been.

19 So I think that is a key changed circumstance.

20          I think that the global pandemic, your Honor, we would

21 submit, which the Court yesterday referred to as a national

22 emergency, is also a critical changed circumstance.  I am sure

23 the Court has entertained petitions from defendants to get out

24 of jail and I know many of those petitions have been granted.

25 In this instance I think it definitely makes it harder for

K706GRIC

1    anyone to travel.  Certainly more difficult for U.S. citizens

2    to travel.  I had an international vacation I had to cancel

3    this summer.  You simply cannot move around the way you used,

4    but I think it has changed the lens by which we view things.  I

5    think things were very transitional at the time that the

6    parties were in front Judge Broderick and Mr. Griffith's life

7    obviously was completely disrupted at the time and we may not

8    have fully appreciated how that restriction would wreck havoc

9    on his ability to do anything to do productive.

10           Specifically, your Honor, the work situation has

11    changed.  I think the record in front of Judge Broderick makes

12    it clear that the Court there was interested in his working.

13    Pretrial Services has always recommended that a condition of

14    his release be that he works and Judge Broderick required about

15    work and at the the time we simply didn't know.  The conditions

16    of his arrest were laid out in her papers, but he is arrested

17    on Thanksgiving.  He is transported in November or December to

18    New York.  He doesn't get an appearance until the day after

19    Christmas and his first appearance before Judge Broderick took

20    place in early January.  So things were very much in the air

21    and we just did not have information or really had much

22    opportunity to give thought to work and what that might look

23    like.

24           It is clear now that he is going to still be on leave

25    at the Ethereum Foundation, but he has been offered a

K706GRIC

consulting contract and we offered to make that available to
the Court *in camera* if the Court wishes to see it.  I think he
would be available to do other types of that kind of work.
Given his skill set and I think the where the work world is at
your Honor, he has to have the ability to work online, on the
internet in order to do that kind of productive work and to use
his skills.  So I think that situation has also changed since
the time of the initial hearing.

I would say, your Honor, particularly during this
pandemic, the way for him to get a job is to have internet
access and have monitored internet access.  This is going to
get beyond my technical expertise, your Honor, but he does
back-end work on people's servers from a computer perspective
and it is the type of work that is protected by trade secrets.
And Pretrial Services monitoring software, which Mr. Griffith
also has to pay for which is on the computer now which takes an
image of your screen regularly and transmits, is not secure.
We had a conversation yesterday about VPNs, and people
obviously go to great steps to protect their data as employers
would want their data protected.  So I think it is critical for
his work to be able to have that kind of internet access.

Finally just on the changed circumstance I will say,
your Honor, it appeared to us as Judge Broderick recognized
that this is a fluid situation and he even provided the parties
an opportunity to come back before the final assignment of a

K706GRIC

1    judicial officer, which of course we now have in your Honor.

2    So we think that these are changed circumstances and this is an

3    appropriate time to revisit these conditions so that

4    Mr. Griffith can be as productive as possible while here on

5    release.

6          THE COURT:  Thank you, Ms. Axel.

7          Let me hear from the government.

8          MR. KROUSE:  Yes, your Honor.

9          Before the Court are two requests that the defense has

10    made.  It sounds as though the request to lift home confinement

11    is not one that the defense is pressing.  They continue relying

12    on the Pretrial Services officer.  So that one the government

13    will just say that the defendant remains a risk of flight for

14    all the reasons laid out in the government's papers and all the

15    reasons that were expressed to Judge Broderick.  Judge

16    Broderick found that there were conditions that would

17    reasonably assure the defendant's appearance in court.  One of

18    those conditions was the home confinement condition.  The

19    defense doesn't express any justification really for why that

20    condition should be lifted at this time.  Unless the Court has

21    questions about that, I will move to the internet monitoring

22    condition.

23          THE COURT:  Well, Judge Broderick appears to have

24    ordered home detention with electronic and GPS monitoring; is

25    that correct?

K706GRIC

1          MR. KROUSE:  Yes, your Honor.

2          THE COURT:  Let me just hear defense counsel as to

3     precisely what about that that you seek to have modified if

4     anything.

5          MS. AXEL:  Your Honor, we would be happy for

6     Mr. Griffith to have curfew, but it is specifically the

7     electronic and GPS monitoring.  I think when you use the words

8     "home detention," I think the difference is that with home

9     detention he has to be specifically approved for even things

10    like going out to take a course or going to the gym.

11    Mr. Griffith has expressed to me like there are times when he

12    is needed to go pick up food for the family or he would like to

13    go pick up food for the family even those sorts of things on

14    home detention have to be approved and he can't always get in

15    contact with Mr. Wallace to get approval to do things that help

16    make him also a productive member of his family unit.  I am not

17    sure of the terminology necessarily used in your district, but

18    I think we would ask for simply a curfew without the home

19    detention or electronic monitoring so he could both pick up

20    food, go to the coffee shop, go to the gym without approval,

21    etc.

22          THE COURT:  Thank you.

23          Go ahead, Mr. Krouse.

24          MR. KROUSE:  Your Honor, from the government's

25    perspective he shouldn't be doing any of those things while on

K706GRIC

1    home detention.  He needs specific approval to leave the home

2    for legitimate reasons, which include work, which could include

3    attorney visits and things of that nature.  The government's

4    argument before Judge Broderick is that he should be detained

5    as a risk of flight.  Judge Broderick determined that there

6    were bail conditions that would reasonably assure the

7    defendant's presence and ordered very strict bail conditions to

8    include home detention with electronic monitoring.

9            I am not hearing anything from the defense about why

10   that condition is no longer required.  Judge Broderick found

11   that it was.  The government's position is that it is required.

12   And that if anything the strength of the evidence in this case

13   has enormously grown since the time we were before Judge

14   Broderick.  So if anything, the defendant's incentive to flee

15   in light of the strength of the government's evidence against

16   him, in light of the substantial term of imprisonment he could

17   face, the government put in its letter what its initial

18   determination of what the sentencing guidelines would be all

19   provide an incentive for the defendant to flee.  So if anything

20   what was before Judge Broderick has now grown stronger and the

21   home detention with electronic monitoring in the government's

22   view is both appropriate and necessary to ameliorate any risk

23   of flight that the defendant poses.

24           THE COURT:  All right.  Now let me ask the government

25   is the restriction on computer use and the requirement of

K706GRIC

1    loading monitoring software limited to risk of flight, or is

2    there some other justification for this condition?

3             MR. KROUSE:  Your Honor, it is both in the

4    government's view.  So there is a justification for the risk of

5    flight.  The defendant is an expert on the dark web.  Our

6    understanding is that he developed a browser for the dark web.

7    As your Honor is likely aware, the dark web can be used for a

8    number of elicit purposes, including to secure identity

9    documents and things of that nature which could facilitate the

10   defendant's ability to flee the jurisdiction.

11            The danger to the community is also a factor to

12   consider here.  The defendant has a sophisticated knowledge of

13   technology, which the government has laid out in its papers

14   which underlie the charges in this case.  He has expressed

15   several times a willingness to use that technological knowledge

16   to assist the regime, namely, North Korea with the development

17   of blockchain and cryptocurrency technologies.  We discussed

18   several communications that the defendant had with the

19   co-conspirator regarding the possibility of shipping a rig in

20   order to mine cryptocurrency on behalf of North Korea.  He

21   traveled to North Korea to provide a presentation on these

22   technologies.  Giving the defendant untethered access to the

23   internet would possibly allow him to reach back out to

24   co-conspirators to further North Korea, to possibly chill the

25   government's investigation, to contact individuals who are

K706GRIC

1   possible witnesses for the government's investigation all of

2   which underscores the necessity to have the monitoring

3   technology in place.

4           It is not the case that Mr. Griffith can't use the

5   internet.  That's not what Judge Broderick said.  He said that

6   he can't have a Smartphone and that if he uses the computer

7   that has internet access or some internet device, it needs to

8   be monitored except when he is speaking or emailing with his

9   defense counsel.  In our view that strikes the appropriate

10  balance.  There is no reasons provided by the defense for

11  lifting that condition other than this unclear in the

12  government's view notion that he can't work as a result of that

13  condition.  The reality is he may need to find a job that is

14  consistent with the conditions of release that were imposed by

15  Judge Broderick and there is no reason to lift that condition

16  as far as the government can tell.

17          THE COURT:  Can you tell me whether Judge Broderick's

18  order was premised upon a finding by the preponderance that

19  these were the conditions that can reasonably assure the

20  defendant's appearance, or whether the restrictions were in

21  part based on a danger to the community to persons other than

22  defendant?

23          MR. KROUSE:  Your Honor, I may be wrong and I would

24  want to look more closely, but I don't believe Judge Broderick

25  made a specific finding on that point.

K706GRIC

```
1              THE COURT:  Okay.

2              MR. KROUSE:  He gave conditions that he thought were

3     appropriate for the defendant's release.  It's possible he had

4     in mind both.  I don't think it is entirely clear as the

5     defense makes it that it is purely a risk of the flight that

6     the Court was relying on because I don't think he said that one

7     way or another.

8              MS. AXEL:  Your Honor, I will jump in here.  The

9     government --

10             THE COURT:  I am happy to have you jump in, but I

11    think Mr. Krouse isn't done.

12             Are you done, Mr. Krouse?

13             MR. KROUSE:  Yes, I am, your Honor.

14             THE COURT:  Okay.  You are welcome to reply.

15             MS. AXEL:  Yes, your Honor.  The government never

16    argued detention.  They never argued danger.  Not in three

17    hearings did they ever argue danger.  I don't know if the Court

18    has access to the Pretrial Services report, but the issues here

19    were never about danger and they didn't argue that.

20             I think the Court focused early on on the first

21    questions to Mr. Krouse about sort of the nexus between what is

22    purpose of a condition and is it addressed to just reasonably

23    assure that the defendant will appear or whether it was

24    addressed to something else like danger.  I think it can only

25    have been addressed to assure defendant's reasonable appearance
```

K706GRIC

1    because that is the only thing that was ever argued.  They have

2    never argued that he is a danger.  He is not a danger, your

3    Honor.

4             I think the whole pattern of his very much out and

5    public communications about the decision to go to North Korea

6    shows that.  In fact, we obviously don't agree with everything

7    in the government's proffer about his case; but I think what

8    the Court can take from that is none of that was high tech.

9    We're not talking about somebody getting on and doing some sort

10   of programming thing.  He is not accused of actually using his

11   computer skills for ill.  He gave a lecture and they put in the

12   remarks of what the they allege he said in that lecture.

13   That's the sum total of it.  They never alleged that he is a

14   danger and he is not a danger.

15            I am happy to speak briefly to the dark web issue,

16   your Honor, which was put in front of Judge Broderick.  And I

17   think we were very well able to point out that in fact

18   Mr. Griffith in the context of his knowledge of the dark web

19   has used those skills for good.  Your Honor, we handed up to

20   Judge Broderick —— I wasn't there and the Court wasn't there

21   giving the time of it, but I read the transcript and I

22   participated in the preparation for it.  We handed up to Judge

23   Broderick the research paper.

24            Mr. Griffith is a Ph.D and had a research interest in

25   the dark web and prepared a paper about access to the dark web.

K706GRIC

1    One of the key findings of that paper, your Honor, is in fact

2    that it is not completely dark because it's used for human

3    rights purposes.  A business many times can use it when their

4    countries do not allow them to access Facebook and have free

5    speech that we have here.  He wrote a research paper to that

6    and he in fact got kicked out of the tour project, which was a

7    project where they had created this sort of Google device to

8    access the dark web because Mr. Griffin insisted on cooperating

9    with law enforcement and he has cooperated with law enforcement

10   in teaching and talking about the dark web.  He provided a

11   lecture to Interpol.  In the government's discovery there are

12   correspondence with an FBI agent in Las Vegas, who sent a

13   request for him to pull logs in furtherance of an FBI

14   investigation.  Her name is Anne M. Kempf.  He did so without

15   subpoena so that the data could be preserved.  So he has

16   cooperated with law enforcement.  He has never been accused of

17   doing anything wrong.  So I think it is very important for the

18   Court to sort of separate out these whiffs or suggestions of

19   dangerous use of the internet from really which poses a risk of

20   flight.  There is nothing about his use of the internet that

21   poses a risk of flight.  There is just this mere speculation of

22   something untoward on the dark web.  I suggest, your Honor,

23   that is mere speculation.  There is no evidence to support it.

24   We don't accept it.  We have represented defendants who's

25   expatriate or less.  It is actually a very complicated process

K706GRIC

1    and it is not so easy.  So we reject that suggestion.  But it

2    mere speculation and if in fact Mr. Griffith wanted to use the

3    dark web for such purpose, he likely would not do so on his

4    home computer, your Honor.

5            THE COURT:  Why is that?

6            MS. AXEL:  Well, I think if you were the Dr. Evil,

7    your Honor, that they made him out to be, he wouldn't sit at

8    his home computer that the government could come in and get a

9    warrant to take after he fled and use that to provide the

10   research trail, which would show exactly how he got his

11   passport.  That sort of defies logical sense.

12           THE COURT:  Okay.

13           MS. AXEL:  I am sure the Court if familiar with the

14   idea of a burner phone from a drug deal.

15           THE COURT:  I am.

16           MS. AXEL:  Well, you could imagine someone would get a

17   burner computer and they would go to a public spot where they

18   would have an ISP that couldn't be traced.  So what this

19   restriction does is it doesn't keep anyone from doing these

20   farfetched scenarios that the government proffers concerning

21   speculatively buying a passport somewhere.  What it does do,

22   though, is keep him from Zoom calls with counsel, internet

23   research with counsel, getting a job with an employer that

24   would require his communications to be confidential, doing a

25   workout that is available on YouTube, taking an online course

K706GRIC

1   of some kind and all of that legitimate stuff that all of us

2   do.  It keeps him from that when it does not really secure

3   against these wild scenarios that the government posits.

4           Coming back to another point that I just need clean

5   up, your Honor, Judge Broderick's order doesn't allow him to

6   use the internet but the monitoring software for any purpose.

7   It only allows him to use the internet for communications with

8   counsel, and we have had an ongoing dialogue with Pretrial

9   Services exactly what that means.  We have to revisit it

10  because there are a lot of things that go on in communication

11  with counsel that are not limited to just emails from their

12  email device.

13          So it is a much broader restriction than they make it

14  out to be.  You he cannot have internet on his phone, which

15  means no smart device.  He cannot order or post from his phone.

16  He can't have internet on his computer other than what is in

17  purposes -- I think for the sole purposes of communications

18  with counsel.  So he cannot do what the government is saying

19  that he can do.  It is prohibited by the way that the order is

20  drafted.  All right.  Here is my concern and you are welcome to

21  address it.  Why isn't their clear and convincing evidence in

22  this case that the defendant represents a danger to the

23  community and persons other than himself?  He assisted it

24  appears from the transcripts or endeavored to assist the DPRK

25  in learning how cryptocurrency works and providing them

K706GRIC

1      information.

2              For example, in addition to his attendance at the

3      conference, the government alleges that he proposed over an

4      encrypted application "If you find someone in North Korea, we'd

5      love to make an Ethereum trip to the DPRK and set up an

6      Ethereum node."  And when questioned whether the plan made

7      economic sense Griffith responded, "It does actually.  It will

8      help them circumvent the current sanctions on them."  He made

9      repeated reference to the ability of the DPRK with the

10     knowledge of blockchain and cryptocurrency to evade both U.S.

11     and U.N. sanctions.  That comes up multiple times during the

12     transcript.  My concern is there is a lot you can read on the

13     internet about blockchain technology and about cryptocurrency.

14     I have done so myself in connection with other work.

15              MS. AXEL:  Yes, your Honor.

16              THE COURT:  The fact of the matter is there are

17     aspects of it that a person with Mr. Griffith's skills,

18     knowledge, experience and background could supply questions

19     that he could answer that would either elucidate risks of

20     detection to the North Koreans or means to avoid that risk of

21     detection.  The problem with information once transmitted it

22     cannot be clawed back.  Why doesn't that based on the probable

23     cause finding by the grand jury and the evidence proffered by

24     the government support a finding that releasing the computer

25     restriction also, in particularly if the home confinement or

K706GRIC

1   home detention is lifted, so that he can go elsewhere and use

2   the computer in an unmonitored setting, why doesn't that

3   present a danger of damaging advice being provided to the North

4   Koreans?

5           MS. AXEL:  Well, your Honor, it is difficult to know

6   exactly where to start.  First of all, I will point that it is

7   the government's burden to prove that he is a danger and they

8   have never argued that and that is for a reason, your Honor.  I

9   would love to contextualize again some of the arguments that

10  they have made on the merits to point out this is really about

11  a trip to North Korea to attend the conference the remarks of

12  which at least -- we're not conceding that it is an accurate

13  transcript or that it is an inadmissible transcript, but the

14  government has submitted to the Court what it believes that the

15  defendant said there.  I think to contextualize that, that is

16  the only direct contact with North Korea that the government

17  has alleged.  I would submit it is the only one that they will

18  ever allege is that trip itself.  Those remarks are at a high

19  level of generality.

20          Again, we have defenses to this case.  I don't think

21  we want to tip our full hand to what those are, your Honor, but

22  those are not services.  They have alleged services and those

23  are not services.  In fact, I am familiar with the Court's --

24  the briefing before the Court in SEC v. Telegram because we do

25  that type of work and I know the education the Court has had

K706GRIC

| | |
|---|---|
| 1 | there concerning blockchain.  This kind of information was at |
| 2 | an extremely high level.  It is not how to make a |
| 3 | cryptocurrency and not how to make a cryptocurrency exchange, |
| 4 | which the government said at one point.  It is totally |
| 5 | nontechnical.  It is the type of thing you discuss at a |
| 6 | conference.  It is not the type of thing you do when you sit |
| 7 | down at your computer to draft code.  None of that occurred and |
| 8 | none of that is alleged to have occurred. |
| 9 | The government has also strung together, setting aside |
| 10 | the conference, a few other events.  Your Honor, again, we want |
| 11 | to satisfy the Court's concern that there is no danger |
| 12 | presented without divulging all the defense theories in this |
| 13 | case; but I think the events concerning a node were ones that |
| 14 | were actual communications involving the Ethereum Foundation |
| 15 | itself.  Those ended because -- again, I don't want to divulge |
| 16 | the entire theory of the case, but that whole conversation is |
| 17 | completely separate from the conference itself.  I think what |
| 18 | those communications do show is again there is not – he has no |
| 19 | alliance to anybody at the DPRK.  None of those communications |
| 20 | shows that he does. |
| 21 | The final aspect that the Court referred to about |
| 22 | exchange of cryptocurrency, again, that also is not in any kind |
| 23 | of communication with the DPRK correctly.  They are not |
| 24 | providing technical information to anybody.  Again, there is an |
| 25 | end of that story that I think we need to save for the actual |

K706GRIC

1   merits of the case itself, but I think that the evidence will

2   show that there is no back channel to the DPRK and I don't

3   think there is anyone alleged there.  So, your Honor, there is

4   no evidence that defendant would or has directly contacted the

5   DPRK and would pose a danger in that respect.  And the

6   information that was provided at the conference as the Court

7   can see is consistent with what is available on the internet.

8           So it is not a concern.  Obviously Mr. Griffith has

9   already been punished for that conduct.  He has been arrested

10  in the United States.  He has transported across the country.

11  He has been told not to communicate with witnesses.  The

12  government made another point here about how important it is

13  that he communicated with these witnesses but then they never

14  gave us a list of whose these people.  So we as a defense have

15  done our own instructions, but they have no evidence that he

16  has done anything improper with the telephone he has that has

17  no smart access, but to contact those people.  So the idea that

18  he would be so stupid to go off to try to provide some active

19  assistance now when he never did so before, I just think that

20  we're far afield from really a conversation about a danger

21  which he doesn't pose or a risk of flight, which he also

22  doesn't pose.

23          THE COURT:  Thank you.

24          Since this is the government's burden of proof

25  certainly on release and release conditions, I will give Mr.

K706GRIC

1    Krouse the opportunity to respond.

2               MR. KROUSE:  Thank you.

3               Just on this danger to the community point, defense

4    counsel is correct that the government didn't argue that before

5    Judge Moses or Judge Broderick relying instead on what we

6    believe was the stronger ground of risk of flight.  We did

7    argue for detention.  Of course now that the defense has sought

8    to reopen the bail argument before your Honor, it is our view

9    that your Honor can consider both grounds to continue that

10   condition or to make any other modification that the Court

11   deems appropriate.

12              So just on this point, your Honor, the government

13   argued for detention for the defendant.  We believe that he

14   posed a risk of flight for all the reasons we laid out -- the

15   strength of the evidence, the prospects of punishment, the ties

16   to foreign jurisdictions, the unknown nature of the defendant's

17   financial resources.  All of that in the government's view

18   posed a risk of flight.

19              On this point of internet access, the government

20   strenuously argued for a complete ban on any use of the

21   internet by the defendant.  Judge Broderick decided to do a

22   more limited version of that to allow the defendant

23   opportunities to use the internet to communicate with his

24   counsel, but he did impose certain restrictions in light of the

25   defendant's sophisticated technological knowledge and that was

K706GRIC

1   appropriate.  The defense's argument seems to be that

2   Mr. Griffith's lack of use of the internet is some

3   inconvenience to him, but that shouldn't move the Court.  This

4   was a balance that Judge Broderick struck as a way of not

5   detaining him in prison.  So the fact that he has certain

6   inconveniences that normal citizens don't have is not a ground

7   to lift a restriction that is appropriate in order to address

8   the specific risk of flight posed by the defendant and the

9   government believes in light of your Honor's questions the risk

10  danger that he could pose using his technological knowledge to

11  continue to advise North Korea about cryptocurrency and

12  blockchain technologies.

13          The defense's argument here seems to be there should

14  nobody restriction in place because if he was really going to

15  do that he would find some other way to do that like using a

16  burner lap top or burner phone.  That doesn't seem to be a

17  strong argument.  The government is limited in how it can

18  control the defendant's actions when he is on bail, which is

19  why the government argued for detention in the first place.

20  That is not a reason to lift all restrictions because they

21  would somehow be not fruitful.  The government does want to

22  make it a little more difficult for the defendant to do things

23  that he might decide to do while on bail that are consistent

24  with the things that he was doing before he was released on

25  bail.

K706GRIC

1          So the defense argument that travel to North Korea and

2     providing this technical knowledge to one of the most dangerous

3     and human rights violating countries in the world is somehow

4     not significant conduct and doesn't illustrate a desire to

5     assist North Korea I think is inaccurate.  The defense argument

6     that the government's evidence doesn't show anything beyond

7     just certain types of technical information provided by the

8     defense is also off base.  The government doesn't have a full

9     transcribed recording of the entire conference.  We don't know

10    exactly what Mr. Griffith said every second he was there and

11    every single person he spoke to.  We don't know who he

12    connected with in North Korea, whose contact information he

13    might have obtained, who he might have spoken to later.  We

14    don't have full visibility on that.  We're limited by what

15    evidence we've been able to gather up to point, which is

16    significant.  The recordings are just a snippet of the full

17    conference.  We're not claiming that we have every single

18    communication made by the defendant during that conference.

19         We have not been able to gain access to the

20    defendant's lap top even with our search warrant.  We don't

21    know if the defendant was utilizing the dark web to have

22    communications with people that he met in North Korea after he

23    left the conference or before he traveled to the conference.

24    There is a lot we don't know here.  It's prudent in the

25    government's mind to take steps to try to prevent the defendant

K706GRIC

1    from further damaging national security by communicating

2    possibly with other people and one prudent step toward that end

3    is to monitor his internet access.  There is nothing the

4    defense has said in the government's mind that justifies

5    limiting that monitoring condition on his bail in light of the

6    national security concerns posed and in light of the legitimate

7    risk of flight that the defendant poses.

8              THE COURT:  Thank you, Mr. Krouse.

9              Thank you, Ms. Axel.

10             This is the Court's decision on the application of

11   Virgil Griffith to modify the present bail conditions and to

12   remove the condition of home confinement or detention and/or to

13   at least modify them to a curfew and eliminate the electronic

14   monitoring and GPS and also to modify the restriction of access

15   to internet capable devices that are monitored and then use

16   only for email communications with counsel.

17             It seems to me that Judge Broderick struck a fair

18   balance in this case.  I will point out that the proof of risk

19   of flight, which I find by a preponderance of the evidence is

20   supported by the defendant's obvious access to sources outside

21   the United States.  He is of great value to those who wish to

22   evade U.S. or U.N. sanctions with his knowledge and they would

23   be incentivized to help him flee.  So I find that the

24   conditions that are presently existent satisfy that.

25             Further, this is my finding by clear and convincing

K706GRIC

1    evidence that the conditions are necessary because Mr. Griffith

2    presents a danger to the community and persons in that

3    community other than himself.  The reason I make this finding

4    is having reviewed the partial transcript and which both sides

5    say are unsure of the actual accuracy, the comments reflected

6    therein are of a quote/unquote high level.  In other words, it

7    would enable anyone to develop a blockchain in and of

8    themselves, but the point is that he was able to --

9              MS. AXEL:  Hello.  Did we lose the Court.

10             MR. KROUSE:  I think we should wait to see if he calls

11   back.

12             THE COURT:  I guess it is a mark of the length of our

13   proceeding that the battery on my phone ran out and I have

14   secured another phone.  So that's where we are.

15             As I was pointing out, it is not merely the transcript

16   but the willingness to travel knowing of the likely exposure of

17   the risk he was willing to take is such that this man in my

18   view has the ability to respond to detailed questions with

19   technical information and knowledge that poses a grave danger.

20   That's my concern here and the modest restrictions that Judge

21   Broderick imposed appear to me to address that danger as well

22   as the risk of flight.

23             So the application to modify bail conditions is

24   denied.

25             Anything further from the government?

K706GRIC

1           MR. KROUSE:  No, your Honor.  Thank you.

2           THE COURT:  Anything further from the defendant?

3           MS. AXEL:  Well, I have one question if I may, your

4    Honor.

5           THE COURT:  I don't about questions; but if you have

6    an application you want to make, I am happy to hear it.

7           MS. AXEL:  Okay.  Well, I think my application to the

8    Court would be I think there is confusion here about at least

9    the order itself and how it applies to the use of the internet.

10   Would the Court permit the defendant to use the internet on his

11   computer that is monitored but not just for communications with

12   counsel?  As I said even just to assist the criminal defense,

13   he needs to be able to use the internet beyond the

14   communications with counsel.  He needs to run internet searches

15   for example.  So if that were on the monitored computer, which

16   apparently was what the government's thought that the order

17   was -- we have been reading it more conservatively -- would the

18   Court allow him to use a monitored computer for whatever

19   purpose on the internet?

20          THE COURT:  I understood your application to apply

21   specifically to the limitation on use of the computer except

22   for communications with counsel.  I know I read that and I

23   think you say right in your letter that the restriction of his

24   access to the internet be modified.  "He is only permitted to

25   email with his counsel."  So there is no confusion on this.

K706GRIC

1  That is what your application was and that is what I understood

2  it to be and that is what I ruled on.

3        MS. AXEL:  Okay.  Thank you, your Honor.

4        THE COURT:  Anything else from the defendant?

5        MR. KLEIN:  Your Honor, this is Mr. Klein.

6        THE COURT:  Yes, sir.

7        MR. KLEIN:  I had one point that I forgot to raise

8  yesterday when we were discussing the motion schedule that I

9  wanted to raise.

10        THE COURT:  Yes, sir.

11        MR. KLEIN:  Which is we wanted to ask your Honor to

12  inquire with the government if they plan to supersede between

13  now and the time of motion practice.  If so, we would request

14  that they do so a month in advance of motion practice just for

15  the simple fact that we're not writing motions that get mooted

16  or somehow would radically change by a superseding indictment.

17        THE COURT:  I understand your concern.  If the

18  government supersede, I have no idea.  That's their

19  prerogative.  That is between the government and the grand

20  jury.  You will have a basis to argue whatever you want to

21  argue in terms of an extension in the schedule or change in the

22  schedule.

23        MR. KLEIN:  Thank you, your Honor.

24        THE COURT:  Thank you all very much for the very fine

25  presentations.

K706GRIC

1              We're adjourned.

2                                      o0o