UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA           :

        Plaintiff,           :

    v.                                 20 Cr. 015 (PKC)

                                   :

VIRGIL GRIFFITH,

                                   :

        Defendant.
-------------------------------------------------------x

**DEFENDANT VIRGIL GRIFFITH'S
MOTION TO COMPEL DISCOVERY**

BRIAN E. KLEIN
KERI CURTIS AXEL
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
(424) 652-7800

SEAN S. BUCKLEY
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200

*Attorneys for Virgil Griffith*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 3

LEGAL STANDARDS ................................................................................................................ 4

ARGUMENT ................................................................................................................................ 7

    1.    The Government Should Be Compelled to Review And Produce OFAC's Materials Related to Mr. Griffith And This Case ............................................................................. 7

    2.    The Government Should Confirm The Identity of Witness-2. ....................................... 11

    3.    The Government Should Be Compelled to Produce DOJ, FBI, OFAC, CIA, AND NSA Documents and Communications Related to the DPRK's Cryptocurrency and Blockchain Capabilities. ............................................................................................................... 14

CONCLUSION ........................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amado v. Gonzalez,*
   758 F.3d 1119 (9th Cir. 2014) ....................................................................................... 10

*Brady v. Maryland,*
   373 U.S. 83 (1963) ............................................................................................... *passim*

*Browning v. Baker*
   875 F.3d 444 (9th Cir. 2017) ......................................................................................... 10

*Strickler v. Greene,*
   527 U.S. 263 (1999) ................................................................................................. 6, 10

*United States v. Avellino,*
   136 F.3d 249 (2d Cir. 1998) ..................................................................................... 6, 12

*United States v. Brooks,*
   966 F.2d 1500 (D.C. Cir 1992) ................................................................................ 11, 15

*United States v. Finnerty,*
   411 F. Supp. 2d 428 (S.D.N.Y. 2006) ............................................................................. 9

*United States v. Fischel,*
   686 F.2d 1082 (5th Cir. 1982) ......................................................................................... 5

*United States v. Gil,*
   297 F.3d 93 (2d Cir. 2002) ........................................................................................ 9, 15

*United States v. Gupta,*
   848 F. Supp. 2d 491 (S.D.N.Y. 2012) ........................................................................... 10

*United States v. Leon,*
   468 U.S. 897 (1984) ........................................................................................................ 4

*United States v. Linder,*
   No. 12-cr-22,
   2013 WL 812382 (N.D. Ill. Mar. 5, 2013) ..................................................................... 9

*United States v. Lloyd,*
   992 F.2d 348 (D.C. Cir. 1993) ........................................................................................ 5

*United States v. Mahaffy*,
    693 F.3d 113 (2d Cir. 2012) .................................................................................. 6, 12

*United States v. Morris*,
    80 F.3d 1151 (7th Cir. 1996) ........................................................................................ 9

*United States v. Rodriguez*,
    496 F.3d 221 (2d Cir. 2007) ......................................................................................... 6

*United States v. Stein*,
    488 F.Supp 2d 350 (S.D.N.Y. 2007) ............................................................................ 5

*United States v. Tyson*,
    No. 1:18 CR 708 (CAB),
    2020 WL 255533 (N.D. Ohio Jan. 16, 2020) ............................................................... 9

*United States v. Walker*,
    746 F.3d 300 (7th Cir. 2014) ........................................................................................ 9

*United States v. Wood*,
    57 F.3d 733 (9th Cir. 1995) .......................................................................................... 8

*United States v. Zuno-Arce*,
    44 F.3d 1420 (9th Cir. 1995) ........................................................................................ 9

## Other Authorities

Fed. R. Crim. P. 16 ............................................................................................................ 4, 5

http://www.nycbar.org/member-and-career-services/committees/reports-
    listing/reports/detail/formal-opinion-2016-3-prosecutors-ethical-obligations-
    to-disclose-information-favorable-to-the-defense .............................................................. 6

**PRELIMINARY STATEMENT**

Defendant Virgil Griffith respectfully moves the Court for an order compelling the government to produce the following categories of discovery:

1. All internal materials of the Department of Treasury's Office of Foreign Asset Controls ("OFAC") regarding or in connection with Mr. Griffith's trip to the Democratic People's Republic of Korea's ("DPRK");

2. Confirmation of the identity of "Witness-2" (a foreign witness the government currently plans to call at trial whom the government has explained provided audio recordings of the DPRK blockchain conference at which Mr. Griffith spoke); and

3. Materials from OFAC, Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), Central Intelligence Agency ("CIA"), and National Security Agency ("NSA") related to the DPRK's cryptocurrency capabilities.

The defense is entitled to receive this requested discovery pursuant to Federal Rule of Criminal Procedure 16, *Brady* and its progeny, and other applicable case law, because it will assist Mr. Griffith in defending against the sole charge he faces, one count of conspiring to violate the International Emergency Economic Powers Act ("IEEPA"). As discussed in more detail below, the parties have met and conferred in good faith, the government has refused to provide the above the information and materials, and the parties believe these issues are ripe for adjudication.[1]

As to the first issue, the internal documents and communications of OFAC are both discoverable and critical to the preparation of the defense. The government has produced communications between OFAC and DOJ representatives showing that OFAC initially expressed skepticism that the facts concerning Mr. Griffith's attendance at the DPRK blockchain conference would support the criminal charges here. It therefore is likely that there are internal OFAC documents and communications to which DOJ was not a party that discuss Mr. Griffith's

---

[1] *See* Declaration of Sean S. Buckley pursuant to Local Rule 16.1, dated October 22, 2020, which is being concurrently filed.

trip to the DPRK and the merits of the government's case against Mr. Griffith. Indeed, given OFAC's concerns with proceeding with the prosecution outlined in the produced DOJ correspondence, the OFAC internal materials necessarily would contain information that is at the very least "material" to the preparation of the defense if not outright exculpatory, and likely would inform the cross-examination and impeachment of the government's anticipated OFAC witness.

As to the second issue, and as explained further below, confirming the identity of Witness-2 is critical to providing the defense with sufficient time to conduct its own investigation of this expected government trial witness. In addition, confirming the identity of this witness would permit the defense to decide whether to move the Court for permission to conduct a Rule 15 deposition of the witness (or his or her associates) in the event the witness were to decide not to testify at trial. The defense is unaware of any legitimate concerns regarding any ongoing investigations or specific witness safety issues. In any event, the existing protective orders ameliorate such concerns.

Finally, the U.S. government's knowledge and assessment of DPRK's cryptocurrency capabilities are relevant to factual defenses that Mr. Griffith intends to advance at trial and possible further motion practice regarding whether Mr. Griffith provided "services" to anyone. The government has declined to look beyond the FBI's case file, or into the files or other investigatory agencies, for relevant materials concerning the government's knowledge of DPRK's cryptocurrency capabilities, even refusing to look through the records of other publicly filed cases that the defense has identified as relevant. These materials properly are also discoverable under Rule 16(a)(1)(E).

Mr. Griffith vigorously disputes the indictment's sole charge, and the discovery he now seeks is critical for his defense and will help exonerate him. The government should be ordered to provide the items sought because they are material to defense efforts to prepare for trial.

## BACKGROUND

Mr. Griffith was arrested on November 28, 2020, on a criminal complaint. (*See* Dkt. No. 1 ("Compl.").) On January 7, 2020, a bare-bones indictment was filed against Mr. Griffith, which, like the complaint, alleged one count of conspiring to violate IEEPA, 50 U.S.C. §§ 1701-1706. (Dkt. No. 9 ("Ind.").) The indictment alleges that Mr. Griffith conspired with "others known and unknown" to violate the IEEPA from at least August 2018 until November 2019 by providing services to the DPRK. The indictment provides no substantive details of the alleged services or any other actions undertaken. The bare-bones nature of the indictment is the subject of Mr. Griffith's concurrently filed motions for a bill of particulars and to dismiss. It appears the government's case centers around its claim that Mr. Griffith, a United States citizen who was living in Singapore at the time, violated the IEEPA when he traveled to the DPRK and gave a presentation on "Blockchain and Peace" at the "Pyongyang Blockchain and Cryptocurrency Conference" in April 2019. (Compl. at ¶¶ 5, 15.)

Since the inception of this case, the defense has undertaken its own investigation, conducted a review of the government's voluminous (and continuing) discovery productions, researched applicable legal precedents and principles, and consulted with Mr. Griffith and others regarding the events underlying the charge in the indictment. In preparation for motions and trial, Mr. Griffith made a number of discovery demands of the government. On February 14, 2020, the defense sent the government a letter containing more than a dozen individually tailored discovery requests. The government made its first discovery production the next day and has since produced a significant volume of discovery on an ongoing basis. Some discovery was

produced in response to those requests, but many requests were not addressed. The defense sent the government a follow up letter on July 10, 2020 identifying certain critical outstanding discovery, and since that time the parties have engaged in back-and-forth correspondence[2] that resulted in a significant narrowing of the disputes. As noted above, despite good faith efforts, the parties have reached an impasse on the topics that are the subject of this motion.

## **LEGAL STANDARDS**

A defendant is entitled to be "acquitted or convicted on the basis of all the evidence which exposes the truth." *United States v. Leon*, 468 U.S. 897, 900–01 (1985) (internal quotation marks omitted). To that end, Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides:

> *Documents and Objects.* Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

In *United States v. Stein*, a matter involving prosecutions arising out of the promotion of allegedly phony tax shelters, Judge Kaplan ruled on a request for documents evidencing communications between the United States Attorney's Office and the accounting firm that had employed the defendant as to matters pertinent to the government investigation. Regarding the subject of materiality, Judge Kaplan stated:

> The 'materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an

---

[2] Specifically, letters were exchanged on the following dates: July 22 (government), August 6 (defense), August 28 (government), September 9 (defense), and September 24 (government)). In addition, the parties had a meet-and-confer call on September 15.

4

> important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' 'Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense.' 'There must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[ ] the defendant significantly to alter the quantum of proof in his favor.'

488 F. Supp. 2d 350, 356-7 (S.D.N.Y. 2007) (citations omitted); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (reversing and remanding where district court interpreted Rule 16 materiality to place "a heavy burden" on the defense, and holding evidence is material "as long as there is strong indication it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment.").

The Court is empowered to "order [the government] to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions," Fed. R. Crim. P. 16(d)(2)(A), or to "enter any other order that is just under the circumstances," Fed. R. Crim. P. 16(d)(2)(D). In that vein, the Court may order discovery to protect principles of due process, requirements of fundamental fairness, and to exercise its inherent supervisory power over the integrity of criminal prosecutions. *See United States v. Fischel*, 686 F.2d 1082, 1091 (5th Cir. 1982) ("The federal rules are not the only source for criminal discovery. . . . [I]n certain circumstances due process or the supervisory powers of the courts have been found to require divulgence of information in the government's hands." (citing, *inter alia*, *Roviaro v. United States*, 353 U.S. 53, 77 (1957))). Rule 16 requires the production of inculpatory evidence in addition to exculpatory evidence, and its scope is broader than what is required under *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Baker*, 453 F.3d 419, 424 (7th Cir. 2006).

5

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the government has a duty to disclose information "favorable to the accused" in a timely manner.[3] *Brady* material "includes not only evidence that is exculpatory . . . but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *see United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) (stating that *Brady* material includes material that "would be an effective tool in disciplining witnesses during cross-examination").

The government should disclose *Brady* material regardless of whether the government credits such material or not. Further, *Brady* material must be disclosed, even where such material is included with other evidence that aligns with the government's case. *Mahaffy*, 693 F.3d at 130. The government's obligation to seek—and to produce—*Brady* material is continuing. The government's "broad duty of disclosure" under *Brady* is due, in part, to the notion that the obligation of the government in a criminal prosecution "is not that it shall win a case, but that justice shall be done." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (*quoting Berger v. United States*, 295 U.S. 78, 88 (1935)); *see United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) ("This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions.").

---

[3] The New York City Bar has opined that *Brady* material must ordinarily be disclosed as soon as reasonably practicable for prosecutors to comply with their ethical obligations under New York law. *See* http://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/formal-opinion-2016-3-prosecutors-ethical-obligations-to-disclose-information-favorable-to-the-defense

**ARGUMENT**

1. **The Government Should Be Compelled to Review and Produce OFAC's Materials Related to Mr. Griffith and this Case.**

Based on discovery produced to date, it is clear that OFAC is part of the prosecution team in this case and likely has materials that are not only subject to production but exculpatory to the defendant. At the very least, there is ample basis in the record for the government to believe that OFAC possesses exculpatory materials as defined by Rule 16 and *Brady*. These materials must be reviewed and produced by the government.

On July 10, 2020, the defense asked the government to review and produce any internal documents and communications prepared by OFAC.[4] In its July 22, 2020 response, the government contended that OFAC is not a part of the "prosecution team," and that its files therefore fall outside "the ambit of the Government's relevant disclosure obligations." As described below, however, both claims are inaccurate: OFAC is a part of the prosecution and, in any event, as a relevant department of the Executive Branch like the DOJ, and where the record establishes that OFAC possesses relevant materials, its files must be reviewed and discoverable materials produced.

On July 29, 2020, the government produced several documents reflecting correspondence between and among the U.S. Attorney's Office for the Southern District of New York ("USAO"), the DOJ's National Security Division ("NSD") (the entity within DOJ responsible

---

[4] Mr. Griffith also has requested that the government produce similar records from the U.S. Department of State ("State Department"), which also played a direct role in the investigation and ultimate prosecution of Mr. Griffith. As of October 17, 2020, the government has informed the defense that it had requested such documents from the State Department, and that it anticipates making a production by October 23, 2020. Depending on the scope and nature of that production, Mr. Griffith may supplement this motion to relate to those documents as well.

7

for approving IEEPA charges), and representatives of OFAC.[5]  These materials make clear that the USAO consulted closely with both the NSD and OFAC to evaluate the facts of this case, obtain opinions as to certain legal thresholds, and secure a legal opinion from OFAC.  Notably, as described above, OFAC representatives initially were skeptical that Mr. Griffith's activity of providing publicly available information at a conference in the DPRK amounted to "services" under the IEEPA.  OFAC's skepticism amounted to a roadblock to the USAO's ability to charge this case, and the prosecutors and FBI worked with line staff at the NSD to mount a persuasion campaign to get approval to charge this case.  In the course of these discussions, OFAC agreed to provide an OFAC witness to testify at trial in support of the government's case.

Despite OFAC's involvement in the prosecution and its role in providing a trial witness, the government nevertheless has not abandoned its position that OFAC is not an arm of the prosecution such that it is required to search OFAC's files for discoverable documents.[6]  But the facts show that OFAC was consulted on the theory of prosecution and was asked to provide a witness in support, which it committed to provide.  As such, it is properly considered part of the prosecution team, and the USAO should be compelled to search OFAC's files in compliance with its disclosure obligations.  *See, e.g.*, *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995) (vacating conviction and concluding "under *Brady* the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be

---

[5] *See, e.g.*, USAO_001736 to USAO_001759.  Based on this production, the defense understands that the government has reviewed and produced all relevant DOJ records, including those from the NSD, relating to information provided to OFAC in this case.

[6] In tacit recognition of the relevance of these materials to the preparation of the defense, and pursuant to a renewed request by Mr. Griffith on August 6, 2020 for the production of such materials, the government represented on August 28, 2020 that it had made a request to OFAC to voluntarily provide internal communications regarding this matter; the government later followed up to say that OFAC was "not able to commit to a voluntary production of documents at this time."

considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute.").

Furthermore, the prosecution's affirmative disclosure obligations extend "beyond evidence in its immediate possession to evidence in the possession of other actors assisting the government in its investigation." *United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014). These include materials in the possession of other government agencies. *See*, *e.g.*, *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (under *Brady,* the DOJ must produce any "evidence favorable to the accused when such evidence is material to guilt or punishment" that is known to the DOJ, even if in the possession of another government agency) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)); *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995) (Rule 16 requires the government to disclose "anything in the custody or control of any federal agency participating in the same investigation of the defendant." (internal quotations and citations omitted)).

"The term 'prosecution team' has been broadly construed and includes both investigative and prosecutorial personnel" and "closely connected investigative agencies." *Linder*, 2013 WL 812382, at *33 (citing *United States v. Morris*, 80 F.3d 1151, 1170 (7th Cir. 1996)). To that end, courts have taken the practical approach to define the prosecution as "the team that investigated [the] case or participated in its prosecution." *Morris*, 80 F.3d at 1169; *see also United States v. Tyson*, No. 1:18 CR 708 (CAB), 2020 WL 255533, at *2 (N.D. Ohio Jan. 16, 2020); *United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006). "For *Brady* purposes, it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions, because the purpose of *Brady* is to apprise the defendant of

exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012).

OFAC's materials therefore are not only discoverable but, given the reservations communicated by OFAC, the agency of the U.S. government responsible for implementing and enforcing sanctions, they are likely material to the preparation of the defense, constitute potential impeachment material for the anticipated OFAC witness(es) at trial, and are likely *Brady* materials. The prosecution's failure to review and produce these materials is an error of constitutional dimensions.

Even setting aside the question of whether OFAC formally is considered part of the prosecution team, under circumstances like those presented here, where these agencies have acted on the government's behalf with respect to the conduct at issue, the prosecution has an obligation to review their files. As the Supreme Court has recognized, to comply with *Brady*, "'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). Further, courts have recognized that the prosecution team "'may not be excused from disclosing what it does not know but could have learned,'" because it is in a unique position to get information known to other agents of the government. *Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014) (citing *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc)). More recently, in *Browning v. Baker*, the Ninth Circuit held that "[f]or claims under *Brady*, the prosecutor's personal knowledge does not define the limits of constitutional liability. *Brady* imposes a duty on prosecutors to learn of material exculpatory and impeachment evidence in the possession of state agents, such as police officers." 875 F.3d 444, 460 (9th Cir. 2017).

The facts set forth above require the government to conduct at the very least a "prudential search" of these agencies' files for discoverable materials, particularly given that—like the USAO/DOJ—they are agencies and departments of the Executive Branch. As the D.C. Circuit explained in *United States v. Brooks*, 966 F.2d 1500 (D.C. Cir 1992), the government is required to conduct a search if the defendant has made an explicit request that certain files be searched, and there is a non-trivial prospect that the examination of those files will yield material exculpatory information. *Id*. at 1504.[7] Where the agencies have been involved in the underlying charged conduct at issue as well as the investigation, this standard is easily met. The prosecution should be ordered to direct them to review these agencies' files and produce discoverable material.

### 2. The Government Should Confirm the Identity of Witness-2.

The defense needs the government to confirm the identity of Witness-2 well in advance of trial to be able to prepare for trial and to defend Mr. Griffith at trial. Although the defense believes it knows who Witness-2 is, and has communicated its belief to the government, the government has refused to confirm Witness-2's identity despite the existence of the protective orders here. To be clear, Mr. Griffith is not moving here for early disclosure of a witness list or similar relief, and has limited his request to Witness-2 for the reasons set forth below.

In discovery, the government has produced what it claims to be a recording of the blockchain conference at which Mr. Griffith spoke. The government has represented that it obtained the recording from an individual identified only as "Witness-2." According to the

---

[7] The defense also has requested that the USAO "confirm in writing whether any other government agency worked with the prosecution team (including NSD) in any capacity, like supplying information, in the lead up to this case." The defense has yet to receive a response to that request and respectfully asks the Court to direct the USAO to proffer such confirmation or denial.

government, Witness-2 made the recordings (not acting at the request of the government) and then provided them to the government in January 2020—after Mr. Griffith had been charged. Although the defense has made repeated requests since the production of the purported recording of the conference, the government has declined to confirm the identify Witness-2 beyond stating that he or she is foreign individual who is represented by a U.S.-based attorney (whose name the government provided). The government has also stated it currently plans to call Witness-2 to testify and will disclose his or her identity to the defense 30 days before trial.

The government has not provided important details, including how the recording was made, how Witness-2 obtained it (such as from where or from whom), or whether Witness-2 or anyone else altered or copied it. The limited discovery the government has produced about Witness-2 does not answer those questions. Instead of providing more information, the government referred the defense to Witness-2's attorney, who likewise has refused to identify or answer questions related to Witness-2. The government claims Witness-2's identity is not discoverable and that there are general witness safety issues but, importantly, not any specific ones tied to Mr. Griffith.

The identity of Witness-2, as well as facts regarding the provenance of the recording, its authenticity, and its chain of custody, are material to the preparation of the defense. *See Avellino*, 136 F.3d at 255 (government must disclose information "having the potential to alter the jury's assessment of the credibility of a significant prosecution witness"); *Mahaffy*, 693 F.3d at 131. Among other things, this information would inform the investigation of Mr. Griffith's defenses, and could provide potential grounds to suppress the recording or challenge its authenticity or admissibility at trial. Similarly, any gaps in the chain of custody between the

12

purported creation of the recording and its delivery to the prosecution team would be relevant to the jury's assessment of the weight to afford to such evidence.

Withholding the identity of Witness-2 until 30 days before trial unfairly and significantly prejudices Mr. Griffith in two material respects.  First, given that the government has represented that Witness-2 is a foreign witness who resides abroad, withholding the identity of the witness severely hampers Mr. Griffith's ability to conduct any meaningful investigation into Witness-2, Witness-2's relationship with (or bias toward) Mr. Griffith, and/or Witness-2's affiliation. Second, while the government expects to call Witness-2 as a witness at trial, it is unable to give the defense any assurances that Witness-2 will in fact testify or that the government has the ability to compel Witness-2 to testify.  As such, identifying Witness-2 30 days prior to trial will unfairly prejudice Mr. Griffith's ability to present a defense because if Witness-2 declines the government's invitation to testify at trial in the United States, the defense practically will be prevented from interviewing Witness-2 and/or seeking to compel Witness-2 to testify and be cross examined in person or through a Rule 15 deposition.  The disclosure of Witness-2's identity now is critical.

The government has identified no specific or cognizable threat to the safety of Witness-2 or reason why Witness-2's identity cannot be disclosed.  Rather, the government falls back on unspecified, generalized concerns about the safety of Witness-2 that have absolutely nothing to do with Mr. Griffith.  The parties have agreed to two protective orders that have been entered in this case that should address any genuine concern.  Since the government is unable to proffer any credible basis to withhold this critical information from the defense, it should be compelled to produce it.

3.  **The Government Should Be Compelled to Produce DOJ, FBI, OFAC, CIA, and NSA Documents and Communications Related to The DPRK's Cryptocurrency and Blockchain Capabilities.**

Mr. Griffith requested that the government search its files, those of the FBI, as well as those of the U.S. intelligence community (including the CIA, NSA, and OFAC) for documents and communications regarding the U.S. government's knowledge and analysis of the DPRK's blockchain and cryptocurrency capabilities. The government, however, has committed to searching only the files of the FBI as it relates solely to the investigation and prosecution of Mr. Griffith, rather than its knowledge of DPRK's capabilities more generally.[8] As explained below, the information contained in the files of these other agencies—again, each of which, like the DOJ, is a part of the Executive Branch—is material to the preparation of the defense and properly discoverable under both the government's obligations pursuant to Rule 16 and *Brady*. Accordingly, the government should be compelled to conduct a more thorough review.

Based on the defense's review of the discovery, it appears that one of the "services" the government alleges that Mr. Griffith provided to the DPRK was the provision of information that it did not otherwise have regarding blockchain technology and cryptocurrency. As the defense has explained to the government in correspondence, public reporting related to other DOJ prosecutions and press reports strongly supports the inference that the FBI and DOJ—as well as other members of the U.S. intelligence community—possess evidence that any information that Mr. Griffith allegedly disclosed was already well known to the DPRK. The defense identified the following prosecutions and enforcement actions as but two clear examples in support of this

---

[8] The government has yet to produce to the defense even this impermissibly limited subset of FBI files because they are undergoing declassification. Once the files are declassified and produced to the defense, Mr. Griffith may need to supplement his motions. Mr. Griffith reserves his right to seek additional relief based on the contents of those disclosures.

14

request:

- *United States v. Park Jin Hyok*, Case No. MJ-18-1479 (C.D. Cal.): Park is alleged to have been a programmer for a DPRK government-backed entity called "Chosun Expo" that was responsible for the 2014 Sony hack and the 2017 WannaCry 2.0 attack. The complaint alleges that, in July 2017, nearly two years before our client's trip, North Korea took ransom payments from the WannaCry attack from Bitcoin wallets, which were then sent to a currency exchange and converted to Monero.

- *OFAC Sanctions on Lazarus Programmers*: In March 2020, OFAC sanctioned two Chinese nationals who purportedly work for Lazarus Group, an alleged cyber-crime syndicate backed by the government of the DPRK. The sanctions stemmed from an alleged Lazarus hack in 2018 (again, before Mr. Griffith's trip) in which about $91 million worth of cryptocurrency was stolen and laundered by the two programmers through Chinese banks.

These two examples establish that there are assessments and reports that would demonstrate that the DPRK's extensive knowledge and use of cryptocurrency went well beyond the blockchain basics covered that the conference. Accordingly, at least a prudential search of the files of the relevant agencies is appropriate here. As the communications between and among the USAO, the NSD and OFAC produced in discovery make clear, there is more than a substantial question whether Mr. Griffith's actions in North Korea qualify as "services" under the sanctions regime and whether the provision of publicly available information can violate the IEEPA. That discussion is necessarily informed by the scope of information on cryptocurrency and blockchains already in the DPRK's possession and/or more widely in the public domain.

Because the assessments and reports of the DPRK's capabilities that the defense has required would directly undercut this prosecution, they must be disclosed pursuant to Rule 16 and *Brady*. Having been made aware of the existence of these files, and their materiality, the government should not be permitted to shirk its disclosure obligations by contending that these important materials are held by agencies that it views to be outside of the prosecution team. *See Brooks*, 966 F.2d at 1504; *see also Gil*, 297 F.3d at 101 (under *Brady,* the DOJ must produce any

"evidence favorable to the accused when such evidence is material to guilt or punishment" that is known to the DOJ, even if in the possession of another government agency).

## CONCLUSION

For all the foregoing reasons, Mr. Griffith respectfully requests that the Court compel the government to provide the requested discovery.

Dated:  October 22, 2020

Respectfully Submitted,

*/s/ Brian E. Klein*
Brian E. Klein
Keri Curtis Axel
Baker Marquart LLP

-and-

Sean S. Buckley
Kobre & Kim LLP

*Attorneys for Virgil Griffith*