UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| Plaintiff, | : |
| v. | 20 Cr. 015 (PKC) |
| | : |
| VIRGIL GRIFFITH, | |
| | : |
| Defendant. | |

---------------------------------------------------------x

**DEFENDANT VIRGIL GRIFFITH'S
REPLY IN SUPPORT OF MOTION
FOR A BILL OF PARTICULARS**

BRIAN E. KLEIN
KERI CURTIS AXEL
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
(424) 652-7800

SEAN S. BUCKLEY
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200

*Attorneys for Virgil Griffith*

**PRELIMINARY STATEMENT**

The prosecution and defense of criminal charges is not a game, and the defense should not be forced to use a decoder ring on over 6,800 pages of discovery—much of which has been heavily redacted by the government—to discern the basic information that should be present in *every* indictment: what crimes were actually alleged to have been committed, by whom, and where. The indictment in this case lacks that most basic information, and the discovery to date has done nothing to remedy this serious procedural defect. A bill of particulars thus is warranted to make plain the "essential facts constituting the offense charged" against defendant Virgil Griffith. Fed. R. Crim. P. 7(c). The motion for one should be granted.

**ARGUMENT**

A.  **A Bill of Particulars Is Necessary to Establish with Specificity the Illegal "Services" Mr. Griffith Is Alleged to Have Provided.**

Mr. Griffith's request for a bill of particulars on what "services" he is alleged to have provided in violation of law, including the nature of the alleged services involved, the identification of others involved, the manner in which such services were provided in violation of law, and the amount and source of each payment for such alleged services, is no mere request for further "evidentiary detail." (Opp. at 54.) Rather, it is Mr. Griffith's attempt to understand the criminal conduct he is alleged to have committed from the impermissibly broad charge leveled at him in the indictment of "providing services in violation of law" to one where the government specifically "identif[ies]" each claim for which it intends to prove that [the defendant] may be held criminally responsible." *United States v. Nachamie,* 91 F. Supp. 2d 572, 576 (S.D.N.Y. 2000).

The indictment alleges that Mr. Griffith provided and caused others to provide "services" to the DPRK in violation of 50 U.S.C § 1705(a), 31 C.F.R. §§ 510.206(a) and 510.212(b), and

1

Executive Orders 13466 and 13722. (Ind. ¶ 2.). Nowhere in the IEEPA, Title 31, OFAC regulations, nor Executive Orders 13466 and 13722 is there a definition of what, precisely, is meant by the term "services." As discussed in Mr. Griffith's concurrently filed reply in support of the motion to dismiss, the government also avoids embracing any established definition of the word, arguing only that "services" is to be interpreted broadly. (*See* Opp. at 21).

The fact that the government urges a subjective and expansive definition of "services" should tilt sharply in favor of a bill of particulars, which at minimum, would require the government to identify what facts it believes constitute services. *See Nachamie,* 91 F. Supp. 2d at 574-75 (S.D.N.Y. 2000) (requiring bill of particulars to identify which specific claims the government intended to prove were false at trial in a Medicare fraud case).

The government contends that the "services" it has alleged include, but is not limited to: (a) giving a presentation on topics approved by the DPRK; (b) providing persons located in the DPRK with "valuable" information on blockchain and cryptocurrency; (c) participating in discussions regarding using cryptocurrency technologies to evade sanctions and to launder money; and/or (d) planning to facilitate the exchange of Ethereum between the DPRK and South Korea. (Opp. at 53). These allegations are from the complaint, not the indictment, and by their own definition are non-inclusive examples.

Far from sufficient, these allegations are thoroughly lacking in exactly what the court required in *Nachamie*, 91 F. Supp. 2d at 574-75, that is, a particularized explanation about how the conduct alleged violated the law. For example, a discussion about wanting to exchange Ethereum between DPRK and South Korea does not run afoul of the IEEPA if such discussion is theoretical or aspirational, because an agreement to an illegal objective would be lacking. The Supreme Court has "repeatedly said that the essence of the crime of conspiracy is 'an agreement

to commit an unlawful act.'"  *United States v. Jimenez Recio*, 537 U.S. 270, 270 (2003) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975)); *see also United States v. Flores*, 945 F.3d 687, 712  (2019) ("The crux of a conspiracy is an agreement . . . to accomplish something illegal.").

In that respect, the government's contention that it need not allege or prove a "substantive violation of IEEPA" because it has charged a conspiracy (Opp. at 26) only compounds the problem with the indictment, because a conspiracy indictment must allege "that the intended future conduct the conspirators agreed upon includes all the elements of the substantive crime." *United States v. Coplan*, 703 F.3d 46, 66 (2d Cir. 2012); *see United States v. Tyson*, 653 F.3d 192, 206 (3d Cir. 2011) (conspiracy's "common goal or purpose must be illegal").  If the indictment alleges an agreement to undertake actions that, if accomplished, would not constitute a substantive crime, the indictment fails to allege a conspiracy.  *See United States v. Foote*, 413 F.3d 1240, 1250 (10th Cir. 2005).

Even under its own theory of the case, the bare bones indictment does not allege an agreement sufficient to meet the elements of a substantive violation of the IEEPA.  (*See id.*)  The government's opposition and the discovery make clear that giving a presentation approved by the DPRK in the DPRK also does not alone qualify as an IEEPA violation.  *See, e.g.*, Ex. E ("OFAC says that this is a grey area and general presentations that are given other places may fall under an exception and not require a license, while if specifically created  would be a service."); Ex. B ("On the facts presented, OFAC may not be comfortable giving the assurance with respect to Griffith's travel to NK.").[1]  Given the lack of statutory and regulatory guidance, Mr. Griffith is

---

[1] The documents that are referenced with an exhibit number in this reply are organized in a separately filed Appendix of Exhibits because they are cross-referenced in all three concurrently

more than "entitled to some additional particulars" to adequately prepare his case for trial. *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *4 (S.D.N.Y. Jul. 13, 2010); *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 236 (S.D.N.Y. 2000) (finding a bill of particulars appropriate where government's allegations referred to "broad categories of conduct" and "provide[d] too little information regarding those broad categories).

Indictments in this District typically have greater specificity as to the types of "services" that the government alleged here. (Exs. I-K (*United States v. Atilla*, S4 15 Cr. 867 (RMB) (S.D.N.Y.) ECF No. 293 (indictment) ¶ 90 (incorporating multiple overt acts and defining the "services" object of the IEEPA conspiracy as); *United States v. Nejad*, 18 Cr. 224 (AJN) ECF No. 2 (indictment) (incorporating multiple overt acts); *United States v. Banki*, 10 Cr. 08 (JFK), (including eight paragraphs setting forth means and methods of the conspiracy).)[2]

The indictment here is a far cry from those cases highlighted by the government in its opposition. (*See* Opp. at 54.) In *United States v. Machado*, 986 F. Supp. 2d 288 (S.D.N.Y. 2013), the district court dealt with a "straightforward" narcotics conspiracy indictment located entirely in the United States where all co-conspirators were charged and for which there were unredacted wiretap transcripts of undercover narcotics purchases. In *United States v. Reinhold*, 994 F. Supp. 194 (S.D.N.Y. 1998), the indictment was "detailed in its allegations" and the defendants had the benefit not only of criminal discovery but civil discovery in a related matter. In *United States v. Conesa*, 899 F. Supp. 172, 176 (S.D.N.Y. 1995), the 40-page RICO

---

filed replies. The indictments referenced on page 4 are also given exhibit numbers and found in the same appendix.

[2] *See also* Exs. L-M (*United States v. Huawei Technologies et al.*, 1:18-cr-00457-AMD (E.D.N.Y.) (The IEEPA count incorporates 9 substantive paragraphs describing facts of alleged IEEPA offense); *United States v. Dandong Hongxiang Industrial Development Co. Ltd., et al.*, 2016-mj-06602 (D.N.J.) (IEEPA count includes 9-paragraph "Manner and Means" section and 11 overt acts).)

4

indictment provided defendants with, among other things, "the names of the key members of the enterprise charged;" a "detailed description of how the enterprise and its members operated;" "the exact date of specific violent crimes" committed by the defendants; and "the names of the victims."

In this case, however, the substantive portion of the indictment is all of two pages and contains no specifics whatsoever about how or with whom Mr. Griffith is alleged to have violated the laws enumerated therein (which, themselves, fail to define the term "services" as used in the Indictment). Under these circumstances, a bill of particulars should be granted.

### B. A Bill of Particulars Is Necessary to Identify Unindicted Co-Conspirators.

The government agrees that it has not enumerated all of the individuals it alleges to be co-conspirators; it argues that it is "under no obligation" to do so and has "supplied the defendant with ample notice regarding the charged conduct" by providing "extensive" discovery to Mr. Griffith, including searchable extractions from electronic devices and "early production of Section 3500 material." (Opp. at 50-51).

As an initial matter, the government omits that its productions have been heavily redacted, removing the identifying information of all interview witnesses, and, in some cases, redacting up to half or more of interview summaries. (*See id.* at 64.) The government is also less than candid about how many different potential alleged co-conspirators and witnesses are referred to in the 6,800+ pages of discovery produced to date. For example, the government has produced four reports of interviews with "Witness-2" totaling approximately 285 pages. But Witness-2's identifying information is removed and many of the reports have been heavily redacted (*i.e.,* up to half of the report). Moreover, the materials that Witness-2 provided refer to at least nine other potential co-conspirators/witnesses, including some who apparently flew to the DPRK with Mr. Griffith and multiple persons whom Witness-2 contacted via texts and a

5

messaging app (some who used pseudonymous monikers such as "The Maschine" and others who had deleted their accounts so their messages show only as being sent from "Deleted Account").

Accordingly, this is not the kind of discovery that is an "acceptable alternate form" to a sufficiently particularized indictment. *United States v. Binday*, 908 F. Supp. 2d 485, 497 (S.D.N.Y. 2012). Rather, this is the kind of case where the government "has failed to provide adequate notice of the particulars;" the discovery has been both "voluminous" and yet severely redacted, and the "identification of known unindicted co-conspirators" is absolutely necessary to help a defendant focus his investigation and prepare for trial." *Nachamie*, 91 F. Supp. 2d at 572-73. This is especially true here, where many of the potential witnesses and alleged co-conspirators are foreign nationals. *See Bin Laden*, 92 F. Supp. 2d at 246.[3]

Critically, the government argues that the *Nachamie* factors "militate against a bill of particulars," but it addresses only two of the six factors. (*See* Opp. at 51.) When all six factors are evaluated, they clearly weigh in favor of granting Mr. Griffith's motion. As to the first factor, the government fails to provide a number—or even a numerical range—of potential co-conspirators. Instead, the government states only that it has provided the identities of two alleged co-conspirators and that other known "potential members" include, without limitation, the participants of the Pyongyang cryptocurrency conference, and "[Mr.] Griffith's North Korean government handler." (*Id.*) This alone would be a large number of additional but as-yet

---

[3] From the scant information left unredacted in Witness-2's reports, it appears that he is a foreign national, which increases the likelihood that Mr. Griffith may have to seek permission to depose Witness-2 pursuant to Rule 15 in order to preserve his testimony for trial. As explained further in Mr. Griffith's concurrently filed reply in support of the motion to compel, should the government continue to withhold his identity until 30 days before trial, it will be impossible for Mr. Griffith to take adequate Rule 15 discovery from Witness-2 in advance of trial.

6

undesignated alleged co-conspirators.  But the complaint and other parts of the government's brief suggests that its conspiracy theory may encompass other categories of individuals altogether, including the individuals with whom Mr. Griffith allegedly discussed setting up an "unlawful cryptocurrency equipment in the DPRK" in February 2018; and alleged "co-conspirators at the DPRK Mission" in New York.  (*Id.* at 3, 52.)

Accordingly, it is not the mere identity of individuals that is the issue, but the breadth of the alleged conspiracy (factor 2) and whether various groups of individuals are purported to be part of the same or different conspiracies.  *See United States v. Barrett*, 153 F. Supp. 3d 552, 571 (E.D.N.Y. 2015) (stating that where an indictment "might involve the same co-conspirators, entirely different co-conspirators, or different subsets of the same general group[,]" the "potential for unfair surprise looms large" and "counsels strongly in favor of a bill of particulars.").

The government seeks to minimize the scope and breadth of the alleged conspiracy by arguing that it "centered on a weeklong event, the Conference."  (*See* Opp. at 51.)  But it then also seeks to sweep into the case disparate conduct regarding an alleged attempt to set up "cryptocurrency equipment in the DPRK" in February 2018—well before there was any idea of attending the blockchain conference—and post-conference communications that occurred well into 2019.  (*Id.* at 12.)  Even if Mr. Griffith is, in the government's view, the "hub" of the alleged conspiracy, it is unclear whether the government believes there are multiple spokes, or if the purported conduct may in fact involve different agreements.  Coupled with the fact that the government has alleged no clear theory of services, the government's vague conspiracy allegations have the potential to lump alternative factual theories of a conspiracy in one count, potentially in violation of *Kotteakos v. United States*, 328 U.S. 750, 755 (1946) ("the proof

7

therefore admittedly made out a case, not of a single conspiracy, but of several, notwithstanding only one was charged in the indictment").

In short, given the alleged breadth and various conduct reflected in the government's factual allegations and in discovery, the government has fallen far short of providing adequate notice of the particulars. The indictment's vagueness is compounded by the above-discussed discovery issues: specifically, the volume of pre-trial materials—over 6,800 pages and counting—which includes phone extracts from multiple persons and numerous contacts, as well as substantial redactions. The first through fourth *Nachamie* factors therefore argue for a bill of particulars that identifies the unindicted co-conspirators and provides greater particularity.

As to remaining *Nachamie* factors, the government has not alleged that there is any danger to the potential co-conspirators or to its own investigation. *See Nachamie*, 91 F. Supp. 2d at 572. There is plainly not. The government's alleged conspiracy spans a substantial amount of time, involves multiple persons in multiple countries, and for which there are *zero* identified security concerns with disclosing the names of the unindicted co-conspirators pre-trial.

The Court thus should order the government to provide a bill of particulars outlining such so that Mr. Griffith can adequately prepare his defense.

### C. A Bill of Particulars Is Necessary to Remedy the Indictment's Failure to Properly Establish Venue.

In opposing Mr. Griffith's request for a bill of particulars that outlines with specificity all relevant acts and events that the government alleges occurred in this District, the government directs the Court to the evidence it provided in opposition to Mr. Griffith's motion to dismiss the indictment for lack of venue. (Opp. at 53 [*citing* Dkt. No. 46 at 3-6].) This demonstrates a fundamental misunderstanding of the difference between the government's obligation to *prove* venue and its obligation to *adequately allege* venue.

The government's obligation to prove venue is "appropriately left for trial." *United States v. Szur*, No. S5 97 CR 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998). However, where, as here, it is indiscernible from the indictment which of the defendant's acts were committed within the venue alleged, a bill of particulars is warranted. *See United States v. Wilson*, No. 01 CR 53 (DLC), 2001 WL 798018, at *6 (S.D.N.Y. Jul. 13, 2001) (denying defendants' motion to dismiss but granting a bill of particulars on facts that establish venue); *Szur*, 1998 WL 132942, at *9*; see also United States v. Trie*, 21 F. Supp. 2d 7, 16-17 (D.D.C. 1998) (granting bill of particulars where venue was not adequately alleged in the indictment); *United States v. Villalobos-Macias*, 280 F. Supp. 3d 1211, 1215-16 (D.N.M 2017) (same).

Here, the indictment alleges solely that the conspiracy involving Mr. Griffith took place from "at least in or about August 2018, up to and including in or about November 2019, in the Southern District of New York, the [DPRK], and elsewhere outside of the jurisdiction of any particular state or district of the United States." (Ind. ¶ 1.) While that arguably may be enough—for now—to withstand a motion to dismiss, it is definitely not enough to withstand a motion for a bill of particulars. *See, e.g., Wilson*, 2001 WL 798018, at *6; *Szur*, 1998 WL 132942, at *9; *United States v. Mapp*, No. 95 CR 1162 (FB)(S-1), 1996 WL 506933, at *11-12 (E.D.N.Y. Sept. 3, 1996); *Villalobos-Macias*, 280 F. Supp. 3d at 1215-16. This is not about the *sufficiency* of the government's evidence of venue, but about *what* evidence, *if any*, the government has to establish at trial venue in this District.

If, as the government argues in its opposition, its only evidence of venue in this matter is located at pages 3-6 of its opposition to Mr. Griffith's motion to dismiss the indictment for lack of venue (Dkt. No. 46), then it should have no issue whatsoever with putting such specific evidence into a bill of particulars. *See United States v. Louissaint*, No. 12-CR-6081L, 2016 WL

9

47476, at *2 (W.D.N.Y. Jan 4, 2016) (holding that bill of particulars was appropriate where there were "close questions" regarding venue and government did not argue that there were "factual issues in dispute that preclude resolution at this time").  The only reason not to do so would be to leave the door open for the government to surprise Mr. Griffith with additional evidence of venue at some point before trial, which is exactly the type of result that Federal Rule of Criminal Procedure 7(f) is designed to avoid.  *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (describing how the purpose of a bill of particulars is to prevent surprise).  The Court thus should employ its discretion to order the government to provide a bill of particulars describing the facts that the government intends to attempt to prove at trial—and which were presented to the grand jury—to establish venue.  *See Bortnovsky*, 820 F.2d at 574 (noting that whether to grant a bill of particulars pursuant to Rule 7(f) "rests within the sound discretion of the district court.").

## CONCLUSION

For all of the above reasons and those in the underlying motion, the Court should require the government to provide the requested bill of particulars.

Dated:  December 8, 2020                                    Respectfully Submitted,

*/s/ Brian E. Klein*
Brian E. Klein
Keri Curtis Axel
Baker Marquart LLP

-and-

Sean S. Buckley
Kobre & Kim LLP

*Attorneys for Virgil Griffith*