UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA          :

        Plaintiff,                              :
   v.                                                                    20 Cr. 015 (PKC)
                                       :

VIRGIL GRIFFITH,
                                       :
        Defendant.
-------------------------------------------------------x

## DEFENDANT VIRGIL GRIFFITH'S
## REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY

BRIAN E. KLEIN
KERI CURTIS AXEL
BAKER MARQUART LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
(424) 652-7800

SEAN S. BUCKLEY
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200

**PRELIMINARY STATEMENT**

The government's arguments for denying defendant Virgil Griffith's motion to compel do not hold water and should be rejected.  The Court should order the government to produce the internal materials from OFAC tied to this prosecution and materials from various government agencies regarding the DPRK's blockchain and cryptocurrency capabilities, and to confirm Witness-2's identity.  As outlined in the motion to compel, the defense is entitled to receive this discovery pursuant to Rule 16, *Brady* and its progeny, and other applicable case law, because it is material to Mr. Griffith's defense against the indictment's charge that he conspired to violate the IEEPA.  The importance of the government's *Brady* obligations was recently reaffirmed through the amendments to Rule 5 and by the Court when, following the filing of the motion to compel, the Court entered a *Brady* order.  (Dkt. No. 66.)  The defense respectfully submits that the motion to compel should be granted.

**ARGUMENT**

**A. The Government's Evidence, Including an FBI Report Produced Last Week, Establishes OFAC Was an Arm of the Prosecution.**

The government contends that OFAC is not part of the prosecution team, which is premised on a claim that OFAC only got involved in this case on November 18, 2019 right before the complaint was filed for a "pre-charging consultation."  (Opp. at 56, 60 (Dkt. No. 72).)  Not true.  In contravention of the government's claim to this Court, a belated government disclosure reveals that OFAC played a much broader and even more critical role earlier in the case than was previously known to the defense.[1]

---

[1] This is now the second time the government has provided discovery that is material to an issue before the Court after the defense has briefed the issue and in the lead up to a hearing.  On July 22, 2020, the night before the hearing on the motion to dismiss due to improper venue, the government produced a search warrant and affidavit related to the search of "dprk.un@verizon.net."  Only after pressing the prosecutors did they inform the defense that

1

Last week the government produced an FBI report detailing a teleconference the FBI case agent had with OFAC about this case on October 24, 2019, almost a month before the government's claimed first contact with OFAC.[2]  (*See* Ex. G.)[3]  The FBI report makes clear: (1) OFAC and the FBI compared notes regarding this case; (2) they discussed likely outcomes and *ongoing investigative methods*; and (3) *[b]oth shared recent intelligence reporting and identified remaining key intelligence questions*.  (*Id.*)  During the call, the FBI case agent agreed with OFAC that "FBI and Treasury will continue to coordinate to enable intelligence collection of sources with access to [Mr. Griffith's] case and prior to enforcement actions such as OFAC designations and/or criminal charges." (*Id.*)  In short, they agreed to coordinate on next steps, including charging decisions.  They also agreed that "possible indictment of co-conspirators and/or U.S. citizens" could serve as a deterrent to prospective attendees at the upcoming conference in Pyongyang.  (*Id.*)  Overall, the FBI report shows that the arrest of Mr. Griffith was the result of a joint operation by the FBI and OFAC.

The government's opposition fails to mention this report, and its attempts to minimize OFAC's role to that of a "consultant" or "expert" who came into the picture only days before the complaint was filed in November 2019 are proven false by it.  The FBI report renders entirely

---

"the search warrant appears not to have yielded content pre-dating September 2019 and therefore this method of investigation did not collect a copy of the email sent by your client to this account on or about March 7, 2019."  The discovery was highly relevant to that motion, but the government withheld it during the briefing.  (7/23/20 Transcript at 3-6.)

[2] The government produced this report along with other discovery on December 1, 2020.  Although the government e-mail stated that this round of discovery included a "a recently declassified report regarding communications between the FBI and the Treasury Department," the government did not saying anything else, including explaining why it was only being produced now, after the filing of the motion to compel and the government's opposition.

[3] The documents that are referenced with an exhibit number in this reply are organized in a separately filed Appendix of Exhibits because they are cross-referenced in all three concurrently filed replies.

2

inaccurate the government's claim that "OFAC's review of information gathered by the [g]overnment here occurred only after the initial, pre-charging investigation had been largely completed," and that "OFAC, at least initially, knew little about the facts of the case." (*See* Opp. at 60-61.) Contrary to the government's claim, consultation of the nature revealed in the October 2019 FBI report very clearly turned "OFAC from an expert in the regulations into a full-fledged member of the prosecution team." (*See id.* at 61.) OFAC and the FBI had previously partnered up in their pursuit of Mr. Griffith and his alleged co-conspirators well before the DOJ's National Security Division ("NSD") approved the charging of Mr. Griffith and presented the case to OFAC for final approval on November 18, 2019, not just engaged in a "pre-charging" consultation days before the filing of the complaint, as the government claims. (*See id.* at 56, 60.)

The discovery discussed in Mr. Griffith's opening brief had already shown that OFAC is an integral part of the prosecution team. (*See* Mot. at 7-8.) While the United States Attorney's Office ("USAO") required approval from NSD to bring the IEEPA charge against Mr. Griffith, NSD would not give that approval until it had the requisite assurances and approval from OFAC. This tight and necessary coordination makes sense because OFAC is the sole administrative body overseeing the IEEPA. (*See* Mot. to Dismiss at 14 (Dkt. No. 65).)

The very documents the government produced in discovery, several of which it cites in its opposition, demonstrate the symbiotic relationship between these three entities–USAO, NSD, and OFAC–when it comes to bringing sanctions-related charges pursuant to the IEEPA and in this case in particular:

- E-mail between AUSAs noting that, following a conversation with OFAC, the deputy chief of NSD "has problems" because OFAC "will *have to be a witness* on licensing" in order for the prosecution to proceed;

- E-mail from AUSAs to supervisors noting that "thanks to [the AUSA]'s advocacy, the OFAC people said they would get us an answer promptly, *and signaled that they would support the prosecution*" (emphasis added);

- E-mail from NSD to OFAC requesting "that OFAC make a licensing determination as soon as possible *to enable the FBI to effect an arrest this week*" (emphasis added);

- E-mail from Treasury to NSD and USAO indicating that the author had just spoken with OFAC and expected to get back to NSD and USAO "*with the assurance you need*" to bring charges (emphasis added);

- E-mail from FBI headquarters providing update and stating "SDNY is working to obtain a complaint so we can effect an arrest on an IEEPA charge. *It looks as if CES has consulted with OFAC (I imagine this is customary in IEEPA cases?) and the OFAC attorney is having concerns*."; and

- E-mail from FBI headquarters noting that "Its just the facts of the case, and OFAC determines if a license is required for that activity. If so, and one was not obtained, it's a violation [of the IEEPA]."

(*See* Opp. at 56-58; Exs. A, B, D, F, H)  The above e-mails surely only constitute a portion of the dialogue between these parties, and even then, the correspondence produced is not always complete.  (*See, e.g.*, Ex. B(containing only a portion of an e-mail chain involving NSD, USAO, and OFAC))  But the incomplete samples the government has produced so far by themselves underscore the critical role OFAC played in allowing the prosecution to commence and its contemplated ongoing role at trial.

The circumstances here are critically distinct from those in the *United States v. Middendorf*, Case No.18-CR-36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018) and *United States v. Balszczk*, 308 F. Supp. 3d. 736 (S.D.N.Y. 2018) line of cases, on whose factors the government relies.  (*See* Opp. at 58-59.)  At issue there were documents related to the SEC and its independent investigations of the defendants.  The SEC is an entity situated very differently in its relationship with those prosecutions than OFAC is here.  *See Balszczk*, 308 F. Supp. 3d. at 743 (detailing the distinction between the SEC commissioners and Justice Department personnel).  This crucial difference in circumstances renders the application of the *Middendorf*

4

factors inapplicable where, as here, one agency cannot move forward without the other and that agency is "charged with administration of the statute." But even if they were applicable, the factors would be more than satisfied for the reasons discussed above.

The government's opposition tellingly does not even attempt to argue that the OFAC materials could not constitute *Brady* or *Giglio* materials or dispute their materiality to this case, nor could it credibly do so in light of the evidence. As has been recognized, *Brady* material is not just those materials which contain exculpatory information, but also "evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); (*see also* Mot. at 10). Here, the government has confirmed that an OFAC representative will testify at Mr. Griffith's trial regarding, among other topics, its view that Mr. Griffith's alleged conference presentation constituted a sanctions violation. (Opp. at 66-67; Ex. C.) However, other produced documents establish clearly that this was not OFAC's original position. OFAC, in fact, expressed serious concerns about whether Mr. Griffith's activities constituted sanctions violations and apparently had internal discussions to confirm or rule out those doubts. (Ex. B; *see also* Mot. at 12.)

The exact nature of OFAC's expressed concerns are identical to the issues at stake here: namely, whether Mr. Griffith's presentation falls under the informational exemption under the Berman Amendment and the FTIA and whether the giving of an oral presentation constitutes a "service" in the context of a conference. (*See generally* Mot. to Dismiss.) OFAC's original skepticism strongly indicates that there were further analyses and assessments, very likely memorialized in OFAC documents and internal correspondence. These would be critical in seeking to impeach the government's OFAC witness on OFAC's own interpretation of

5

"services" and "information," and are precisely what Mr. Griffith is entitled to under *Brady* and its progeny. (*See* Mot. at 12).

There should be no dispute that the government has not satisfied its discovery and *Brady* obligations by only requesting a "voluntary" production from OFAC, which OFAC has declined.[4] The Court should direct the government to conduct a full review of OFAC's internal materials relating to this case and to produce them all promptly so it can satisfy its disclosure obligations.

### B. The Court Should Order the Disclosure of Witness-2's Identity.

Mr. Griffith has requested disclosure of the identity of Witness-2, interview reports of whom are already in the discovery. The Court has the discretion to order the government to confirm Witness-2's identity now and should exercise it. Practical and procedural considerations make the disclosure necessary to keep trial preparations and scheduling on track and are not undermined by any genuine security concerns.

The government argues that it is not required to produce witness statements before a witness testifies and has already produced discovery related to Witness-2. (Opp. at 63-64.) But since the government has already produced heavily redacted statements of Witness-2, this is not even an issue before the Court, and not what the defense is seeking. The fact that the government provided Witness-2's attorney's contact information also does not remedy the problem. (*See id.* at 64.) The defense has contacted that attorney, and he will confirm neither his client's identity nor that his client is willing to testify at Mr. Griffith's trial. Indeed, he has explained that his client has not authorized him to discuss the case with the defense at all.

---

[4] To the extent the government is withholding any communications between the USAO or NSD with OFAC still, those should all be produced promptly as well.

Next, the government alludes to possible witness security concerns, but these are speculative. None are specific to Witness-2 or tied to Mr. Griffith. For example, the government claims, without citation, that people supportive of Mr. Griffith "are seeking to identify any individuals assisting the [g]overnment," yet underscores the speculative nature of its argument by saying this "potentially" might be to deter their cooperation. (*Id.*) The government goes on to note generically that the DPRK has engaged in violence against opponents in the past. (*Id.* at 65.) The government, however, does not tie this concern to this case. Notably, the government raises no concerns about Mr. Griffith himself doing anything improper because there are none. Further, the two existing protective orders already act as safeguards to keep the identity of Witness-2 out of the public sphere.

The government then argues that the defense has not shown a specific need for confirmation of Witness-2's identity. (*Id.*) The government claims that questions about the alleged conference recordings (*e.g.*, provenance and chain of custody) can be addressed in part by speaking with Witness-2's counsel.[5] (*Id.*) But given that counsel is not authorized to discuss the case with the defense, such an argument is meritless and mitigates in favor of disclosure.

Lastly, the government claims the identity of Witness-2 is not necessary for a Rule 15 motion. (*Id.*) This ignores practical considerations and Rule 15's own mandate. The government is correct that the defense knows at least some of Witness-2's anticipated testimony (a minimal amount as the produced statements are heavily redacted), that Witness-2 resides abroad, and that Witness-2 may be unavailable for trial. (*See id.* at 66.) Before filing a Rule 15 motion, however, the defense would need to undertake as much investigation as possible about

---

[5] The government also states that the defense can examine the recordings, but inspecting them will only answer a limited number of questions and even those would be benefitted by the additional insight of the person who provided them, *i.e.*, Witness-2. (*See* Opp. at 65.)

7

Witness-2 to determine whether it wishes to conduct a deposition. The defense cannot conduct such investigation without knowing the identity of the witness. Further, without Witness-2's identity, the defense cannot locate Witness-2, leaving it in the untenable position of seeking a deposition of an unknown person in an unknown country. This would cause all sorts of significant problems, including the inability to comply with Rule 15(b)(1)'s requirement of giving reasonable written notice of the deposition's date and location.

For these reasons, Mr. Griffith respectfully requests that the Court order the government to confirm the identity of Witness-2.

### C. The Government Should Be Compelled to Produce Government Agency Materials Related to the DPRK's Cryptocurrency and Blockchain Capabilities.

The arguments the government raises to support its refusal to search government agency records beyond limited FBI records tied to this case all fail.

At the outset, in an attempt to paint Mr. Griffith's request as unreasonable, the government has dramatically overstated Mr. Griffith's arguments. Mr. Griffith has not requested a "wide-ranging and open-ended search of files" as the government claims, and the cases the government cites miss the point. (*See* Opp. at 66.) The defense request is narrowly tailored. Indeed, it highlights two specific cases that almost surely have responsive information: *United States v. Park Jin Hyok* and *OFAC Sanctions on Lazarus Programmers*. (*See* Mot. at 15.) The defense only wants a limited and prudential search of the files of the relevant agencies, which have been carefully identified based on the discovery and which is limited in time to a few years before his trip. As noted in Mr. Griffith's motion, the Court should not permit the government to avoid its discovery obligations by claiming that these important materials are held by agencies

that it views to be outside of the prosecution team.[6]  *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (under *Brady,* the prosecution must produce any "evidence favorable to the accused when such evidence is material to guilt or punishment" that is known to it, even if in the possession of another government agency).

The government goes on to claim that the requested information is irrelevant to the elements of the offense charged.  (Opp. at 67.)  Not true.  The government's theory of services is that Mr. Griffith provided "highly targeted" "specific" and "tailor[ed]" information that benefited the DPRK.  (Opp. at 23).  Accordingly, the government will need to prove that the information Mr. Griffith allegedly provided at the conference was, at least in part, not known in the DPRK and not publicly available elsewhere.  Further, the government must prove that Mr. Griffith's alleged presentation was not mere information in the public domain but was "created" for the conference.  (*See* Opp. at 29-30; *see also* Reply in Support of Mot. to Dismiss ("Reply") at 11-13.)  This directly puts at issue whether or not far more technical information was already known to the DPRK regime before the conference.

The government's final argument is that the request is irrelevant because Mr. Griffith's alleged conspiracy need not have succeeded to be a conspiracy.  (Opp. at 68.)  This, however, is simply an attempt at misdirection.  The government cannot establish "services" under the theory that some attendees left "with a better understanding of blockchain and cryptocurrency technologies." (*See* Opp. at 68-69).  Rather, the government must meet the statutory definition of services, which includes proving that the information provided was not "information" as defined in the informational exemption.  (*Id*.)  To do this, the government will introduce into the

---

[6] This government argument also deserves, at minimum, extra scrutiny given the government's unwillingness to review OFAC's files in spite of clear evidence that they contain information that is not only relevant but helpful to the defense.

trial, as it has in its consolidated opposition, argument and evidence that Mr. Griffith's alleged presentation provided new information to the DPRK. The defense needs to have access to government records that help demonstrate this is untrue.

Since the materials are properly discoverable, the government should be required to conduct a limited search for this highly relevant information.

## CONCLUSION

For all the above reasons and those in the motion to compel, Mr. Griffith respectfully requests that the Court compel the government to provide the requested discovery.

Dated:  December 8, 2020

Respectfully Submitted,

*/s/ Brian E. Klein*
Brian E. Klein
Keri Curtis Axel
Baker Marquart LLP

-and-

Sean S. Buckley
Kobre & Kim LLP

*Attorneys for Virgil Griffith*