L2NKGRIC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                              20 CR 15 (PKC)
                                           Remote Conference
5  VIRGIL GRIFFITH,

6              Defendant.

7  ------------------------------x

8                                          New York, N.Y.
                                           February 23, 2021
9                                          12:03 p.m.

10  Before:

11                    HON. P. KEVIN CASTEL,

12                                         District Judge

13
                        APPEARANCES
14
   AUDREY STRAUSS,
15      United States Attorney for the
        Southern District of New York
16  KYLE WIRSHBA
   KIMBERLY RAVENER
17      Assistant United States Attorneys

18  WAYMAKER LLP
        Attorneys for Defendant
19  BY:  BRIAN EDWARD KLEIN
        -and-
20  KOBRE & KIM LLP
   BY:  SEAN STEPHEN BUCKLEY

21

22

23

24

25

L2NKGRIC

1                    (The Court and all parties appearing telephonically)

2                    THE COURT:  We'll go on the record.

3                    This is United States of America against Virgil

4    Griffith, 20 CR 15.

5                    Appearing for the government, please?

6                    MR. WIRSHBA:  Good afternoon, your Honor.  Kyle

7    Wirshba and Kimberly Ravener, appearing for the government.

8                    THE COURT:  Good afternoon to you both.

9                    And for the defendant?

10                   MR. KLEIN:  Good afternoon, your Honor.  This is Brian

11   Klein.  I believe my colleague, Keri Axel, is also on, and Sean

12   Buckley, from Kobre & Kim, is on the line.  And Mr. Griffith is

13   on the line from his parents' home in Tuscaloosa.

14                   THE COURT:  All right.

15                   Ms. Axel, are you on the line?

16                   You may have to unmute.  I'm not hearing you.

17                   Mr. Buckley, are you on the line?

18                   MR. BUCKLEY:  I am, your Honor.  Good afternoon.

19                   THE COURT:  Good.  Good afternoon.

20                   And, Mr. Klein, is it all right if we participate

21   without Ms. Axel, or would you prefer that we wait?

22                   MR. KLEIN:  Your Honor, we can proceed.

23                   THE COURT:  All right.

24                   Mr. Griffith, good afternoon.  Can you hear me?

25                   THE DEFENDANT:  Yes, I can hear you just fine.  Thank

L2NKGRIC

1   you.

2          THE COURT:  All right.

3          And, again, as with the prior conferences, this is

4   being held telephonically.  If you prefer, I could postpone

5   this conference to a date where you and your counsel could

6   appear in a courtroom with your counsel at your side.

7          Do you wish me to proceed today, or shall I adjourn

8   this to a time when you can be in the courtroom with your

9   counsel?

10          THE DEFENDANT:  Please proceed, your Honor.

11          THE COURT:  All right.  I find the waiver is knowing

12   and voluntary, and it's accepted.

13          So let me hear from the government as to what's

14   transpired in these negotiations and where we are.

15          MR. WIRSHBA:  Yes, your Honor.

16          The parties have continued to negotiate in good faith,

17   and despite our best efforts, we, unfortunately, have not come

18   to a resolution on a proposed stipulation for the Court.  I am

19   happy to go through the points that I believe remain in

20   contention or proceed however the Court would prefer.

21          THE COURT:  Well, listen, I understand it's

22   negotiation in good faith, but where there's a will, there's a

23   way.

24          Is there anything I can do to bring the parties

25   together, or have you explored all your options and there's no

L2NKGRIC

1     point in further discussion?

2              MR. WIRSHBA:  Your Honor, I believe that the parties

3     have come to an impasse, and there are certain issues that the

4     parties are just not in agreement on with respect to the

5     Court's proposed stipulation suggested at the last conference.

6     I think that if the Court would be so inclined, I think the

7     government would appreciate either explaining its position to

8     the Court or possibly putting in a letter to the Court

9     describing its position.

10              THE COURT:  Explain your position.

11              MR. WIRSHBA:  Of course, your Honor.

12              So, the government is largely comfortable with the

13     Court's proposed stipulation as suggested at the last

14     conference.  There is one point of clarification that I think

15     the government believes that it needs in order to sign on to

16     that stipulation, and that's because the Court suggested adding

17     not only argument -- limiting the government's argument, but

18     also limiting the evidence that the government could put on.

19     What the government wants to clarify is -- I'm sorry, what was

20     that?

21              THE COURT:  No, I said correct.

22              MR. WIRSHBA:  Oh, okay.

23              And what the government wants to clarify is that that

24     stipulation will not prevent the government from putting on

25     evidence such as the defendant's statements or coconspirator

L2NKGRIC

1    statements that might arguably incidentally touch on the issue

2    of the stipulation.  So, for example, while in the DPRK, Virgil

3    Griffith told a colleague, and I am quoting here, "They're

4    curious about this blockchain thing.  The tech here is weak.

5    They seemingly know nothing."

6          During his presentation in the DPRK, Griffith said:

7    "This new technology, like, no one knows how to do all this

8    right yet, but we definitely think this will be really useful

9    to the DPRK and that's why we're here, and if the DPRK adopts

10   it, they will be on the very leading-edge of this technology."

11         So, your Honor, those are examples of statements of

12   the defendant that the government would seek to introduce at

13   trial.  And those statements could arguably -- if the

14   government chose to do so, could be argued to the jury that

15   there are inferences that should be made from those statements

16   about the entire DPRK's cryptocurrency capabilities.  Now, the

17   government has already agreed not to make those arguments, not

18   to argue to the jury anything about whether or not the

19   government, as a whole, of the DPRK had these cryptocurrency

20   capabilities.  The government has agreed not to argue that.

21   But, nonetheless, the government still believes that it would

22   be appropriate to offer these statements at trial.  And so the

23   government suggested to the defense some kind of limitation on

24   the stipulation, as proposed by the Court, that it should not

25   preclude the introduction of any statement by the defendant, or

L2NKGRIC

1    his alleged coconspirators, or witness testimony regarding the

2    events of the conference or the conference attendees.

3            And, your Honor, the reason that this is important is

4    because, in the government's view, the government shouldn't be

5    constrained from offering the statements of the defendant and

6    the issue that we're talking about here, which is whether or

7    not the DPRK government as a whole had knowledge or

8    capabilities in the cryptocurrency technologies that Griffith

9    was describing.  That is just irrelevant to this case.  What is

10   relevant is the people that Griffith interacted with and their

11   knowledge and capabilities, and anyone that he intended to

12   provide services to, and their knowledge and capabilities, and

13   Griffith's intent with respect to those things.

14           So, your Honor, the government would seek in limine,

15   later on in this case, to limit any evidence about the DPRK's

16   general cryptocurrency capabilities and believe that that issue

17   is just not properly before the Court at this point, but that

18   the Court should, when it comes to in limine practice, limit

19   either party from making any arguments about irrelevant DPRK

20   government employees and what their cryptocurrency capabilities

21   were or what their knowledge of cryptocurrency or other

22   blockchain concepts were.

23           Your Honor, to the extent that there are limitations

24   on the inferences that should be drawn by the jury, those are

25   best handled through the parties' requests to charge and the

L2NKGRIC

1    practice that comes from that.

2          So, your Honor, the purpose of this stipulation, as

3    the government understood it, was to take something off the

4    table.  It was to ensure that something that the defense was

5    worried about, which is that the government was going to make

6    arguments about the DPRK's cryptocurrency capabilities as a

7    whole doesn't happen.  And the government has already offered

8    to take that off the table by affirming that the government

9    will not make arguments about that topic, and the government's

10   also willing to accept the stipulation that was proposed by the

11   Court about evidence and arguments.  The government just wants

12   to make sure that that stipulation does not constrain its

13   evidence that should be permissibly admitted at the trial,

14   including Griffith's statements and coconspirator statements

15   that might arguably touch on this issue, even though the

16   government is not going to be arguing those things.

17         THE COURT:  Now, have you identified for the defendant

18   what the coconspirator statements are?

19         MR. WIRSHBA:  We have not identified all of the

20   coconspirator statements.  They're, of course, included in the

21   discovery, to the extent that we currently possess them.  And

22   as the Court knows, we have also been producing early 3500

23   material for certain of our witnesses that contain statements,

24   but the government has highlighted for the defense several

25   specific instances of these statements, statements from the

L2NKGRIC

```
1   defendant, statements from Chris Emms, both in our negotiations

2   with the defense and also in the government's papers as part of

3   its motion practice.

4               THE COURT:  All right.

5               Let me hear from the defendant.

6               MR. KLEIN:  Good afternoon, your Honor.  This is Brian

7   Klein.

8               We did meet and confer last week, on Thursday, and we

9   spent quite a bit of time talking with Mr. Wirshba and

10  Ms. Ravener.  And after that, we actually sent a proposal to

11  them, which they didn't respond to.  So, we understand, as

12  Mr. Wirshba said, those are their concerns.  We don't think

13  those address our concerns and the purpose of our motion.

14              So we did submit a proposal that we think addresses

15  their concerns that they want to put in evidence that at least

16  certain individuals at the conference gained new information.

17  So we were agreeable to a stipulation like the one you proposed

18  with a caveat like that at the end.  We sent them a variation

19  of the stipulation we had discussed with you at the last

20  conference.  It was a little different, but along the same

21  lines, but with a caveat at the end that they may present

22  evidence that certain individuals at the conference gained

23  information new to them.

24              So I think we are at an impasse, your Honor.  I think

25  Mr. Wirshba's presentation of what they intend to offer into
```

L2NKGRIC

1    evidence -- and they haven't told us all they intend to offer,

2    they've highlighted some, as Mr. Wirshba indicated, but our

3    concern is that what's going to happen here at trial, your

4    Honor, is they're going to put in evidence that people learned

5    new things at the conference, that a number of those people at

6    the conference were government employees, and that it's going

7    to hang out there that, therefore, the government of the DPRK

8    was learning new things when we have a very good-faith belief

9    that that's not true, that the regime has an extensive,

10   preexisting knowledge and capabilities, which is why we filed

11   our motion, and, in fact, there was a recent indictment that

12   came down after our last conference, between our last

13   conference and today, that highlights that fact even.  It was

14   based out of the Central District of California charging a

15   number of North Koreans with very sophisticated cyber and

16   cryptocurrency-related crimes.

17          So I think it's unfortunate we were not able to reach

18   an agreement, but that's where we are, your Honor.

19          THE COURT:  Right, right, right.

20          Do you happen to have the language that you tendered

21   to the government?

22          MR. KLEIN:  Yes, your Honor, I do.

23          THE COURT:  Yes.  Could you read that for me, please?

24          MR. KLEIN:  Yes, your Honor.

25          MR. WIRSHBA:  Your Honor, just very briefly, and I'm

L2NKGRIC

1    so sorry to interrupt, the government received a proposal prior

2    to our last discussion with the defense, but we were waiting

3    for one to come after, and we never received it.  And if we

4    missed it, I apologize, but neither me or Ms. Ravener have

5    reviewed this, but we're happy to listen and discuss in

6    realtime.

7         THE COURT:  That's really distressing to me as a

8    judge, given the fact that we put off substantive discussion

9    last week because you all needed more time to discuss a

10   stipulation, which is about six, eight, ten lines of text, and

11   now I'm finding out that you're hearing this for the first

12   time.  I don't know how this could be, but let me hear from the

13   defendant.

14        MR. KLEIN:  Your Honor, I'm not sure.  I will tell you

15   we emailed it to them Thursday after we spoke --

16        THE COURT:  Who is "to them"?

17        MR. KLEIN:  Sorry.  To Mr. Wirshba -- sorry.  We had a

18   meet-and-confer on Thursday.  Afterwards, I emailed it to

19   Mr. Wirshba and Ms. Ravener.  On Saturday — I think it was

20   Saturday — I received an email from Ms. Ravener asking us for a

21   stipulation or a proposal, which I resent to them.  I

22   understand Mr. Buckley received my email, and he's not at my

23   law firm.

24        THE COURT:  Whoa, whoa, whoa, whoa.

25        So, is this the Saturday email, or is this something

L2NKGRIC

1   prior to Saturday?  What are we talking about, Mr. Klein?

2           MR. KLEIN:  On Thursday of last week, we had a long

3   conversation with the government.

4           THE COURT:  Got that.

5           MR. KLEIN:  We agreed afterwards to send them our

6   proposal in writing, which I did do by email.  I received an

7   email from Ms. Ravener on Saturday --

8           THE COURT:  What date was that email?

9           MR. KLEIN:  The date was Thursday, so let me just pull

10  it up, your Honor.

11          It was February 18th, your Honor.

12          THE COURT:  Okay, February 18th.  And that was sent to

13  whom?

14          MR. KLEIN:  Ms. Ravener and Mr. Wirshba.

15          THE COURT:  Okay.  Now, Mr. Wirshba, did the

16  government receive that?

17          MR. WIRSHBA:  Your Honor, because I am not in person,

18  I am looking at my email right now, and I don't see that.  And

19  I'm being told by Ms. Ravener that she also does not see that.

20          THE COURT:  All right.  So there's a February 18th

21  email, which you say you didn't receive, and then I know that

22  we're leading up to something happening on Saturday, but go

23  ahead and tell me, Mr. Klein.  You heard from Ms. Ravener in

24  response to the February 18th email, is that what you're

25  telling me?

L2NKGRIC

1      MR. KLEIN:  No, your Honor.  Actually, it was Sunday,

2   now that I've pulled up my email.  It wasn't Saturday, it was

3   Sunday.  Ms. Ravener wrote an email asking us to send along our

4   alternative proposal.  I responded --

5      THE COURT:  Did that imply to you that she had not

6   received the earlier email?

7      MR. KLEIN:  It did, your Honor, and I wrote her back

8   and said I'm resending -- just resent to you.

9      THE COURT:  Okay.  And so that was what date?

10     MR. KLEIN:  Sunday.

11     THE COURT:  What date is that, sir?

12     MR. KLEIN:  Sorry.  Sunday, February 21st.

13     THE COURT:  Okay.

14     MR. KLEIN:  And then on Monday, I also -- yesterday,

15   your Honor, I followed up again --

16     THE COURT:  Well, let's just pause.

17     MR. KLEIN:  -- on the 22nd to check in.

18     THE COURT:  Let's just pause on the 21st.

19     So, Mr. Wirshba, did the government receive the email

20   of the 21st?

21     MR. WIRSHBA:  No, your Honor.  The last email that I

22   have from Mr. Klein is February 17th confirming the time of our

23   discussion.

24     THE COURT:  And, Ms. Ravener, did you receive either

25   of these two emails?

L2NKGRIC

1         MS. RAVENER:  No, your Honor.  I'm reviewing my

2     records as well to ensure we didn't accidentally overlook it,

3     but I don't believe so, no.  And that was the cause for me

4     reaching out on Sunday, to convey that we had been expecting

5     correspondence and that we hadn't received it.

6         THE COURT:  All right.

7         This is beneath what a federal district court judge

8     ought to be dealing with with grownups.  Now, what I want you

9     to do is take -- we'll reconvene at 1:00 o'clock.

10        Mr. Klein, get on the phone with the government and

11    see whether you have the correct email address, whether you

12    sent it by a reply, or whether there is some sort of an

13    extraordinary event going on which prevents adults from

14    communicating with each other on an important matter via email,

15    something that most Americans are able to do without great

16    difficulty.

17        MR. KLEIN:  Yes, your Honor.  We're surprised by this,

18    too, your Honor.  We were surprised they hadn't responded, and

19    I did reply.  So I'm not sure, but we will call them right away

20    and try to figure out what happened here.  Because Mr. Buckley

21    did receive -- he's copied on it, and he's at a different law

22    firm, and he did receive --

23        THE COURT:  I understand that.

24        MR. KLEIN:  -- the same email.

25        THE COURT:  We're going to start at 1:00 o'clock, and

L2NKGRIC

1     somebody's going to tell me who shot John, what happened here,

2     okay?

3              MR. KLEIN:  Okay.  Yes, your Honor.

4              THE COURT:  We'll get to the bottom of it because it's

5     unsettling.

6              Thank you very much.  Speak to you at 1:00 o'clock.

7              MR. KLEIN:  Yes, your Honor.

8              (Recess)

9              THE COURT:  Good afternoon.  This is the Judge.  This

10    is a continuation of the conference which began shortly after

11    noon today.

12             So, who would like to go first in responding?

13             MR. WIRSHBA:  Your Honor, this is Kyle Wirshba, for

14    the government.  I'm happy to explain the situation.

15             It appears that it is as we described to the Court,

16    the parties sent each other emails; however, the emails from

17    Mr. Klein and Ms. Axel did not reach the government.  Both

18    parties are going to reach out to their IT departments to try

19    to determine why that is.  The government has already done

20    that.  It seems that that problem persists.  Even after we hung

21    up, Mr. Klein's emails are not reaching the government, and I

22    think I can speak for both parties when I say that we apologize

23    for dragging the Court into this.  I don't think either party

24    was planning on raising this.  The negotiations were in good

25    faith, and we just both believe that we were at an impasse, and

L2NKGRIC

1   so that further negotiations were not necessary, and that's why

2   neither party continued to engage with the other.

3          At this point, the government was able to receive an

4   email from Mr. Buckley with the latest articulation of the

5   stipulation, as suggested by the defense.  That stipulation is

6   similar to a previous one circulated by the defense, and it is,

7   in fact, the case that the parties have reached an impasse, and

8   these issues that we were planning to discuss with the Court

9   remain there, despite these additional communications that the

10  government had not got.

11         So, again, your Honor, we are working to fix the

12  problem.

13         THE COURT:  All right.  So let me hear from Mr. Klein.

14  Do you want to read your proposed language?

15         MR. KLEIN:  Yes, your Honor.  Just to be clear, we

16  have also reached out to our IT department already to try to

17  figure out the problem, too.

18         Your Honor, the proposal is:  The government will not

19  present argument or evidence that the information that

20  Mr. Griffith allegedly provided and intended to provide at the

21  cryptocurrency conference held in Pyongyang in April 2019 was

22  beyond the then existing capabilities and knowledge of the

23  government of the Democratic People's Republic of Korea, but

24  may present evidence that certain individuals at the conference

25  gained information new to them.

L2NKGRIC

1          THE COURT:  Okay.

2          Let me hear from the government.  What's wrong with

3     that stipulation, proposed stipulation?

4          MR. WIRSHBA:  Your Honor, the government --

5          THE COURT:  What does that limit you from doing, other

6     than making the argument to the jury that the government was

7     unaware of information that Mr. Griffith was imparting?

8          MR. WIRSHBA:  So, your Honor, I think there are two

9     issues with that stipulation as the government sees it.  The

10    first is the one that I was articulating earlier, that it's the

11    government's concern that that stipulation would preclude the

12    government from offering evidence of Griffith's statements,

13    including ones that they seem to know nothing, referencing the

14    DPRK, or that --

15         THE COURT:  Wait, let me stop you right there.  When

16    you say "they seemed to know nothing, referencing the DPRK,"

17    what do you mean "referencing the DPRK"?  Was that in

18    Mr. Griffith's statement?

19         MR. WIRSHBA:  So Griffith told a colleague -- while he

20    was in the DPRK, he sent a message that said:  They are curious

21    about this blockchain thing.  The tech here is weak.  They

22    seemingly know nothing.

23         In addition, there were other statements that Griffith

24    made at the conference where he said things like no one knows

25    how to do this or described the things that he was describing

L2NKGRIC

1    as new, and it's the government's concern that this stipulation

2    could be read to preclude the government from offering evidence

3    like that, not limiting itself to those particular statements,

4    but statements like that.

5           THE COURT:  Let me hear the defendant's stipulation

6    one more time, please.  Mr. Klein?

7           Mr. Klein, I'm not hearing you if you're speaking.

8           MR. KLEIN:  Oh, sorry, your Honor.

9           The government will not present argument or evidence

10   that the information that Mr. Griffith allegedly provided and

11   intended to provide at the cryptocurrency conference held in

12   Pyongyang in April 2019 was beyond the then existing

13   capabilities and knowledge of the government of the Democratic

14   People's Republic of Korea, but may present evidence that

15   certain individuals at the conference gained information new to

16   them.

17          THE COURT:  All right.

18          Is it your position that entry into that stipulation

19   would preclude the government from offering the statement that

20   Mr. Wirshba just read?

21          Mr. Klein, can you hear me?

22          MR. KLEIN:  Sorry, your Honor.

23          I think, your Honor, if they were going to put that

24   in, I think they would need, at a minimum, some sort of

25   instruction from your Honor — and I'm talking about the jury —

L2NKGRIC

1   letting them know that -- in some ways, paraphrasing the

2   stipulation, so that the jury would understand that that

3   alleged statement wasn't saying that the government in North

4   Korea didn't have these capabilities.

5         THE COURT:  Right.  No, I understand your point.  I

6   understand your point.  That sounds appropriate.

7         So, does that not solve the government's problem?  So,

8   in other words, the statement, for example, would not foreclose

9   the government offering the statement that the government read,

10  but the Court would remind the jury that there's a stipulation

11  that the information defendant allegedly provided or intended

12  to provide was not beyond the then existing capabilities of the

13  government of the DPRK, but that it may have been beyond the

14  capabilities and knowledge of at least certain persons

15  attending the conference.

16        MR. WIRSHBA:  So, your Honor -- oh, I apologize.

17        THE COURT:  Is that appropriate for the Court to so

18  instruct?  Listen, the alternative here, the government should

19  understand, is if there is no limitation whatsoever, then the

20  defendant argues that it's entitled to know what the

21  capabilities of the DPRK were, so that it can defend

22  Mr. Griffith.

23        So it seems to me that we're not playing a game here —

24  there are important issues at stake — and if it's understood —

25  there's a transcript of this conference here — that you can

L2NKGRIC

1   offer the statement, but the Court would, quite appropriately,

2   if asked by the defense, give a limiting instruction, so that

3   the document was not misread or misconstrued.

4         MR. WIRSHBA:  So, your Honor, the government certainly

5   understands that there are important issues at stake.  This is

6   certainly an issue that is very important to the government,

7   and we are trying to engage on that issue and be very precise,

8   but we also want to make sure that we are being very careful

9   with respect to what language we are agreeing to here.

10        THE COURT:  I understand.  Be very careful and answer

11  my question:  What's wrong with you being allowed to offer the

12  statements which you quoted to me, that allegedly were made in

13  text messages or communications by Mr. Griffith, and, if

14  requested by the defense, at an appropriate juncture, I would

15  remind the jury of the stipulation that the government is not

16  arguing this is beyond the capabilities of the government of

17  the DPRK, but they are arguing it's beyond the capabilities of

18  at least certain people at the conference?  So now be very

19  precise and answer my question, and careful, okay, but answer

20  my question.

21        MR. WIRSHBA:  Yes, your Honor, of course.

22        I think there are two concerns.  I think we'd be okay

23  with the Court's language from the February 11th conference.  I

24  think the first concern --

25        THE COURT:  You're not answering my question.  You're

L2NKGRIC

talking about a February 11th conference.  I didn't ask you

that question, whether you'd be okay with the February 11th

conference.

          MR. WIRSHBA:  Yes, your Honor.

          THE COURT:  If I want to find out whether you'd be

okay with the language at the February 11th conference, I would

have asked you that question.  I asked you what, if anything,

was your problem with what I just said.  Do you want me to

repeat it again?  Do you want me to repeat it again, so that

you're clear, and you want to be cautious, and all these

things?  Do you want me to repeat it again?

          MR. WIRSHBA:  No, your Honor.  I think I have it.  I

think --

          THE COURT:  All right.  So answer, please.

          MR. WIRSHBA:  So, we believe that the proposal should

include not that -- that it's not beyond the DPRK's

capabilities, but that it should be beyond any individual

within the DPRK government's capabilities because we think that

the opposite is overbroad and may lead the jury to have a

misimpression about what it is that the government knows about

the DPRK government as a whole's capabilities.  The bottom line

is that, here, the government doesn't know whether or not the

government of the DPRK has the capabilities that we are talking

about.  And so if such an instruction to the jury reflected

that the government is not arguing whether or not this

L2NKGRIC

1    information is within the capabilities or knowledge of

2    individuals within the DPRK government, we believe that such an

3    instruction would be appropriate.

4              THE COURT:  Okay.  So that's your only beef, you want

5    back in the language at least certain individuals within the

6    government of the DPRK?  Is that your position?

7              MR. WIRSHBA:  That's our position with that

8    stipulation, yes, your Honor.

9              THE COURT:  Thank you.  All right.

10             So, let me kick it back to Mr. Klein.  It seems we're

11   very close here.  The proposal is that the formulation be used

12   beyond the then existing capabilities and knowledge of at least

13   certain individuals within the government of the DPRK.  Any

14   problem with that?

15             MR. KLEIN:  Yes, your Honor, we do have a problem with

16   that.  The problem with that, your Honor, is manifold, which

17   is, one, that makes it sound like it could be two clerks in

18   some distant office that don't have this knowledge or

19   information, and when we look at the cases that have been

20   brought by the Department of Justice and how they even discuss

21   them, it's very clear that it was the regime that had the

22   knowledge and capabilities we're discussing here.  In fact,

23   that's how the Deputy Attorney General discusses it in the

24   recent press release.

25             And I think we don't want the jury to be confused that

L2NKGRIC

1    it's some low-level functionaries in the government who have

2    this information, but not actually the people who could use it

3    when the opposite, we understand, is true, your Honor, based on

4    what we've seen, which is that the DPRK regime has a very

5    sophisticated cryptocurrency capability and has deployed it,

6    and it preexisted Mr. Griffith's trip.

7             THE COURT:  All right.  So what's the government's

8    response, then?  So why shouldn't I order the government to

9    disclose who these individuals are within the government of the

10   DPRK?

11            MR. WIRSHBA:  Your Honor, you shouldn't order that

12   because the individuals within the DPRK who Mr. Griffith never

13   interacted with, never intended to provide services to, their

14   knowledge of cryptocurrency capabilities is irrelevant to the

15   case.

16            THE COURT:  So I should allow you to do what Mr. Klein

17   fears that you're going to do, which is say, you know, this

18   just means it could be two clerks in a remote office?

19            MR. WIRSHBA:  Absolutely not, your Honor, that is not

20   what we are suggesting.  And we have agreed not to make any

21   arguments that would suggest what the capabilities are of the

22   DPRK government as a whole.  The government's objection is that

23   the government, and in the discovery that we have provided and

24   at the prosecution team's suggestion, we do not know what the

25   capabilities of the DPRK government as a whole is, and that

L2NKGRIC

1    fact, what their capabilities are, is irrelevant to this case.

2              THE COURT:  But tell me why you couldn't make the

3    argument under this stipulation that all this stipulation says

4    is that it's got to be at least two people, it can't be one,

5    because there's the plural on the word "individuals," and so it

6    could be two clerks in remote offices employed by the DPRK.

7    Why isn't that fair argument under the stipulation?  Why isn't

8    that allowed under the stipulation?

9              MR. WIRSHBA:  Because, your Honor, the government has

10   agreed not to make arguments about the knowledge of the DPRK

11   government as a whole, and your Honor would presumably find it

12   irrelevant, and there could be a motion to strike if the

13   government was making argument about which members of the DPRK

14   government that have nothing to do with this case knew or did

15   not know about cryptocurrency capabilities.  And, in fact, the

16   government is going to move in limine to prevent the defense

17   from making those same arguments.

18             THE COURT:  Well, with due respect, sir, it sounds to

19   me a little bit of double talk on your part, because I heard

20   you say that the government agrees that it's not going to

21   present evidence or argument that this was beyond the

22   capabilities of the DPRK, the government of the DPRK.  I think

23   I just heard you say that — we have a transcript of this, sir —

24   and if that's the case, then you should be fine with the

25   language that was proposed by the defense in that regard.

L2NKGRIC

1          Your position is, you want to put back in the "at

2    least certain individuals" language, but you can't answer the

3    question why that doesn't allow you to make the argument that

4    the defendant fears, that this is two clerks in a remote office

5    someplace.  And you're comfortable --

6          MR. WIRSHBA:  Your Honor --

7          THE COURT:  -- that that was, your Honor, we agree

8    that we're not going to argue it's beyond the capabilities of

9    the government of the DPRK.  And if that's your argument, then

10   put it in the stipulation.  If it's not your argument, then

11   tell us who the certain individuals are.

12         MR. WIRSHBA:  Your Honor, I don't mean to be

13   difficult, and I apologize if I am not making myself clear.

14   It's our view that without the individuals within the DPRK

15   language, that it would not be accurate.  And we are not aware

16   of any individuals within the DPRK that did have this

17   knowledge, but we are agreeing — and I think this is what I

18   said — not to present any argument about any of those other

19   people in the DPRK.  The government's concern that it was

20   articulating earlier with respect to Griffith's statements is

21   that some of those statements, the evidence — not the argument,

22   but the evidence — might incidentally impact on these issues

23   even if the government does not make any argument that the

24   defense fears, which is about the capabilities of people who

25   are not a part of this case in the DPRK government.

L2NKGRIC

1      THE COURT:  Okay.  Let's turn to the motion to compel.

2   Is there anything else anybody else wants to argue on the

3   motion to compel?

4      MR. KLEIN:  Your Honor, just if you wanted us to

5   submit the press release I was talking about on the recent

6   indictment, we would like to, just grant it, but we believe it

7   further supports our argument and our motion to compel, your

8   Honor.

9      THE COURT:  That would be wonderful.  Please do that.

10      Anything else from the government?

11      MR. WIRSHBA:  Yes, your Honor.  The government would

12   appreciate the opportunity to put in writing some of the

13   information that it has learned through the negotiations.

14   Through these negotiations, I think the government has a better

15   understanding of the arguments with respect to this particular

16   motion, and the government would welcome the opportunity to be

17   able to put those in writing for the Court.  We can do that as

18   quickly as --

19      THE COURT:  Why can't you do that right now.  What

20   have I not given you the opportunity to put in on this motion?

21   You've had this motion for quite some time, I gave you plenty

22   of opportunity to negotiate, and you don't seem to be able to

23   come to an agreement, which I even understand, so I don't

24   understand how the defendant can.

25      By the way, I suggest that you buy a copy of the

L2NKGRIC

1    transcript and read what you said to the Court today.

2               MR. WIRSHBA:  I will certainly do that, your Honor.

3    And if I misspoke or mischaracterized what I said, I apologize

4    to the Court.  I will certainly do that.

5               THE COURT:  I think you just contradicted yourself.

6    That's all.

7               MR. WIRSHBA:  Well, your Honor, if I did that, I was

8    certainly not being as clear as I would like to be with the

9    Court, so I will certainly get a copy of the transcript.

10              What I'm suggesting, your Honor, is that there is some

11   additional argument that we'd like to make in writing, if your

12   Honor was amenable to that, that I think would be helpful to

13   the Court with respect to the issues and --

14              THE COURT:  What does the argument have to do with

15   what you learned in negotiations with the defendant?

16              MR. WIRSHBA:  Well, your Honor, I think in the

17   negotiations with the defendant, it's become clear that what

18   is, in part -- I think what is animating the defendant's

19   arguments is this concern about the possible inference that

20   your Honor was talking about combating through an instruction

21   to the jury.  And it's possible that an instruction to the

22   jury, as opposed to this stipulation that limits the

23   government's evidence and arguments, is something that would

24   potentially appease all parties, and that we can describe and

25   clarify more in writing.  I think your Honor --

L2NKGRIC

1          THE COURT:  I think time is up, pencils and papers

2     down.  Did you propose the instruction to defense counsel?  No.

3          MR. WIRSHBA:  We did not, your Honor.  As you heard,

4     we did not.

5          THE COURT:  Yes.

6          So what is this?  The negotiation fails, now you go to

7     the fallback, you want to propose an instruction to them?

8     Should we do that for two weeks now?

9          MR. WIRSHBA:  No, your Honor.  It seems that you were

10    proposing an instruction on top of the stipulation, and so I

11    think the government --

12         THE COURT:  Sir, you've never tried a case before me.

13         MR. WIRSHBA:  I have not.

14         THE COURT:  Okay.  Well, then you would learn, if

15    there's a stipulation, I would feel extremely comfortable

16    recalling that stipulation or prior instruction to the jury's

17    attention when it's appropriate to do so.  And I would not -- I

18    don't know where you learned trial practice from, but I would

19    not deem it that having given an instruction or read a

20    stipulation once, that it's inappropriate to remind the jury of

21    it throughout the trial.

22         MR. WIRSHBA:  Of course not.

23         THE COURT:  So, that's all I'm saying.

24         If counsel --

25         MR. WIRSHBA:  Your Honor --

L2NKGRIC

1          THE COURT:  If counsel said to me, your Honor, could

2   you remind the jury of the stipulation the parties reached on

3   this issue, I would say, absolutely, that sounds like a great

4   idea, thank you for bringing that up, ladies and gentlemen of

5   the jury...

6          MR. WIRSHBA:  Understood, your Honor.  I apologize, I

7   didn't mean to suggest anything less would be appropriate.

8          I think it is the case that we have -- it seems,

9   through today's conference, we have addressed one of the

10  government's concerns here, which is that we were going to be

11  prevented from putting on that evidence as opposed to having

12  that evidence presented, and I'm happy --

13         THE COURT:  But you could have discussed that with

14  defense counsel over the last two weeks.  I don't know where

15  you learned how to negotiate.  Now you want to negotiate over a

16  jury instruction.

17         I'll tell you what, if you have any additional

18  argument, get it in to me by the close of business tomorrow, on

19  the motion to compel.

20         MR. WIRSHBA:  Understood, your Honor.

21         MR. KLEIN:  Your Honor?

22         THE COURT:  Yes.

23         MR. KLEIN:  Your Honor, we had planned just to submit

24  the press release indictment without argument.  We were trying

25  to avoid additional argument.

L2NKGRIC

1                THE COURT:  That's fine.

2                MR. KLEIN:  I would oppose them being allowed to

3        submit additional argument, but I just want to put that on the

4        record.

5                THE COURT:  Okay.  It's on the record.

6                What else?

7                MR. WIRSHBA:  Nothing further from the government,

8        your Honor.

9                MR. KLEIN:  Nothing from the defense.

10               THE COURT:  Thank you, all, very much.  Appreciate it.

11                                  * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25