

Waymaker LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
T 424.652.7800

Author's Direct Dial No.
**(213) 314-5284**

Author's Email Address
**kaxel@waymakerlaw.com**

**VIA ECF**

July 16, 2021

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:**   *United States v. Virgil Griffith*,
   **20 Cr. 015 (PKC)**

Dear Judge Castel:

We write in opposition to the government's July 9, 2021 letter motion requesting to revoke Mr. Griffith's bond. (*See* Dkt. No. 119.) Mr. Griffith and defense counsel take compliance with his pretrial release conditions very seriously. Mr. Griffith has not violated these conditions, and he should remain on release pending trial. The defense respectfully submits that this situation is at worst a misunderstanding.

Mr. Griffith has been out of custody residing with his parents in their Tuscaloosa home since January 2020. During that time, he has made all court appearances, and has recently traveled to Los Angeles twice (with the Court's approval) for critical trial preparation meetings. All of these trips have occurred without incident, including his return to Tuscaloosa last Saturday, July 10 (even after the government filed its motion seeking to remand him).

Given the impending trial date, Mr. Griffith may need to sell certain assets to fund his legal defense. Mr. Griffith consults closely with his family on financial matters and did so even prior to his arrest. In connection with their strategy to assess and access necessary resources to fund his defense, and after consulting counsel, his mother made an online request to access a U.S.-based and regulated cryptocurrency exchange, Coinbase (referenced as the "Exchange" in the government's motion).[1] Defense counsel reasonably believed that Mr. Griffith's parents accessing an account on his behalf for this purpose would not violate any provision of the bond order. Mr. Griffith and his parents therefore acted consistently with their understanding of the

---

[1] In submitting this letter, Mr. Griffith does not intend to and is not waiving the attorney-client privilege, attorney work product protections, or any other privileges and protections.

<a>
</a>
<b>
</b>



conditions of the bond, as informed by what they understood Pretrial Services permitted, and after Mr. Griffith consulted counsel. This matter has no connection to any risk of flight.

The defense respectfully submits that there has been no bond violation, and remanding Mr. Griffith is unwarranted.

**The Bond Order and Cryptocurrency Provisions**

The January 2, 2020 bail order entered by Judge Broderick includes the following provisions regarding cryptocurrency assets and internet usage:

> 5. Defense counsel and the Government are to meet and confer about securing the cryptocurrency hard drives located at the Defendant's apartment in Singapore, subject to the laws of Singapore. Defendant is to ensure that all individuals who have access to his apartment in Singapore are aware that these drives are not to be accessed, touched, or tampered with in any way until they are secured based upon the agreement between defense counsel and the Government.
>
> 12. Defendant shall not possess or use any smartphone or any cellular telephone with internet access capability;
>
> 13. Defendant will be allowed to have a computer in the Residence, which will be loaded with a monitoring software. Defendant is not to use any computer or other internet-capable device that does not contain such software;
>
> 14. Defendant's internet activity will be limited to communicating with his counsel by e-mail. Defendant is not to access the internet for any other purposes, and is specifically prohibited from accessing any of his cryptocurrency accounts and from accessing the darkweb;

(Dkt. No. 8.) As to Paragraph 5, Mr. Griffith retained counsel in Singapore, and defense counsel proposed that Singapore counsel, with the assistance of an ESI service provider, would locate, bag, index, and sequester Mr. Griffith's "cryptocurrency hard drives" and store them in a safety deposit box to which only counsel has access. The government agreed to this procedure, and the drives were located, sequestered, and stored accordingly.

Paragraph 14, which the government excerpted out of context, is an Internet restriction. Paragraphs 12 and 13 limit on what device Mr. Griffith may access the Internet; and Paragraph 14 limits the purposes for which he can use the Internet.[2] Other than this Internet-based restriction, there are no financial restrictions in the bond, meaning Mr. Griffith has not been barred from accessing or using his finances (for example, he can call a bank and move or withdraw fiat currency at a bank branch). There is also no seizure warrant, since there are no

---

[2] This provision was modified by the Court on February 11, 2021 to permit Mr. Griffith to e-mail non-attorneys using his monitored computer, as well to use a Kindle. (Dkt. No. 92.)



proceeds associated with the alleged offense. While the defense understood that Mr. Griffith was not permitted to use the Internet to access any cryptocurrency assets, it did not believe he was barred from transferring or selling them, so long as he did not use the Internet. The government, however, believes that the restriction in Paragraph 14 bars any sale or transfer of Mr. Griffith's cryptocurrency assets. Defense counsel did not read the provision this way; however, when the government raised its concern, defense counsel was willing and remains willing to work with the government before any family member accesses Mr. Griffith's Coinbase account to fund his legal defense.

### Mr. Griffith's Coinbase Account

Coinbase is a U.S.-based cryptocurrency exchange. It is a state-licensed money services business registered with FinCEN, and is required to comply with financial services and consumer protection laws such as the Bank Secrecy Act, the USA Patriot Act, and states' money transmission laws and regulations. Like money in a brokerage or a bank, the cryptocurrency owned by users of Coinbase is not held directly, but is held and controlled by, Coinbase.[3] Coinbase provides online account information, similar to what would be shown on a bank account statement, tracking account activity and the amount of cryptocurrency owned by users.

As the Court knows, Mr. Griffith was an employee of the Ethereum Foundation and was paid in Ether (ETH), a digital asset used on the Ethereum blockchain.[4] At the time Mr. Griffith was arrested in November 2019, he held some ETH and some ETC (a related cryptocurrency)[5] in a Coinbase account worth less than $100,000. Since then, one ETH has risen from about $150 to about $1,900. The government states that the account assets are currently worth almost $1 million. Neither Mr. Griffith nor any family member acting on his behalf has had access to that account since his arrest.

With the September trial date quickly approaching, and given ETH's current value, Mr. Griffith has wished to know the exact contents of his Coinbase account and the value of his assets, so he could consider transferring or selling all of part of his cryptocurrency held there to pay trial-related expenses. As is their family culture, Mr. Griffith's father, Dr. Robert Griffith, has been involved and consulted in matters regarding assets and plans to pay defense counsel.

---

[3] This is unlike a cryptocurrency wallet, in which users own and control their cryptocurrency directly (like cash in a physical wallet). As explained on the Ethereum Foundation website:
> Your wallet is only a tool for managing your Ethereum account. That means you can swap wallet providers at any time. Many wallets also let you manage several Ethereum accounts from one application. That's because wallets don't have custody of your funds, you do.

https://ethereum.org/en/get-eth/

[4] Some of this ETH was ultimately converted to ETC, a related cryptocurrency. *See* https://help.coinbase.com/en/coinbase/privacy-and-security/other/coinbase-regulatory-compliance#outside-of-the-united-states

[5] For a longer explanation, *see* https://www.investopedia.com/terms/e/ethereum-classic.asp.


As Mr. Griffith's local Pretrial Services Officer has rightfully concluded, his parents are upstanding members of the community in Tuscaloosa. Both are doctors,[6] and they are active in their church and community. His parents are not only responsible people generally, but they are particularly incentivized to ensure that Mr. Griffith appears in court: His bond is secured by his parents' Tuscaloosa home, in the amount of about $1 million, as well as his sister's Maryland house, in the amount of $300,000 (which was her complete equity at the time). Accordingly, all of Mr. Griffith's immediate family members would be forced from their homes if he fled. As such, the government's claim that Mr. Griffith's alleged "undocumented wealth"[7] "[d]warfs the size and meaning of his bond" is meritless, ignoring the deep bonds that tie people to their families and homes, and upon which courts rely every day to mitigate flight risk.

When Mr. Griffith was denied permission to use the Internet to work, Mr. Griffith collaborated with his parents on a system that would permit him to work. The idea was that his mother, Dr. Susan Griffith, could act as an assistant to access the Internet on his behalf, to permit him to do work that required Internet use while complying the Internet restrictions of his bond. Defense counsel presented this arrangement to Pretrial Services, which approved it. This was in no way intended to be an end run on any restriction but rather an effort to comply.

Over time, Susan Griffith began doing tasks for Mr. Griffith that required Internet access other than the consulting work. Mr. Griffith's local Pretrial Services Officer was generally aware of the practice. (Defense counsel re-confirmed this fact this week with the Officer.) The defense submits that it is consistent with the bond terms, since Mr. Griffith is not accessing the Internet directly himself, and any Internet use has been done by his mother.

When undersigned counsel advised Mr. Griffith that his parents could access the Coinbase account on his behalf, Mr. Griffith and his mother thought this meant she could attempt to gain access using this secretarial arrangement. While it should have been made clear to Coinbase that she was seeking online access on Mr. Griffith's behalf, there is no genuine concern that they acted surreptitiously or in any way to conceal any transfer of assets.

The messages themselves make that clear. The initial overture to Coinbase, which indicates that the request is based on lawyers' advice, took place on May 3, 2021 via (as the government describes it) an electronic message. This was done only after Mr. Griffith consulted with counsel.

On Saturday, June 19—more than six weeks after Mrs. Griffith sent the initial request for assistance—help@coinbase.com sent an automated message stating:

---

[6] Susan Griffith is now retired. Robert Griffith continues to practice medicine.

[7] The government has made unsubstantiated claims about Mr. Griffith's alleged wealth from the beginning. Mr. Griffith has always answered all of Pretrial Services' questions about his assets. The original bond package was designed by Judge Broderick to mitigate any concern of the risk of flight even taking into account the government's speculation about assets.



> We haven't heard back from you regarding this case. If you still require assistance, please reply. If you no longer need help, we will automatically resolve your case in 48 hours.

It was to this inbound automated message that Mr. Griffith replied "Yes, I still require assistance."

On June 25, a Coinbase attorney informally reached out to the undersigned defense counsel for clarification. The undersigned counsel spoke with Coinbase on June 28 and again on July 1. Coinbase indicated that the account had been frozen since November 2019. Undersigned counsel told Coinbase that the online request had been made by Mr. Griffith's mother; and that, in counsel's understanding, while Mr. Griffith was restricted from using the Internet to access a cryptocurrency account, his parents were not under any internet restrictions, and that the bond did not prohibit the sale or transfer of assets. Counsel clarified that, at this time, the Griffith family was not requesting any sale of cryptocurrency, but requesting that one of Mr. Griffith's parents be given access in order to assess the account, by whatever means was appropriate.[8] It was left that if/when it was necessary to request a sale or transfer, or if the account were closed, they would work together to consult Pretrial Services and the government as necessary to make sure it was handled consistently with the terms of the bond.

**Communications with the Government**

Having been informed by Coinbase of the communications requesting access to Mr. Griffith's account, the government sent an email on Thursday, July 1, requesting a call with defense counsel. The parties spoke twice on Friday, July 2. On the first call, among other things, the government inquired of defense counsel as to the statement in the initial electronic message that Mr. Griffith's lawyers advised that he could access his account. Without waiving privilege, defense counsel confirmed there had been communications, and described the defense interpretation of Judge Broderick's order. Defense counsel also noted that the inquiry regarding account access was neither surreptitious nor urgent, given that the conduct complained of began May 3, expressly referenced legal advice (which had appropriately led Coinbase to contact Mr. Griffith's lawyers), and that the account was frozen. Defense counsel further explained that Pretrial Services was aware that Mr. Griffith's mother was acting as a secretary to Mr. Griffith in accessing the Internet, and that Mr. Griffith had relied on that practice in directing the inquiry. (There appears to have been a misunderstanding with the government because defense counsel did not claim that Mr. Griffith's local Pretrial Services had specifically approved of Mr. Griffith accessing his Coinbase account.)

Defense counsel suggested on both calls that the government speak directly with Mr. Griffith's local Pretrial Services Officer. During the second call, among other things, the government requested that the defense ask the Pretrial Services Officer to call them. Defense counsel carried

---

[8] For example, Mr. Griffith's father already has a Power of Attorney ("POA") to act on Mr. Griffith's behalf as to financial matters, and this POA could be provided to Coinbase for these purposes.



Hon. P. Kevin Castel
Page 6 of 6

out this request and asked the Officer to call the government, and provided him with their contact information.  The government did not contact defense counsel further after this communication.

In a separate email around that same time on Friday, July 2, defense counsel reminded the government that Mr. Griffith was traveling the following week (leaving on July 5) to work with his counsel in Los Angeles.  Defense counsel further indicated that it was willing to delay the trip if the government objected to it.  The defense received no response to this email.  Mr. Griffith then drove from Tuscaloosa to Birmingham on July 5, flew to Los Angeles, consulted with counsel over the course of the week, and returned to Alabama without incident on July 10.

**No Modification of Mr. Griffith's Pretrial Conditions Is Necessary at this Time**

The defense strongly believes Mr. Griffith has never been a flight risk, but in any event the current bond conditions have been and remain sufficient to mitigate any risk.  The current allegations do not change that calculus.  Mr. Griffith has travelled to Los Angeles twice this year, and did so just last week even while it was hanging over his head that the government might move to remand him, and he returned to Tuscaloosa after the government filed its motion.  He did not flee.  He has made plans to and will appear on July 20 for the hearing on this matter.

Further, defense counsel's reading of Judge Broderick's order was not unreasonable, and the defense respectfully submits it would be inappropriate to revoke Mr. Griffith's bond based on what is at worst a misunderstanding concerning the appropriate way to effect access to the Coinbase account.  There is a real and pending need for Mr. Griffith to access his resources to pay his legal expenses, and he may soon need to sell some ETH or ETC for that purpose.  The defense respectfully submits there is no need for detention at this time.

Respectfully yours,

Brian E. Klein
Keri Curtis Axel
Waymaker LLP

Sean S. Buckley
Kobre & Kim LLP

*Attorneys for Virgil Griffith*