UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA          :

             Plaintiff,      :

       v.                    20 Cr. 15 (PKC)

                        :

VIRGIL GRIFFITH,

                        :

           Defendant.
-------------------------------------------------------x

**DEFENDANT VIRGIL GRIFFITH'S MOTION TO PRECLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING**

BRIAN E. KLEIN
KERI CURTIS AXEL
WAYMAKER LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, California 90017
(424) 652-7800

SEAN S. BUCKLEY
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
(212) 488-1200

*Attorneys for Virgil Griffith*

0

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ......................................................................................................................... 4

I.     The Court Should Exclude Testimony About the History of North Korean Sanctions, the
History of Human Rights Abuses in North Korea, the Case of Otto Warmbier and the Like Under
Rule 403 Because Its Extreme Unfair Prejudice Outweighs Its Minimal Probative Value............ 4

II.    The Court Should Preclude the Remainder of Dr. Arrington's Proffered Testimony
Because She Lacks Expertise in the Proposed Topics .................................................................... 8

    A.     Dr. Arrington is not qualified as an expert on the blockchain or cryptocurrency ........... 9

    B.     Dr. Arrington is not a qualified as an expert on North Korea or U.S. Sanctions Against
North Korea ............................................................................................................................ 10

    C.     Dr. Arrington's proposed testimony would not help the jury ....................................... 11

III.   The Government's Disclosures for Dr. Arrington Does Not Meet the Requirements of
Rule 16(a)(1)(G). ........................................................................................................................ 14

IV.    Any Proposed Expert Testimony Must Satisfy the Legal Standards Set Forth by *Daubert*
and Its Progeny ........................................................................................................................... 16

    A.     Legal Standard ............................................................................................................ 16

    B.     The government has not carried its burden to prove that Dr. Arrington's opinions are (i)
supported by sufficient facts or data and (ii) the product or reliable principles and methods . 17

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

*Cases*

*24/7 Records v. Sony Music Entm't*, 514 F. Supp. 2d 571, 575 (S.D.N.Y. 2007) _____ 18

*Amorgianos v. Nat'l R.R. Pass'r Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) _____ 18

*Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) _____ 11

*Arista Records v. Lime Group*, No. 06-cv-5936, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) _____ 9

*Baker v. Urban Outfitters*, 254 F. Supp. 2d _____ 17

*Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 354 (S.D.N.Y. 2005) _____ 19

*Daniels v. City of New of York*, No. 16-cv-9080 (AJN), 2018 WL 5919307, at *3 (S.D.N.Y. Nov. 13, 2018) _____ 16

*Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993) _____ 16, 17

*Dukagjini*, 326 F.3d at 54 _____ 17

Fed. R. Crim. P. 16 _____ 14

*Gen. Elec. Co.. v. Joiner*, 522 U.S. 136, 146 (1997) _____ 16, 17

*Hernandez v. Leichliter*, No. 14-CV-550 (AJN), 2016 WL 684038 (S.D.N.Y. Feb. 18, 2016)_ 18

*Highland Capital Mgm't v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) ___ 11, 13, 19

*Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) _____ 12

*In re Pfizer Sec. Litig.*, 819 F.3d 642, 662 (2d Cir. 2016) _____ 17, 18

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147-48 (1999)_____ 16

*Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (Bankr. S.D.N.Y. 2003)_____ 19

*Marx & Co. v. Diners' Club*, 550 F.2d 505, 509-10 (2d Cir. 1977)_____ 12, 13

*On Track Innovations Ltd. v. T-Mobile USA*, 106 F. Supp. 3d 369, 417 (S.D.N.Y. 2015) ____ 16

*Rezulin*, 309 F. Supp. 2d at 540 _____ 11

*SEC v. Tourre*, 950 F. Supp. 2d 666, 679 (S.D.N.Y. 2013) _____ 9

*United States v. Al-Moayad*, 545 F.3d 139, 166 (2d Cir. 2008) _____ 5

*United States v. Banki*, No. 10-cr-08, Dkt. No. 52 (S.D.N.Y. Apr. 27, 2010) _____ 13

*United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994) _____ 9

*United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008) _____ 5

*United States v. Holmes*, 670 F.3d 586, 599 (4th Cir. 2012) _____ 15

*United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) _____ 11

*United States v. Nejad*, No. 18 Cr. 224 (AJN) (S.D.N.Y 2020) _____ 1, 3, 7, 13

*United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) _____ 18

*United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)_____ 9

**Other Authorities**

Ana Fifield, Susan Svrluga, & Carol Morello, *North Korea Sentences U-Va. Student to 15 Years of Hard Labor in Prison*, Washington Post, Mar. 16, 2016, https://www.washingtonpost.com/world/north-korea-sentences-u-va-student-to-15-years-of-hard-labor-in-prison/2016/03/16/87fc5538-eb8e-11e5-a6f3-21ccdbc5f74e_story.html _____ 6

Doug Bock Clark, *The Untold Story of Otto Warmbier, American Hostage*, GQ Magazine, July 23, 2018, https://www.gq.com/story/otto-warmbier-north-korea-american-hostage-true-story6, 7

Kevin Ponniah & Tom Spender, *Otto Warmbier: How Did North Korea Holiday End in Jail, and a Coma?*, BBC, June 20. 2017, https://www.bbc.com/news/world-us-canada-40308028 ___ 6

Laura Wagner & Elise Hu, *N. Korea Sentences American Student to 15 Years of Prison, Hard Labor*, NPR, Mar. 16, 2016, https://www.npr.org/sections/thetwo-way/2016/03/16/470635455/n-korea-sentences-virginia-student-to-15-years-prison-hard-labor _____ 6

Phil Robertson, *Death of Otto Warmbier Highlights North Korea Rights Abuses*, Jun. 20, 2017, Human Rights Watch, https://www.hrw.org/news/2017/06/20/death-otto-warmbier-highlights-north-korea-rights-abuses. _____ 7

Susan Svrluga and Anna Fifield, *Otto Warmbier Dies Days After Release from North Korean Detention*, The Washington Post, June 19, 2017, https://www.washingtonpost.com/news/grade-point/wp/2017/06/19/otto-warmbier-dies-days-after-release-from-north-korean-detainment/; _____ 6

VII Wigmore on Evidence § 1952 _____ 12

**Rules**

Fed. R. Crim. P. 16(b)(1)(C)(i) _____ 1

Federal Rule of Criminal Procedure 16 _____ 3, 14

Rule 16(a)(1)(G) _____ 13, 14

Rule 403 _____ 5

Rule 702 _____ 16, 17, 18

## PRELIMINARY STATEMENT

On August 21, 2021, the government made its expert disclosure to the defense and revealed its intention to call Dr. Celeste L. Arrington as an expert.[1]  A copy of the government's disclosure is attached as Exhibit A ("Gov't Expert Disclosure").

Upon review of the disclosure, it is perturbing that the government is proposing to offer expert testimony on topics that have no bearing on the charges against Mr. Griffith, would be clearly inflammatory and prejudicial, and, most troubling, involves categories of testimony that the government previously sought to offer and then affirmatively withdrew under similar circumstances in a case involving alleged sanctions violations, *United States v. Nejad*, No. 18 Cr. 224 (AJN) (S.D.N.Y 2020).[2]  The same principles apply here.

As a preliminary matter, the topics of testimony that the government proposes that Dr. Arrington will cover include certain particularly objectionable aspects.  Specifically, the government seeks to have Dr. Arrington testify about North Korea's responsibility for human rights abuses, its nuclear weapons programs, and its horrifying and reprehensible abuse of at least one American citizen, Otto Warmbier.  These irrelevant subjects have no place in this trial and are clearly intended to frighten and to inflame the passions of the jury.  Any such testimony

---

[1] Although the defense did not request expert notice from the government so no reciprocal disclosure was required, *see* Fed. R. Crim. P. 16(b)(1)(C)(i), in an effort to streamline these proceedings to preserve judicial and party resources, the defense agreed to disclose its expert witnesses to the government on August 30, 2021, and it did so.  This agreement and the plan to file this motion was noted in the defense's motions *in limine*.  (Defense MILs at 9 n.8 (Dkt. No. 136).) The Court's scheduling order did not include a provision for expert witness disclosures or motion practice.  (Dkt. No. 114.)

[2] The government similarly has proffered numerous categories of irrelevant, inflammatory, and unfairly prejudicial evidence and arguments in its motions *in limine* (Dkt. No. 131), which the defense has strenuously objected to because they (a) have no bearing on the charges filed against Mr. Griffith in the indictment and (b) are highly prejudicial and would serve no other purpose than to mislead the jury.  (Defense Opposition to MILs at 22-31 (Dkt. No. 144).)

would be so overwhelming and unfairly prejudicial that Mr. Griffith could not receive a fair trial.

Dr. Arrington's testimony should also be excluded since she is not an appropriate expert on the topics for which the government proposes her testimony. The government seeks to offer Dr. Arrington as a witness to testify about, among other topics, "the history and basis for United Nations, United States, and international sanctions against the Democratic People's Republic of Korea ("DPRK" or "North Korea") and the concepts of "Peace" and "Juche" within the North Korean regime." In addition to being irrelevant to the issues of this case, the government has not presented sufficient qualifications to establish Dr. Arrington as an expert on these topics.

The government additionally seeks to have Dr. Arrington testify regarding the cryptocurrency and blockchain-related topics allegedly discussed during Mr. Griffith's purported presentation at the 2019 Blockchain and Cryptocurrency Conference (the "Conference") and Mr. Griffith's interview with the FBI, topics for which, again, Dr. Arrington is simply not qualified as an expert. Dr. Arrington is arguably a qualified professor in political science and international affairs, with noted specialization in South Korea and Japan, but she has no disclosed experience in cryptocurrency or blockchain. Her degrees are in public and international affairs, political science, and Japanese studies. Nothing in her educational, academic or publication background suggests any expertise in the highly technical world of cryptocurrency and blockchain.

Further, the government seeks to have Dr. Arrington walk through the sanctions regulations charged in this case, in order to tell the jury what is prohibited and illegal under the regulation, how they have evolved, and the factual circumstances that would bring transactions or conduct within those prohibitions. This is improper and wholly unsupported by Dr. Arrington's purported expertise. Put simply, the government has provided no basis to establish Dr. Arrington is capable of offering such opinions as well as a theory of relevance for under the

Federal Rules.  Rather, the government should be required to call a witness from the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC")—as it has done in the past and as it sought to obtain permission to do in this case—to offer limited testimony on these topics to the extent it is relevant and helpful.[3]  The defense has serious concerns about the government's apparent unwillingness to proffer a witness from OFAC particularly in view of the issues that were the subject of pretrial motion practice and a defense motion to compel.[4]

Finally, if the Court is considering permitting Dr. Arrington to testify on any topic, the defense requests (1) a further disclosure of her opinions and the basis for them sufficient to comport with Federal Rule of Criminal Procedure 16; and (2) a *Daubert* hearing outside of the presence of the jury to determine the scope and nature of her purported expertise given the inadequacy of the government's disclosures to date and the substantial questions that remain as to her ability/expertise to offer the opinions the government proffers.

In sum, defendant Virgil Griffith respectfully moves to preclude:

(1)  the proposed testimony about the government of North Korea's human rights abuses, the repressive nature of the North Korean regime, the tensions between North Korea and the United States, the North Korean regime's hostility towards the United States, the case of Otto Warmbier, and similarly inflammatory and unfairly prejudicial topics;

---

[3] To the extent the government intends to call an OFAC witness, the defense will evaluate that witness's proffered testimony and the bases therefor based on the government's disclosures and reserves the right to raise further objections at that time. *See, e.g., Nejad*, No. 18 Cr. 224 (S.D.N.Y. 2020), Dkt. 210 at ¶ 12 (permitting the government's proffered OFAC officer to testify as fact witness and not as an expert, in general, about the content of the applicable sanctions at issues but not as to "the legal requirements of applicable regulations").

[4] Inexplicably, the government has sought to block the defense from calling an OFAC expert to refute the government's proffered testimony on similar sanctions-related topics.  Indeed, in its opposition to the defense's motions *in limine*, the government affirmatively moved to preclude the testimony of an OFAC expert proffered by the defense, arguing that the proffered testimony would usurp this Court's role in insutructing the jury on the applicable law.  The government has also sought to limit the defense's ability to proffer evidence regarding North Korea's blockchain capabilities, while itself seeking to offer expert testimony on North Korea and on blockchain. The defense respectfully submits that the Court should not endorse this type of gamesmanship.

(2)  the proposed testimony of Dr. Arrington on the topics of:

- the history and basis for United Nations, United States, and international sanctions against North Korea and the concepts of "Peace" and "Juche" within the North Korean regime;
- the topics of Mr. Griffith's alleged presentation at the Conference and topics discussed during his interview with the FBI;
- the sanctions regulations charged in this case, such as what is prohibited and illegal under the regulations, how they have evolved, and the factual circumstances that would bring transactions or conduct within those prohibitions.

(3) Any remaining proposed testimony because expert testimony on those topics would be unhelpful to the jury and cannot pass muster under *Daubert*.  At a minimum, the government should be required to disclose Dr. Arrington's proposed opinions and the basis therefore, and she should also pass scrutiny at a *Daubert* hearing.

\*        \*        \*

While it is unclear from the government's disclosure, if the government intends to call any of the numerous agents it noticed from the FBI's Computer Analysis and Response Team ("CART), and such witnesses intend to offer any opinion testimony, the government's notice on this point is also deficient.  The Defense thus requests that the Court order the government to provide additional disclosures regarding any such potential expert testimony or preclude the FBI CART witnesses from offering any opinion testimony.  The defense further reserves its right to object to their testimony when it receives the government's preliminary trial exhibits, which the government has represented it will be producing on a rolling basis to be completed by September 17, 2021.

## ARGUMENT

**I.     The Court Should Exclude Testimony About the History of North Korean Sanctions, the History of Human Rights Abuses in North Korea, and the Case of Otto Warmbier Under Rule 403 Because Its Extreme Unfair Prejudice Outweighs Its Minimal Probative Value.**

The Court should decline the government's invitation to allow it to insert inflammatory,

irrelevant, and unfairly prejudicial testimony into this case that has nothing to do with the purported "services" Mr. Griffith is accused of conspiring to provide North Korea.  In particular, the Court should prohibit any testimony about the government of North Korea's history of human rights abuses, the development of North Korea's nuclear weapons program or other weapons programs, and the case of American citizen Otto Warmbier.  These topics have nothing to do with this case, which centers around Mr. Griffith's alleged presentation on blockchain and cryptocurrency at the Conference and his alleged attempts to set up a cryptocurrency node.  The issues the government seeks to admit through Dr. Arrington are highly controversial and inflammatory and, given their irrelevance to the charges against Mr. Griffith, pose serious risks of prejudice to his defense.  Any testimony that seeks to connect these topics to the sanctions charged here would have such an extreme and unfair prejudicial effect that a fair trial for Mr. Griffith would be impossible.

The topics the government seeks to introduce through Dr. Arrington are akin to bringing up terrorism when a defendant is not charged with terrorism.  The Second Circuit has made abundantly clear that "evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue prejudice" under Rule 403.  *United States v. Al-Moayad*, 545 F.3d 139, 166 (2d Cir. 2008) (quoting *United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008)).  So, too, would permitting evidence linking Mr. Griffith with North Korea's oppressive regime, history of human rights abuses, history of nuclear weapons development, and the tragic case of Mr. Warmbier.  It is precisely the kind of testimony that risks "lur[ing] the fact finder into declaring guilt on a ground different from proof specific to the offense charged."  *Al-Moayad*, 545 F.3d at 166 (vacating defendants' convictions because "inflammatory, highly charged" testimony about terror attacks not charged against them created such a danger of

5

prejudice).

Here, the government seeks to elicit Dr. Arrington's testimony regarding: "North Korea's development of nuclear weapons, other weapons programs, and human rights abuses" and how "sanctions are intended to . . . punish [DPRK] for human rights abuses, and prevent the DPRK from securing materials needed for its weapons programs." (Gov't Expert Disclosure at 2.) It also lists among the topics of Dr. Arrington's testimony the use of the term "peace" in North Korea to mean the "end to outside pressure on the DPRK regime, including, the military threat from the United States," the ideology of "Juche" in North Korea as a means to "control the population, through among things, requiring DPRK citizens to make sacrifices . . . to ensure an independent North Korea," and the tragic case of Mr. Warmbier. (*Id.*)

The case of Mr. Warmbier is undoubtedly horrific and involved an American college student who entered North Korea via China through a tour group, was arrested and convicted of subversion by North Korea, and was sentenced to 15 years in prison.[5] He was released back to the United States 17 months after his sentencing in a vegetative state and died a short time later.[6]

---

[5] *See*, *e.g.,* Ana Fifield, Susan Svrluga, & Carol Morello, *North Korea Sentences U-Va. Student to 15 Years of Hard Labor in Prison*, Washington Post, Mar. 16, 2016, https://www.washingtonpost.com/world/north-korea-sentences-u-va-student-to-15-years-of-hard-labor-in-prison/2016/03/16/87fc5538-eb8e-11e5-a6f3-21ccdbc5f74e_story.html; Laura Wagner & Elise Hu, *N. Korea Sentences American Student to 15 Years of Prison, Hard Labor*, NPR, Mar. 16, 2016, https://www.npr.org/sections/thetwo-way/2016/03/16/470635455/n-korea-sentences-virginia-student-to-15-years-prison-hard-labor; Doug Bock Clark, *The Untold Story of Otto Warmbier, American Hostage*, GQ Magazine, July 23, 2018, https://www.gq.com/story/otto-warmbier-north-korea-american-hostage-true-story

[6] *See, e.g.,* Susan Svrluga and Anna Fifield, *Otto Warmbier Dies Days After Release from North Korean Detention*, The Washington Post, June 19, 2017, https://www.washingtonpost.com/news/grade-point/wp/2017/06/19/otto-warmbier-dies-days-after-release-from-north-korean-detainment/; Kevin Ponniah & Tom Spender, *Otto Warmbier: How Did North Korea Holiday End in Jail, and a Coma?*, BBC, June 20. 2017, https://www.bbc.com/news/world-us-canada-40308028; Doug Bock Clark, *The Untold Story of*

The case received immense national and international media coverage and outcry from organizations like Human Rights Watch.[7] There is no connection whatsoever between the alleged events in this case and those that led to Mr. Warmbier's arrest, persecution, and ultimate death.

In the *Nejad* case, in which a defendant was charged with a violation of the Iranian sanctions regime, the government similarly sought to put an expert to introduce inflammatory and unfairly prejudicial testimony regarding the Iranian sanctions, their rationale, Iran's attempts to build a nuclear program, and other terrorist activities, although the defendant was not charged with terrorism offenses. (*Id.*, No. 18 Cr. 224 (AJN) (S.D.N.Y. 2020)). There, the government sought to introduce expert testimony regarding "[t[he repeated imposition of economic sanctions by the United States against . . . Iran, the actions by Iran that caused the United States to impose sanctions, and the goals of the United States' sanctions against Iran." (*Id.* at Dkt. 189, Ex. 3 at 2-3.) Additionally, the government proffered that the expert would offer testimony regarding "Iran and its Islamic Revolutionary Guard Corps[ ]'s support of terrorism and foreign terrorist groups." (*Id.*, Ex. 3 at 3.) After a defense challenge and litigation (*see id.* at Dkt. 189), the government eventually withdrew its proposed expert from testifying on those topics, and the district court expressly banned the government from eliciting testimony "referencing terrorism or economic jihad. (*Id.*, at Dkt. 210 at ¶ 13).

Such should be the case here. The allegations here do not involve human rights abuses

---

*Otto Warmbier, American Hostage*, GQ Magazine, July 23, 2018, https://www.gq.com/story/otto-warmbier-north-korea-american-hostage-true-story.

[7] Phil Robertson, *Death of Otto Warmbier Highlights North Korea Rights Abuses*, Jun. 20, 2017, Human Rights Watch, https://www.hrw.org/news/2017/06/20/death-otto-warmbier-highlights-north-korea-rights-abuses.

and Mr. Griffith is not charged with conspiring to assist the DPRK with such abuses.  Nor is Mr.

Griffith accused of having any involvement in North Korea's nuclear weapons program or other

weapons programs.  And he is most certainly not indicted for any role in the sad case of Mr.

Warmbier, whose arrest, sentencing, and untimely death occurred well before the

commencement of the alleged conspiracy Mr. Griffith is accused of engaging in.  Rather, as

noted above, this case centers around a purported speech and some conduct involving a

cryptocurrency node.  There is absolutely no similarity with or connection to the charges against

Mr. Griffith and these proposed areas of testimony by Dr. Arrington.

Not only would any testimony regarding these topics have little probative value, if any,

given their remoteness to the charges, but they would cause enormously unfair prejudice, likely

rendering a fair trial impossible.  Allowing an expert witness to describe North Korea's human

rights abuses, oppressive regime, weapons programs, and treatment of Americans, such as Mr.

Warmbier, would unfairly tar Mr. Griffith with topics overwhelmingly likely to inflame jurors'

passions against him, in a case where he is not remotely accused of supporting any of those

things.

Because of the highly prejudicial nature of the government's proposed expert testimony

on topics unrelated to the claims against Mr. Griffith, the proposed testimony of Dr. Arrington

should be excluded.

## II.    The Court Should Preclude the Remainder of Dr. Arrington's Proffered Testimony Because She Lacks Expertise in the Proposed Topics

Dr. Arrington's expert testimony should be excluded excluded because she is not

qualified as an expert in the topics the government seeks to offer and none of the proposed

testimony would be helpful to the jury.  Additionally, the government has not shown that Dr.

Arringtonhas the qualifications or expertise to offer her opinions under *Daubert* and its progeny

to warrant their admission.  Therefore, Dr. Arrington should not be considered an expert and her opinions should be excluded.

### A.    Dr. Arrington is not qualified as an expert on the blockchain or cryptocurrency

"To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) (citing *United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994)).  It is not enough to be an expert in some field; the expert's specialized knowledge must match the subject of his proposed testimony. *SEC v. Tourre*, 950 F. Supp. 2d 666, 679 (S.D.N.Y. 2013) ("Being a professional testifying expert in the financial area does not give an individual the qualification to opine in every financial area as to every type of analysis."); *Arista Records v. Lime Group*, No. 06-cv-5936, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) ("An expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified.").

The government seeks to offer Dr. Arrington's expert testimony on "the particular concepts allegedly discussed by Mr. Griffith at the Conference or raised by Mr. Griffith in his interviews with [the] FBI," citing authority that she can do so to "help a jury understand unfamiliar terms and concepts."  (Gov't Expert Disclosure at 1-2.)  Blockchain technology and cryptocurrency are two highly scientific and technology-based areas.  Yet the government has not provided any evidence whatsoever that Dr. Arrington has any expertise or unique knowledge related to either cryptocurrency or blockchain.  Dr. Arrington's lengthy resume does not reveal any education or specialization in either of these categories.  She has no certificates or other training in blockchain technologies or networks, cryptocurrency, or other currency systems.  In fact, there is nothing on Dr. Arrington's résumé to indicate that she has any specialized

9

knowledge in any kind of technology.  Instead, the focus of Dr. Arrington's expertise is generally international politics, with focuses on Asian studies and, specifically, Japan and South Korea.

This renders Dr. Arrington wholly unqualified to stand as an expert pursuant to FRE 702 and the standard set by the *Daubert* trilogy, discussed further below, and she should not be permitted to attempt to explain to the jury the contents of Mr. Griffith's presentation at the Conference.  Therefore, her testimony on these topics should be excluded.

### B.    Dr. Arrington is not a qualified as an expert on North Korea or U.S. Sanctions Against North Korea

The government has also failed to show that Dr. Arrington has any expertise or specialized knowledge in any of the other areas for which she is proffered.  The government has not provided any qualifications to support Dr. Arrington's ability to testify on North Korean sanctions, the concepts of and uses of the phrases "Peace" and "Juche" in North Korea and their meaning within the DPRK regime, or the case of Mr. Warmbier.  (*See id.*)

Dr. Arrington appears to have extensively studied and written on issues involving Japan and South Korea, but there is nothing in her pages-long résumé that demonstrates she has any expertise in U.S. sanctions against North Korean, the history of those sanctions, or the rationale behind those sanctions.  In fact, the word "sanctions" does not appear a single time in a review of her résumé.  Nor does there appear from an assessment of Dr. Arrington's qualifications that she has any real-world experience working with North Korean sanctions.  Without the requisite qualifications or experience on North Korean sanctions, Dr. Arrington should not be permitted to testify, and her testimony should be excluded.

Dr. Arrington is equally unqualified to provide expert testimony on North Korean human rights issues or the case of Otto Warmbier.  While Dr. Arrington does have a few references to North Korean human rights issues, a closer inspection reveals that these handful of writings

focuses instead on the impact in Japan and South Korea and the response in *those* countries to these topics.  (*See id.* at 4-10.)  And there is absolutely nothing to indicate that Dr. Arrington has studied, written on, or was involved in the case of Mr. Warmbier.  Having failed to provide the requisite qualifications, Dr. Arrington cannot be considered an expert on these issues.  Accordingly, her testimony on North Korea and Mr. Warmbier should be excluded.

      **C.**      **Dr. Arrington's proposed testimony would not help the jury**

"One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Highland Capital Mgm't v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (quoting *Rezulin*, 309 F. Supp. 2d at 540).  "In deciding whether expert testimony will be helpful, to the fact-finder, the Court must determine whether the testimony 'usurps either the role of trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'"  *Highland Capital*, 379 F. Supp. 2d at 468 (quoting *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)).  "In addition, expert testimony is inadmissible when it addresses 'lay matters which a jury is capable of understanding and deciding without the expert's help.'"  *Id.* (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)).

The government's disclosure proposed to provide Dr. Arrington as an expert in:

> **Sanctions**. The United Nations, United States, and other international actors have imposed sanctions on the DPRK based on, among other things, North Korea's development of nuclear weapons, other weapons programs, and human rights abuses. These sanctions include, among other things, limits on trade, luxury goods, and access to international banking and finance. The sanctions are intended to change the conduct of DPRK leadership, punish for human rights abuses, and prevent the DPRK form securing materials needed for its weapons programs. These sanctions have become more comprehensive over time and have made it difficult to secure goods inside the DPRK.

(Gov't Expert Disclosure at 2.)  As set forth above, however, Dr. Arrington's proposed testimony about North Korea's nuclear weapons and other weapons programs and human rights abuses in

the DPRK is completely unrelated to the issues of this case (as would be testimony about any sanctions on trade and luxury goods). Given the complete irrelevance of these topics, none of her testimony on those topics could be considered helpful to the jury.

In addition to the majority of her proffered testimony being irrelevant and, not helpful to the jury, to the extent Dr. Arrington is qualified (and the defense respectfully submits she is not) to provide testimony explaining the sanctions and IEEPA regulations actually at issue in this case, such testimony would be a recitation of facts, rendering Dr. Arrington a fact witness on those areas and not an expert. It is not clear that she has the personal knowledge to offer testimony as a fact witness on these matters, any more than she has the professional training and knowledge to be an expert. Moreover, any such testimony would have to be appropriately limited in scope in order not to usurp the province of the Court and the jury.[8]

Dr. Arrington should not be permitted to provide testimony regarding what is or is not illegal under the IEEPA regulation at issue. Expert testimony purporting to explain the applicable law to the jury is inadmissible because it invades the "exclusive province" of the judge and is therefore unhelpful. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (noting that this extends to all expert testimony that "communicat[e]s a legal standard—explicit or implicit— to the jury"); *accord Marx & Co. v. Diners' Club*, 550 F.2d 505, 509-10 (2d Cir. 1977) ("[E]xpert testimony on law is excluded because 'the tribunal does not need the witness' judgment. . . . The special legal knowledge of the judge makes the witness' testimony

---

[8] Because the government has not identified the exact opinions that Dr. Arrington would offer, the defense does not have sufficient information to determine whether the government's proffered scope would in fact impede on the functions of the judge and the jury. Should the Court not exclude the sanctions-related testimony because Dr. Arrington is neither an expert nor a fact witness regarding the sanctions regime, the government should be ordered to supplement its expert disclosure, as more fully explained below.

superfluous.'" (quoting VII Wigmore on Evidence § 1952, at 81 (3d ed. 1940))).  "To the extent [expert] discusses governing law, the discussion is inadmissible because 'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'"  *Highland Capital*, 379 F. Supp. 2d at 470 (quoting *Marx*, 550 F.2d at 509-10) (prohibiting an expert from testifying to the content of, interpreting, or explaining federal securities laws).

In *United States v. Banki*, it was the government who moved to preclude a proffered expert witness (the former director of OFAC) from testifying about the regulations enforced by OFAC, because an expert "should not be instructing the jury on the law at all."  (Gov't Mot. to Preclude Certain Expert Test., *United States v. Banki*, No. 10-cr-08, Dkt. No. 52 (S.D.N.Y. Apr. 27, 2010).)  The *Banki* court granted the motion to exclude, ruling the expert could not testify to his "construal of the law OFAC enforces."  *United States v. Banki*, No. 10-cr-08, 2010 WL 1875690, at *3 (S.D.N.Y. May 10, 2010) (reasoning that the expert's opinion on law "can have no bearing on any factual matter before the jury"); *cf. Nejad*, No. 18 Cr. 224 (S.D.N.Y. 2020), Dkt. 210 at ¶ 12 (permitting the government's proffered OFAC officer to testify as fact witness and not as an expert, in general, about the content of the applicable sanctions at issues but not as to "the legal requirements of applicable regulations").

It appears that the government intends to call Dr. Arrington to testify as to whether Mr. Griffith's alleged actions fall within the scope of the North Korean sanctions is not appropriate testimony for Dr. Arrington to provide.  These are matters for the Court to explain in its jury instructions and for the jury to ultimately decide.[9]  Accordingly, such testimony should be precluded.

---

[9] The government has made similar arguments in its Motion to Preclude Expert Testimony, which it filed on September 3, 2021. (*See* ECF 146 at 12 "The Court will instruct the jury regarding the meaning and scope of the legal issues cited in the defendant's expert notice, and

**III.    The Government's Disclosures for Dr. Arrington Does Not Meet the Requirements of Rule 16(a)(1)(G).**

Rule 16(a)(1)(G) requires the government to disclose, for any expert testimony, (i) "a written summary of [the] testimony;" (ii) a description of any opinions the witness may give; (iii) "the bases and reasons for those opinions;" and (iv) "the witness's qualifications." *Id.*; *see United States v. Ulbricht, 858 F.3d 71, 114 (2d Cir. 2017)*.  The requirement of the witness's qualifications permits the defendant to challenge "whether in fact the witness is an expert."  Fed. R. Crim. P. 16, adv. comm. notes, 1993 amendment.  The summary of expected testimony "is intended to permit more complete pretrial preparation by the requesting party," by letting the party know, for instance, "whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion." *Id.*  If the witness is to offer an opinion, the "most important" requirement is "a summary of the bases of the expert's opinion." *Id.*  That summary must include all bases relied upon by the expert, including "not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." *Id.*[10]

The government's expert disclosure for Dr. Arrington does not provide the requisite information required for the defense to assess whether she is, in fact, a proper witness on each of

---

expert testimony applying the expert's legal conclusions to the evidence would usurp the province of the jury.")).

[10] The government is well aware of these requirements.  Indeed, in the government's motion to compel further information regarding the defense's disclosure with respect to Mr. Antonopoulos' testimony, the government argues the defense should be required to disclose Mr. Antonopoulos' opinions and "observations," the bases for those opinions, and all of the information on which Mr. Antonopoulos relied. (Gov. Motion at 18-19.)

the topics the government seeks to offer.  The government's disclosure provides a summary of

topics, but not a summary of what Dr. Arrington's opinions on those topics will be.  (*See* Gov't

Expert Disclosure at 1-2.)  Particularly, the paragraphs describing the testimony on the concepts

of "Peace" and "Juche" along with that of "Otto Warmbier" are recitations of those concepts and

a description of the events that occurred to Mr. Warmbier.  (*Id.* at 2.)  They do not provide a

summary of what Dr. Arrington's opinions will be on those topics.  Moreover, the government's

disclosures for Dr. Arrington do not adequately provide "the bases and reasons for those

opinions."  Fed. R. Crim. P.  16(a)(1)(G).  While the government has provided Dr. Arrington's

résumé, the overwhelming number of the articles, chapters, conference papers, and other works

listed relate to South Korea and Japan.  (*See id.* at 4-5.)  This would present Dr. Arrington as a

potentially fine expert in the politics of those countries, but not that of North Korea.  And she

simply has no experience listed on her résumé to provide a basis for her ability to render

opinions on blockchain technology and cryptocurrency.

This is precisely the sort of notice found inadequate in *Ulbricht*:

> Both disclosures merely listed general and, in some cases, extremely broad topics
> on which the experts might opine. For example, the disclosures indicated that the
> experts would testify on general topics, including: [subjects related to Bitcoin in
> that case]. They did not summarize the experts' opinions about those topics, let
> alone describe the bases for the experts' opinions.

858 F.3d at 115 (additionally finding that the disclosures were untimely).  Based on these

inadequacies, the Second Circuit upheld exclusion of the proposed expert testimony.  *Id.*

At a minimum, even if Dr. Arrington was permitted to testify about background facts

identified in the list of topics, she should not be permitted to offer any opinion regarding such

information because, as the government has failed to disclose such opinions or the bases therefor.

*See, e.g.*, *Ulbricht*, 858 F.3d at 115; *United States v. Holmes*, 670 F.3d 586, 599 (4th Cir. 2012)

(affirming exclusion because the disclosure did not provide the bases and reasons for the expert's

opinion); *Daniels v. City of New of York*, No. 16-cv-9080 (AJN), 2018 WL 5919307, at *3
(S.D.N.Y. Nov. 13, 2018) (excluding expert's opinion for failure to identify the bases for the
opinion); *On Track Innovations Ltd. v. T-Mobile USA*, 106 F. Supp. 3d 369, 417 (S.D.N.Y.
2015) (excluding expert opinion because although expert identified the "factors" underlying her
conclusion, "her report ultimately provides no roadmap to the [conclusion]").

      Without knowing what Dr. Arrington's opinions are, or the bases for those opinions, the
defense cannot formulate a complete challenge to Dr. Arrington's testimony or determine
whether to call a witness to rebut Dr. Arrington's testimony.  The purpose of Rule 16
disclosures, in part, is to permit the other side to properly prepare for that expert's cross
examination. *Ulbricht*, 858 F.3d at 115-116.  The government's disclosures simply do not
provide the defense time to prepare for Dr. Arrington's cross examination without having to
"guess" what she might opine.  Therefore, assuming the Court does not preclude Dr. Arrington's
testimony for the reasons addressed in Sections I and II, the defense requests that this Court
require the government to supplement its expert disclosures to sufficiently outline Dr.
Arrington's opinions, bases for those opinions, and the qualifications for making those opinions.
The defense reserves the right to challenge the use of Dr. Arrington as an expert witness on Rule
16 grounds should those supplemental disclosures remain deficient.

## IV.    Any Proposed Expert Testimony Must Satisfy the Legal Standards Set Forth by *Daubert* and Its Progeny

### A.    Legal Standard

      Expert evidence is only admissible if it satisfies Rule 702 under *Daubert v. Merrell Dow
Pharm.*, 509 U.S. 579 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147-
48 (1999); *Gen. Elec. Co.. v. Joiner*, 522 U.S. 136, 146 (1997).  Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the witness's testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* A party seeking to introduce expert testimony "bears the burden of establishing its admissibility by a preponderance of the evidence." *Baker v. Urban Outfitters*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

The trial judge acts a "gatekeeper," to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The Second Circuit has advised that courts should "focus on the principles and methodology employed by the expert," and exclude the testimony if those principles and methodology are unreliable, *In re Pfizer Sec. Litig.*, 819 F.3d 642, 662 (2d Cir. 2016); if the witness is not actually applying expert methodology, *Dukagjini*, 326 F.3d at 54; or if "there is simply too great an analytical gap between the data and the opinion proffered," leaving the testimony "connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co.. v. Joiner*, 522 U.S. 136, 146 (1997). "[M]ere ipse dixit is not appropriate expert testimony." *SEC v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) (citing *Daubert*, 509 U.S. at 592-94). The exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion. See *Gen. Elec.*, 522 U.S. at 139, 142.

### B. The government has not carried its burden to prove that Dr. Arrington's opinions are (i) supported by sufficient facts or data and (ii) the product or reliable principles and methods

Finally, the government has not met the requirements of Rule 702 with respect to Dr. Arrington's testimony, warranting its exclusion. Rule 702(b) requires the proponent of expert testimony to demonstrate that the testimony is based on sufficient facts or data before it can be admitted. Similarly, Rule 702(c) requires the proponent of expert testimony to demonstrate that

the testimony is the product of reliable principles and methods.  *See Amorgianos v. Nat'l R.R. Pass'r Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).  In order to determine whether proposed expert testimony satisfies the "reliability" requirement, the court must consider factors including "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific community.'"  *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015).  This is not a checklist, but simply a set of factors to be considered. But where analysis and methodology are based on "inherently subjective and speculative concept[s]" or where the methodology "cannot be tested, [] has no known rate of error, and [] is not subject to any particular standards or controls," the method cannot be evaluated and must be excluded.  *24/7 Records v. Sony Music Entm't*, 514 F. Supp. 2d 571, 575 (S.D.N.Y. 2007).

The government's disclosure provides no facts, data or principles supporting Dr. Arrington's testimony nor discloses what principles or methods underlie her opinions.  (*See* Gov't Expert Disclosure at 1-2.)  Given her dearth of experience in the proffered areas of testimony, this is a sufficient basis to exclude her testimony.  *See Hernandez v. Leichliter*, No. 14-CV-550 (AJN), 2016 WL 684038 (S.D.N.Y. Feb. 18, 2016) (excluding testimony because the proposed expert failed to cite any authority in support of his expert opinions and appeared to have "simply copied and pasted most of his analysis here from a report in an earlier case"); *see also Pfizer Secs. Litig.*, 819 F.3d at 662 ("If the opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

As stated above, the government has provided only Dr. Arrington's résumé, and Rule 702

makes clear that "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  Fed. R. Evid. 702 adv. comm. notes, 2000 amendment (noting also "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *accord Highland Capital*, 379 F. Supp. 2d at 473 n.2 (quoting *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (Bankr. S.D.N.Y. 2003)); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 354 (S.D.N.Y. 2005) ("An anecdotal account of one expert's experience, however extensive or impressive the numbers it encompasses, does not by itself equate to a methodology, let alone one generally accepted by the relevant professional community.").  The government has not produced such an explanation.

Given the serious issues regarding testimony of this nature including that it is irrelevant and will and inevitably result in unfair prejudice to Mr. Griffith, invite the jury to return a verdict based upon inflamed passions and emotion, and create an obvious and significant risk of confusing the issues presented to the jury, this proffered testimony should be precluded in its entirety.  If the Court determines that any portion of this proposed testimony is appropriate, the defense respectfully requests that the Court order a hearing outside of the presence of the jury to permit the defense to conduct a detailed voir dire to determine the scope and nature of the proffered testimony and to elucidate any issues as far as Dr. Arrington's qualifications and ability to offer said opinions. Particularly given that the government withdrew such topics from consideration in the face of a similar motion in *Nejad*, which was a tacit (if not stated) acknowledgement that the proffered topics in their current disclosure were not appropriate trial testimony, the reasons and bases for offering such testimony here should be carefully evaluated.

**CONCLUSION**

For the reasons set forth above, the Court should preclude any testimony related to North Korea's human rights abuses, the DPRK nuclear weapons programs and other weapons programs, the case of Otto Warmbier and any similarly inflammatory topics as irrelevant and unfairly prejudicial; and exclude any remaining proposed expert testimony because Dr. Arrington is not qualified, the testimony would not be helpful to the jury, and would be inappropriate expert testimony.  In the alternative, to the extent the Court is inclined to permit Dr. Arrington to testify as to any of these topics, Mr. Griffith respectfully requests that the

government be required to supplement its disclose to comply with Rule 16, and requests a *Daubert* hearing to explore the scope and nature of Dr. Arrington's purported expertise on several of these topics.

Dated:  September 6, 2021

Respectfully Submitted,

/s/

_____
Brian E. Klein
Keri Curtis Axel
Waymaker LLP

-and-

Sean S. Buckley
Kobre & Kim LLP

*Attorneys for Virgil Griffith*